UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **Olabinjo Osundairo and** <br> **Abimbola Osundairo, Individually,** <br><br> **Plaintiffs,** <br><br> v. <br><br> **Mark Geragos, Tina Glandian,** <br> **and Geragos & Geragos Law Firm,** <br><br> **Defendants.** | ) <br> ) <br> ) Case No. <br> ) <br> ) Judge <br> ) <br> ) <br> ) Magistrate Judge <br> ) <br> ) JURY DEMAND <br> ) <br> ) <br> ) |

## COMPLAINT

**NOW COME** Plaintiffs Olabinjo Osundairo and Abimbola Osundairo (hereinafter "Plaintiffs" or "Osundairo brothers"), by and through their attorneys, Gregory E. Kulis & Associates, Ltd., the Law Offices of James D. Tunick, and the Gloria Law Group, and for their complaint against Defendants Tina Glandian, Mark Geragos, and the Geragos & Geragos Law Firm, state as follows:

## PARTIES

1. Plaintiff Olabinjo Osundairo (hereinafter "Mr. Ola Osundairo") is an individual who is a United States citizen, born and raised in Chicago, and continues to reside in Chicago, Illinois.

2. Plaintiff Abimbola Osundairo (hereinafter "Mr. Bola Osundairo") is an individual who is a United States citizen, born and raised in Chicago, and continues to reside in Chicago, Illinois.

3. Defendant Tina Glandian is an attorney employed by Defendant Geragos & Geragos Law Firm and is a resident of New York City, New York.

1

4. Defendant Mark Geragos is a partner at Defendant Geragos & Geragos Law Firm and is a resident of Los Angeles, California.

5. Defendant Geragos & Geragos Law Firm is a private law firm with its principal place of business in Los Angeles, California, with business in Las Vegas and New York.

## JURISDICTION AND VENUE

6. The Court has personal jurisdiction over Defendants since they have availed themselves of Illinois law in numerous ways. First, they conducted business in the State of Illinois. Defendants transacted as criminal counsel for Chicago actor Justin "Jussie" Smollett (hereinafter "Mr. Smollett"), defending his Illinois criminal case and often acting as de facto public relations representatives while in Illinois. Second, Defendants also committed torts within the State of Illinois by making public defamatory statements against Plaintiffs, which were published broadly in Illinois by major news outlets such as the Chicago Sun-Times, the Chicago Tribune, and WGN Radio. Moreover, these tortious statements involve a hoax conducted in Illinois and orchestrated by Mr. Smollett. Finally, and importantly, these statements also impacted the reputation of Plaintiffs, who are employed and live in Illinois. Pursuant to the Illinois Long Arm Statute and federal law, Defendants have maintained minimum sufficient contacts with the State of Illinois to establish personal jurisdiction. 735 ILCS 5/2-209.

7. Venue is proper under 28 U.S.C. §1391(b)(2), as a substantial part of the events or omissions giving rise to the claim, as discussed in the previous paragraph, occurred in Chicago, Illinois.

8. This Court also has subject matter jurisdiction because the amount in controversy exceeds $75,000.00 for each Plaintiff, exclusive of interests and costs, and is between citizens of different states, per 28 U.S.C. §1332(a).

## CHOICE OF LAW

9. This complaint will allege violations of the torts of defamation and false light, established under the Illinois common law. This is because Illinois choice-of-law principles hold that the Illinois forum court must apply the substantive laws of the state where the case has "the most significant contacts." *Snead v. Forbes,* 275 N.E. 2d 746, 748-49 (1st Dist. Ill. 1971) *citing* Restatement of Law, Second, Conflicts of Law §150. For the torts of defamation and false light, this is the state in which the defamed plaintiff was domiciled at the time the tortious comments were made, as plaintiff's state of residence is "the place of greatest potential injury to the reputation of plaintiff". *Id.* For Plaintiffs, that state is Illinois.

## FACTUAL ALLEGATIONS

10. On or around the morning of January 29, 2019, it was virally reported that actor Justin "Jussie" Smollett was attacked in Chicago's Streeterville neighborhood while walking home.

11. Mr. Smollett had reported to Chicago Police that two men in ski masks pulled a noose around his neck, poured an unknown liquid on his body, and battered him with their hands and feet. Mr. Smollett also reported that the masked men yelled "this is MAGA country!" – referring to President Trump's campaign slogan "Make America Great Again" – along with various racist and homophobic slurs.

12. Mr. Smollett's report led to international outrage, with near unanimous calls for the Chicago Police (hereinafter "CPD") to find and prosecute Mr. Smollett's attackers. On February 15, 2019, CPD's investigation led them to the Osundairo brothers, the Plaintiffs in this case, upon which they were taken into custody and questioned. On February 15, 2019, Plaintiffs were promptly released without charges, as there was verification and in-depth corroboration that the

"attack" was a hoax entirely conceived and directed by Mr. Smollett.

13. CPD and the public at large grew increasingly skeptical about the circumstances of Mr. Smollett's attack. As the Osundairo brothers were extras on Mr. Smollett's television show "Empire," occasionally socialized with Mr. Smollett, and are also Black men, the suggestion that they committed a brutal hate crime against Mr. Smollett raised the proverbial eyebrow.

14. The media soon circulated CPD's theory of what actually occurred: Mr. Smollett paid Plaintiffs a sum of money to stage the attack to benefit himself.

15. In short, Mr. Smollett used his clout as a wealthy actor to influence Plaintiffs, who were in a subordinate relationship to him and were aspiring to "make it" in Hollywood.

16. On January 25, 2019, Mr. Smollett told Plaintiffs, in private, that he needed a favor from them: they were to help him stage a social media hoax and pretend to attack him. Mr. Smollett's motivation was simple. He wanted his employer and the public to notice and appreciate him as a successful Black, openly gay actor. So, Mr. Smollett directed every aspect of the attack, including the location and the noose.

17. On February 20, 2019, Plaintiffs testified truthfully before a grand jury regarding the facts of what happened on or around January 29, 2019.

18. On March 7, 2019, Mr. Smollett was indicted for 16 felony counts of a false report of offense pursuant to Illinois criminal statute 720 ILCS 5/26-1(a)(4). He was represented by Defendants.

19. In a controversial move, the Cook County State's Attorney dropped his charges almost immediately, less than three weeks after charging Mr. Smollett.

20. The swiftness and manner with which Mr. Smollett's charges were handled is notably unheard of in Cook County. Yet, the State's Attorney seemed satisfied by Mr. Smollett's

$10,000.00 payment in bond and his "community service" which he apparently already served as a prominent Chicago figure.

21. Mr. Smollett's charges were dropped on or around March 26, 2019.

22. What followed was mass public outcry, including dismay from the media, several district attorney bar associations, police unions, and the federal government. Many argued the Cook County State's Attorney botched the prosecution of Mr. Smollett's case. Some suggested that the State's Attorney cut him a deal due to his affluence and celebrity.

23. Mr. Smollett's attorneys, faced with an outraged public, did not retreat after their success. Instead they doubled down, not simply affirming that Mr. Smollett was a wholly innocent victim, but that (among other accusations) Plaintiffs unequivocally led a criminally homophobic, racist, and violent attack against Mr. Smollett. Defendants made these comments knowing they were untrue to distract from Mr. Smollett's farce and to promote themselves and the Geragos & Geragos Law Firm. This vitriol against Plaintiffs is tortious and comprises the substance of the following allegations.

## DEFENDANT TINA GLANDIAN

### COUNT I
### COMMON LAW DEFAMATION PER SE

**I.  Statements Accusing Plaintiffs of Committing a Hate Crime, Perjury, and Conspiring to Make False Statements to Chicago Police**

24. On or around March 27, 2019, Defendant Tina Glandian appeared on Good Morning America, aired by the American Broadcasting Corporation ("ABC"). On or around March 28, 2019, Ms. Glandian appeared the Today show, aired by the National Broadcasting Company ("NBC"). In both appearances, Ms. Glandian discussed her client, Mr. Smollett, and his

5

criminal case. The following statements were echoed in numerous other publications, including the podcast *Reasonable Doubt*.

25. All the statements alleged below were in concert and coordination with Defendant Mark Geragos and Defendant Geragos & Geragos Law Firm.

26. Ms. Glandian insisted Mr. Smollett was innocent of making a false police report and falsely added that Plaintiffs criminally attacked Mr. Smollett.

27. Ms. Glandian then falsely submitted that Plaintiffs may have been wearing "whiteface" while attacking Mr. Smollett – again stating Plaintiffs battered Mr. Smollett and adding the implication that this battery was a hate crime.

28. Ms. Glandian's statements that Plaintiffs committed a hate crime against Mr. Smollett and donned whiteface were published to third parties everywhere as they were broadcast by ABC and NBC, and were republished in numerous newspapers, blogs, and periodicals.

29. Ms. Glandian's statements explicitly identify Plaintiffs as the subject of her accusations, as she was responding directly to questions about the Osundairo brothers.

30. Ms. Glandian's statements indicating Plaintiffs actually criminally battered Mr. Smollett without his consent are patently false and defamatory, as Mr. Smollett originated, planned, and orchestrated the attack.

31. Ms. Glandian, in stating that Plaintiffs criminally battered Mr. Smollett, implicitly proffered that Plaintiffs are guilty of perjuring themselves during the February 20, 2019 grand jury proceedings, and she specifically stated such in media appearances.

32. Ms. Glandian, in stating that Plaintiffs criminally battered Mr. Smollett, implicitly proffered that Plaintiffs are guilty of conspiring to give false statements and/or giving false statements to Chicago Police, and she specifically stated such in media appearances.

33. Ms. Glandian's statements that Plaintiffs donned "whiteface" on the day of Mr. Smollett's alleged attack are patently false and defamatory, as neither wore "whiteface" or pretended in any way to be Caucasian.

34. Ms. Glandian's statements were made after the close of Mr. Smollett's criminal case, did not serve any legal function, and was not a requirement of her job as a defense attorney.

35. Instead, these statements were unnecessarily made on national media to advance Mr. Smollett's and Ms. Glandian's reputation and fame at high cost to Plaintiffs.

36. Indeed, Ms. Glandian's statements have caused considerable damage to Plaintiffs' careers, as they have lost talent agent contracts and career opportunities.

37. Thus, Ms. Glandian's statements have caused Plaintiffs irreparable financial damage.

38. As a result of Ms. Glandian's comments, Plaintiffs have suffered significant emotional distress and feel unsafe and alienated in their local Chicago community. This is because Ms. Glandian, a very famous attorney, falsely and publicly stated Plaintiffs have committed a gruesome hate crime, lied under oath, and intentionally misled CPD.

39. Ms. Glandian's statements have caused Plaintiffs severe emotional damage.

40. Ms. Glandian, in falsely accusing Plaintiffs of committing a hate crime, perjuring themselves, and making false statements to a police officer, has acted with fault clearly amounting to negligence and/or actual malice.

41. Ms. Glandian's comments, in falsely accusing Plaintiffs of committing a hate crime, perjuring themselves, and making false statements to a police officer, are defamatory per se under Illinois common law.

42. As a result of Ms. Glandian's false and defamatory statements, Plaintiffs suffered and will continue to suffer damage, including economic damages, damages to their reputations, and/or damage to current and prospective business relations.

## II. Statements Harming Plaintiffs in their Profession and Implying a Lack of Integrity in Plaintiffs' Professional Duties

43. On or around April 6, 2019, Defendant Tina Glandian further discussed Plaintiffs on the *Reasonable Doubt* podcast.

44. Ms. Glandian's statements were made after the close of Mr. Smollett's criminal case, did not serve any legal function, and were not a requirement of her job as a defense attorney.

45. Ms. Glandian knew that Plaintiffs were partially self-employed, as creators and promotors of their brand "Team Abel". Team Abel advises and demonstrates how to strengthen and build muscle while maintaining a healthy, steroid-free diet and fitness regimen.

46. Ms. Glandian falsely stated that Plaintiffs are involved in "illegal" Nigerian steroid trafficking, and that these steroids help clients lose weight.

47. Ms. Glandian added, scoffing, that Plaintiffs' "platform. . . is all about being steroid-free . . . Their whole thing is, you know, all-natural bodybuilding. It's ridiculous."

48. Plaintiffs do not use or distribute illegal Nigerian steroids.

49. Ms. Glandian's comments are patently false and defamatory.

50. These statements were unnecessarily made publicly to numerous third parties to advance Ms. Glandian's reputation and fame and to undoubtedly ruin Plaintiffs' business.

51. Ms. Glandian's statements have caused considerable damage to Plaintiffs' careers, causing Plaintiffs irreparable financial damage, losing business and the opportunity of business.

52. Ms. Glandian's statements have caused Plaintiffs severe emotional distress.

53. Ms. Glandian, in falsely accusing Plaintiffs of running their all-natural business fraudulently, has acted with fault clearly amounting to negligence and/or actual malice.

54. Ms. Glandian, in falsely accusing Plaintiffs of illegally distributing foreign steroids, has acted with fault clearly amounting to negligence and/or actual malice.

55. Ms. Glandian, in falsely accusing Plaintiffs of professionally defrauding and misleading clients, has committed defamation per se under Illinois law, as those statements call into question whether Plaintiffs have integrity in performing their duties as professionals in their industry.

56. Ms. Glandian, in falsely accusing Plaintiffs of criminally distributing foreign unlawful steroids, has committed defamation per se under Illinois law.

57. As a result of Ms. Glandian's false and defamatory statements concerning Plaintiffs' use and distribution of illegal steroids to their clientele, Plaintiffs suffered and will continue to suffer damage, including economic damages, damages to their reputation, and/or damages to current and prospective business relations.

### III. Statements Falsely Accusing Plaintiff of Engaging in Fornication with Mr. Smollett.

58. On or around April 6, 2019, Defendant Tina Glandian further discussed Plaintiff Abimbola Osundairo (hereinafter "Bola Osundairo") on the podcast *Reasonable Doubt*.

59. Ms. Glandian inferred that Bola Osundairo and Mr. Smollett engaged, at least briefly, in homosexual acts together. These statements were made to the third-party press and public.

60. Bola Osundairo is heterosexual and was dating a woman at the time.

61. Bola Osundairo has never engaged in any sexual acts with Mr. Smollett, thus Ms. Glandian's statements are patently false.

62. Bola Osundairo is also Nigerian-American, has family in Nigeria, and enjoys visits to Nigeria.

63. Same-sex sexual activity is illegal in Nigeria, which can result in 14 years of imprisonment. If the accused is married, the punishment is death by stoning.

64. Research by Pew indicates that 99% of Nigerians believe homosexuality should not be tolerated.[1]

65. Ms. Glandian's globally broadcasted statements that Bola Osundairo is homosexual endangers him and the lives of his Nigerian family.

66. Ms. Glandian's statements were made after the close of Mr. Smollett's criminal case, did not serve any legal function, and were not a requirement of her job as a defense attorney.

67. Ms. Glandian's statements have caused Plaintiffs severe emotional distress.

68. Ms. Glandian, in falsely accusing Bola Osundairo of fornication with Mr. Smollett, has committed defamation per se under Illinois law.

69. As a result of Ms. Glandian's false and defamatory statements concerning Bola Osundairo's sexual activity, Plaintiff suffered and will continue to suffer damage, including economic damages and damages to his reputation.

**WHEREFORE**, the Plaintiffs OLABINJO OSUNDAIRO and ABIMBOLA OSUNDAIRO pray for judgment against Defendant TINA GLANDIAN, for the appropriate compensatory damages, punitive damages and costs.

---

[1] See https://www.pewresearch.org/fact-tank/2013/06/21/ahead-of-same-sex-marriage-decisions-what-you-need-to-know/; the study claims Nigeria is the least accepting of homosexuality of all countries surveyed.

## COUNT II
## COMMON LAW FALSE LIGHT

1-69.    The Plaintiffs hereby re-allege and incorporate their allegations of Paragraphs 1-69 of Count I as their respective allegations of Paragraphs 1-69 of Count II as though fully set forth herein.

70.    Ms. Glandian made false statements to the third-party press and public that Plaintiffs committed a hate crime, perjured themselves, and conspired to make false statements to CPD.

71.    Ms. Glandian made false statements to the third-party press and public that Plaintiffs used "whiteface," both in the past and while committing a hate crime.

72.    Ms. Glandian made false statements that Plaintiffs' business is misleading to their clientele and is a sham enterprise, as Plaintiffs use and/or provide illegal steroids while stating their business is "all natural."

73.    Ms. Glandian made false statements that Plaintiffs are illegally distributing foreign steroids.

74.    Ms. Glandian made false statements that Plaintiff Bola Osundairo engaged in homosexual acts with Mr. Smollett.

75.    Statements falsely accusing Plaintiffs of illegal activities, including committing a hate crime, committing perjury, intentionally making false statements to police, and distributing steroids, are objectively offensive.

76.    Statements falsely accusing Plaintiffs of lacking professional integrity by lying to clientele about the propriety of steroids are objectively offensive.

77. Statements falsely accusing Plaintiff Bola Osundairo of engaging in sexual acts with Mr. Smollett are objectively offensive, especially as Bola Osundairo was dating someone else at the time.

78. Ms. Glandian explicitly identified Plaintiffs in making these offensive, untrue statements. Even when she refers to them as "the brothers" they are still easily identifiable.

79. Ms. Glandian, in making these statements, acted with actual malice and reckless disregard for the truth, knowing these statements were clearly false.

80. Ms. Glandian's statements were made after the close of Mr. Smollett's criminal case, did not serve any legal function, and were not a requirement of her job as a defense attorney.

81. As a result of Ms. Glandian's objectively and highly offensive statements, Plaintiffs have suffered and will continue to suffer extreme emotional distress, humiliation, and anxiety, damages to their reputation, and/or damage to current and prospective business relations.

**WHEREFORE**, the Plaintiffs OLABINJO OSUNDAIRO and ABIMBOLA OSUNDAIRO pray for judgment against Defendant TINA GLANDIAN, for the appropriate compensatory damages, punitive damages and costs.

### DEFENDANT MARK GERAGOS

### COUNT III
### COMMON LAW DEFAMATION PER SE

1-81. The Plaintiffs hereby re-allege and incorporate their allegations of Paragraphs 1-81 of Count II as their respective allegations of Paragraphs 1-81 of Count II as though fully set forth herein.

82. On the same podcast in which Ms. Glandian made tortious and defamatory statements about Plaintiffs, Defendant Mark Geragos (hereinafter "Mr. Geragos") also appeared, and occasionally made comments.

83. Mr. Geragos falsely stated that he could not think of anyone else who committed the hate crime against his client, Mr. Smollett, besides Plaintiffs.

84. Mr. Geragos repeatedly indicated that Plaintiffs conspired to criminally attack Mr. Smollett, and by doing so, implied Plaintiffs committed perjury before the February 20, 2019 grand jury and conspired to make false statements to Chicago Police.

85. Moreover, the above defamatory statements in Counts I and II made by Ms. Glandian were made in concert with and approved by Mr. Geragos to promote his law firm and his reputation.

86. Mr. Geragos's statements were made after the close of Mr. Smollett's criminal case, did not serve any legal function, and were not a requirement of his job as a defense attorney.

87. Mr. Geragos's statements have caused the Plaintiffs severe emotional distress and have caused Plaintiffs irreparable financial damage as alleged above.

88. The Plaintiffs feel unsafe and alienated in their local Chicago community. This is because Mr. Geragos, a very famous attorney, falsely and publicly stated they have committed a heinous, racially, and homophobically motivated hate crime, that they lied under oath, and that they lied to CPD.

89. Mr. Geragos, in falsely accusing Plaintiffs of committing a hate crime, perjuring themselves, and conspiring to give false statements to CPD, has acted with fault clearly amount to actual malice.

13

90. Mr. Geragos's statements, in falsely accusing Plaintiffs of committing a hate crime, perjuring themselves, and conspiring to give false statements to Chicago Police, are defamatory per se pursuant to Illinois law.

91. As a result of Mr. Geragos's false and defamatory statements, Plaintiffs suffered and will continue to suffer damage, including economic damages, damages to their reputations, and/or damage to current and prospective business relations.

**WHEREFORE**, the Plaintiffs OLABINJO OSUNDAIRO and ABIMBOLA OSUNDAIRO pray for judgment against Defendant MARK GERAGOS, for the appropriate compensatory damages, punitive damages and costs.

## COUNT IV
## COMMON LAW FALSE LIGHT

1-91. The Plaintiffs hereby re-allege and incorporate their allegations of Paragraphs 1-68 of Count III as their respective allegations of Paragraphs 1-91 of Count IV as though fully set forth herein.

92. Mr. Geragos made false statements to the third-party press and public that Plaintiffs committed a hate crime, perjured themselves before a grand jury, and conspired to make give false statements to CPD.

93. Additionally, Ms. Glandian's above tortious statements were made in consort and coordination with Mr. Geragos in an attempt to promote his law firm and reputation.

94. Mr. Geragos's tortious statements explicitly identified Plaintiffs in making these untrue statements. Even when he referred to them by pronouns, they are still easily identifiable.

95. Statements falsely accusing Plaintiffs of illegal activities are objectively offensive.

96. Mr. Geragos's statements were made after the close of Mr. Smollett's criminal case, did not serve any legal function, and were not a requirement of his job as a defense attorney.

97. Mr. Geragos, in making these statements, acted with actual malice as he knew these statements were clearly false, and thus acted with reckless disregard for the truth.

98. As a result of Mr. Geragos's objectively and highly offensive statements, Plaintiffs suffered and will continue to suffer extreme emotional distress, humiliation, anxiety, damages to their reputation, and damages to current and prospective business relations.

**WHEREFORE**, the Plaintiffs OLABINJO OSUNDAIRO and ABIMBOLA OSUNDAIRO pray for judgment against Defendant MARK GERAGOS, for the appropriate compensatory damages, punitive damages and costs.

## DEFENDANT GERAGOS & GERAGOS LAW FIRM

### COUNT V
### RESPONDEAT SUPERIOR

1-98. The Plaintiffs hereby re-allege and incorporate their allegations of Paragraphs 1-98 of Count IV as their respective allegations of Paragraphs 1-98 of Count V as though fully set forth herein.

99. At all relevant times the Defendants Tina Glandian and Mark Geragos were acting within their scope of employment as employee and partner, respectively, of Geragos & Geragos Law Firm.

100. Geragos & Geragos Law Firm is responsible for the actions of its agents.

**WHEREFORE**, the Plaintiffs OLABINJO OSUNDAIRO and ABIMBOLA OSUNDAIRO pray for judgment against Defendant GERAGOS & GERAGOS, for the appropriate compensatory damages, punitive damages and costs.

## JURY DEMAND

Plaintiffs hereby request trial by jury.

>Respectfully Submitted,
>
>By: */s/* Gregory E. Kulis

Gregory E. Kulis
Monica Ghosh
Gregory E. Kulis & Associates, Ltd.
30 North LaSalle Street, Suite 2140
Chicago, Illinois 60602
312-580-1830

James D. Tunick
30 North LaSalle Street, Suite 2140
Chicago, Illinois 60602
312-759-7626

Gloria V. Schmidt
Jorge A. Rodriguez
The Gloria Law Group
211 West Wacker Drive, 5th Floor
Chicago, Illinois 60606
312-982-2974