**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

OLABINJO OSUNDAIRO and ABIMBOLA
OSUNDAIRO, Individually,

       Plaintiffs,

v.

MARK GERAGOS, TINA GLANDIAN, and
GERAGOS & GERAGOS LAW FIRM,

       Defendants.

Case No. 19-cv-2727

Honorable Matthew F. Kennelly

**MEMORANDUM IN SUPPORT OF THE DEFENDANTS'
RULE 12(B)(2) AND 12(B)(6) MOTION TO DISMISS AND IN SUPPORT OF SPECIAL
<u>MOTION TO STRIKE PURSUANT TO CAL. CODE CIV. PROC. CODE § 425.16</u>**

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................................... 1

BACKGROUND ........................................................................................................................... 2

    A.    Case background ............................................................................................... 2

    B.    Ms. Glandian's allegedly defamatory statements ........................................... 3

        1.    The Whiteface Statements ................................................................... 3

        2.    The Steroid Statements ....................................................................... 4

        3.    The Sex Statements ............................................................................. 5

    C.    Mr. Geragos' allegedly defamatory statements ............................................. 6

    D.    Facts in support of anti-SLAPP ...................................................................... 7

ARGUMENT ................................................................................................................................ 8

I.    This Court does not have personal jurisdiction over Mr. Geragos ................................... 8

    A.    Standard for a Rule 12(b)(2) motion .............................................................. 8

    B.    This Court does not have personal jurisdiction over Mr. Geragos ................. 9

        1.    Mr. Geragos is not subject to the general jurisdiction of the Court ......... 9

        2.    There are insufficient contacts for specific jurisdiction over Mr. Geragos ............ 10

II.    The claims against all Defendants should be dismissed with prejudice pursuant to Rule 12(b)(6) ................................................................................................................ 12

    A.    The Rule 12(b)(6) standard does not require a court to accept bald assertions or conclusory allegations .................................................................................... 12

    B.    Plaintiffs failed to identify any allegedly defamatory statements, and the one quotation of any substance they do include (the Ridiculous Statement) was not made by Ms. Glandian ...................................................................................... 13

    C.    The Statements Ms. Glandian actually made are not defamatory *per se* .................. 14

    D.    All of the Statements can be innocently construed .................................... 18

    E.    Certain Statements are constitutionally protected as expressions of non-actionable opinion ................................................................................................... 19

    F.    Mr. Geragos didn't make any of the Statements Plaintiffs allege he made ............... 20

    G.    Plaintiffs fail to state claims for false light (Counts II and IV) for the same reasons their defamation claims fail ................................................................ 21

    H.    Plaintiffs' *respondeat superior* claim has no reasonable basis in law ........................ 22

III.    The Complaint should be dismissed under anti-SLAPP ................................................. 22

    A.    California anti-SLAPP applies ..................................................................... 22

    B.    The California anti-SLAPP Act immunizes Defendants .............................. 24

C.      Plaintiff's claims are subject to a special motion to strike under 425.16(e)(3) and (e)(4) ........................................................................................................................25

D.      Plaintiffs cannot show a probability of prevailing on the merits of their state law claims ................................................................................................................................26

    1.     Plaintiffs' claims fail for the reasons set forth above with regard to the Motion to Dismiss....................................................................................................................26

    2.     Plaintiffs' claims will fail because Plaintiffs cannot meet the applicable constitutional fault standard ........................................................................................27

**CONCLUSION** .....................................................................................................................**28**

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*,
    751 F.3d 796 (7th Cir. 2014) ..............................................................................11

*Am. Nurses' Ass'n v. Illinois*,
    783 F.2d 716 (7th Cir. 1986). Notice ...................................................................13

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ...................................................................................... 12, 13

*Barry Harlem Corp. v. Kraff*,
    273 Ill. App. 3d 388 (1995) .................................................................................15

*be2 LLC v. Ivanov*,
    642 F.3d 555 (7th Cir. 2011) ...............................................................................12

*Berol Corp. v. BIC Corp.*,
    2002 U.S. Dist. LEXIS 12932 (N.D. Ill. July 3, 2002) ........................................9

*Black v. Wrigley*,
    2017 U.S. Dist. LEXIS 202260 (N.D. Ill. Dec. 8, 2017).................................*passim*

*Braun v. Chronicle Publ.*,
    52 Cal. App. 4th 1036 (Cal. Ct. App. 1997) ......................................................24

*Brennan v. Kadner*,
    351 Ill. App. 3d 963 (2004) .................................................................................19

*Burger King Corp. v. Rudzewicz*,
    471 U.S. 462 (1985) ...............................................................................................9

*Calder v. Jones*,
    465 U.S. 783 (1984) ...................................................................................... 10, 12

*Chi. City Day Sch. v. Wade*,
    297 Ill. App. 3d 465 (1998) .................................................................................18

*Chi v. Loyola Univ. Med. Ctr.*,
    787 F. Supp. 2d 797 (N.D. Ill. 2011).................................................................23

*Damon v. Ocean Hills Journalism Club*,
    85 Cal. App. 4th 468 (Cal. Ct. App. 2000).........................................................26

iv

*Dubinsky v. United Airlines Master Exec. Council*,
    303 Ill. App. 3d 317 (1999) ..................................................................................19

*DuPont Merck Pharm. v. Superior Court*,
    78 Cal. App. 4th 562 (Cal. Ct. App. 2000) ..........................................................26

*Evans v. Lederle Lab.*,
    167 F.3d 1106 (7th Cir. 1999) .............................................................................12

*Fidelity Nat'l Title Ins. Co. of New York v. Intercounty Nat'l Title Ins. Co.*,
    161 F. Supp. 2d 876 (N.D. Ill. 2001)...................................................................13

*Gertz v. Robert Welch, Inc.*,
    418 U.S. 323 (1974) .............................................................................................27

*Gibson v. Chicago*,
    910 F.2d 1510 (7th Cir. 1990) .............................................................................12

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
    564 U.S. 915 (2011) .............................................................................................10

*Helicopteros Nacionales de Colom. v. Hall*,
    466 U.S. 408 (1984) ...............................................................................................9

*Imperial Apparel, Ltd. v. Cosmo's Designer Direct, Inc.*,
    227 Ill. 2d 381 (2008) ..........................................................................................19

*Ingersoll v. Klein*,
    46 Ill. 2d 42 (1970)...............................................................................................22

*Jacobson v. CBS Broad., Inc.*,
    2014 IL App (1st) 132480 ....................................................................................21

*Jones v. UPS Ground Freight, Inc.*,
    2016 U.S. Dist. LEXIS 26865 (N.D. Ill. Mar. 3, 2016) ......................................22

*Kamelgard v. Macura*,
    585 F.3d 334 (7th Cir. 2009) ...............................................................................23

*Kapotas v. Better Gov't Ass'n*,
    2015 IL App (1st) 140534 ..................................................................... 15, 16, 21

*Keller v. Henderson*,
    359 Ill. App. 3d 605 (2005) .................................................................................11

*Kipp v. Ski Enter. Corp. of Wisconsin*,
    783 F.3d 695 (7th Cir. 2015) .............................................................................8, 9

*Lansing v. Carroll*,
  No. 11 CV 4153, 2015 U.S. Dist. LEXIS 84147 (N.D. Ill. June 29, 2015)
  (collecting Illinois cases) ............................................................16

*Lovgren v. Citizens First Nat'l Bank of Princeton*,
  126 Ill. 2d. 411 (1989)................................................................21

*Maag v. Illinois Coalition for Jobs*,
  368 Ill. App. 3d 844 (2006) ..........................................................17

*Mobile Anesthesiologists Chi., LLC v. Anesthesia Assocs. of Hous. Metroplex,
  P.A.*,
  623 F.3d 440 (7th Cir. 2010) ........................................................12

*Navellier v. Sletten*,
  29 Cal. 4th 82 (Cal. Ct. App. 2002) ..........................................24, 25

*New York Times Co. v. Sullivan*,
  376 U.S. 254 (1964) ....................................................................27

*Nygard, Inc. v. Uusi-Kerttula*,
  159 Cal. App. 4th 1027 (2008) ......................................................25

*Owen v. Carr*,
  134 Ill. App. 3d 855 (1985) *aff'd* 113 Ill. 2d 273 (1986) ..................18

*Pippen v. NBC Universal Media, LLC*,
  2012 U.S. Dist. LEXIS 195436 (N.D. Ill. Aug. 2, 2012) ..................22

*Randall Dairy Co. v. Pevely Dairy Co.*,
  274 Ill. App. 474 (4th Dist. 1934)................................................23

*RAR, Inc. v. Turner Diesel*,
  107 F.3d 1272 (7th Cir. 1997) ......................................................10

*Robertson v. Rodriguez*,
  36 Cal. App. 4th 347 (Cal. Ct. App. 1995)....................................27

*RSK Enters., LLC v. Comcast Spectacor, L.P.*,
  2018 U.S. Dist. LEXIS 2814 (N.D. Ill. Jan. 8, 2018) ..................8, 13

*Schaffer v. Zekman*,
  196 Ill. App. 3d 727 (1990) ..........................................................21

*Schivarelli v. CBS, Inc.*,
  333 Ill. App. 3d 755 (2002) ..........................................................21

vi

*Schmude v. Sheahan*,
  312 F. Supp. 2d 1047 (N.D. Ill. 2004) ............................................................. 5

*Scott v. Metabolife Intl, Inc.*,
  115 Cal. App. 4th 404 (Cal. Ct. App. 2004) ..................................................... 25

*Seelig v. Infinity Broad. Corp.*,
  97 Cal. App. 4th 798 (Cal. Ct. App. 2002) ....................................................... 25

*Seith v. Chicago Sun-Times, Inc.*,
  371 Ill. App. 3d 124 (2007) ............................................................................. 21

*Sipple v. Found, for Nat. Progress*,
  71 Cal. App. 4th 226 (Cal. Ct. App. 1999) ....................................................... 25

*Siswanto v. Airbus, S.A.S.*,
  153 F. Supp. 3d 1024 (N.D. Ill. 2015) ............................................................... 8

*Solaia Tech., LLC v. Specialty Publ'g Co.*,
  221 Ill. 2d 558 (2006) ....................................................................................... 18

*State of Illinois v. Hemi Group LLC*,
  622 F.3d 754 (7th Cir. 2010) ............................................................................. 9

*Tamburo v. Dworkin*,
  601 F.3d 693 (7th Cir. 2010) ......................................................................... 9, 10

*Tamkin v. CBS Broad., Inc.*,
  193 Cal. App. 4th 133 (Cal. Ct. App. 2011) ..................................................... 25

*Tuite v. Corbitt*,
  224 Ill. 2d 490 (2006) ....................................................................................... 15

*Underground Solutions, Inc. v. Palermo*,
  41 F. Supp. 3d 720 (N.D. Ill. 2014) ................................................................. 23

*Walden v. Fiore*,
  571 U.S. 277 (2014) ......................................................................................... 11

*Wilson v. Edward Hosp.*,
  2012 IL 112898, 981 N.E. 2d 980 (2012) ......................................................... 22

*World-Wide Volkswagen Corp. v. Woodson*,
  444 U.S. 286 (1980) ........................................................................................... 9

*Wynne v. Stevenson*,
  2002 U.S. Dist. LEXIS 24043 (N.D. Ill. Dec. 13, 2002) .................................. 14

vii

*Zimmerman v. Tribble*,
    226 F.3d 568 (7th Cir. 2000) ............................................................................ 13

**Statutes**

735 ILCS 5/2-209(c) ............................................................................................. 8

Cal. Code Civ. Proc. § 425.16 ............................................................. 24, 25, 26, 28

Cal. Code Civ. Proc. § 425.16(b)(1) ........................................................... 24, 26

Cal. Code Civ. Proc. § 425.16(c)(1) ...................................................................28

Cal. Code Civ. Proc. § 425.16(e)(3)-(4)..............................................................24

Cal. Code Civ. Proc. § 425.16(e)(4) ....................................................................26

## INTRODUCTION

Plaintiffs Olabinjo Osundairo and Abimbola Osundairo catapulted themselves to center stage when they attacked the actor Jussie Smollett, a star on the show *Empire*, early one morning on the streets of Chicago. The brothers, who were extras on *Empire* and one of whom had recently been hired to provide physical training and nutritional services to Mr. Smollett, were quickly identified as the prime suspects. After reportedly a minimum of 47 hours in police custody, the brothers eventually admitted they attacked Mr. Smollett but claimed the attack was actually an elaborate hoax orchestrated by Mr. Smollett. After shifting law enforcement attention to Mr. Smollett, Mr. Smollett was arrested and charged with felony disorderly conduct based on the brothers' statements—while the brothers were released from police custody uncharged. The case against Mr. Smollett eventually collapsed, and the prosecutors dropped all charges.

After the charges were dropped, Mr. Smollett's lawyer Tina Glandian discussed the matter on the *Today* show and *Good Morning America*. She also appeared on a podcast co-hosted by her colleague Mark Geragos. Plaintiffs claim the comments made on these broadcasts provide an opportunity to sue Ms. Glandian and Mr. Geragos for defamation. To do so, Plaintiffs have strung together a mix of mischaracterizations and outright falsehoods. For instance, Plaintiffs claim defendant Tina Glandian made a statement actually uttered by their own lawyer Gloria Schmidt, and they grossly mischaracterize Ms. Glandian's other statements. With regard to defendant Mark Geragos, Plaintiffs conjure their claims out of thin air. He simply did not say what they claim he said during his podcast. In addition, Mr. Geragos is not subject to personal jurisdiction in the Northern District of Illinois.

Plaintiffs' Complaint suffers from several additional defects. The statements Ms. Glandian actually made are not defamatory *per se* and are reasonably subject to an innocent construction. Certain statements are constitutionally protected opinion. For the same reasons, the

1

false light claims will fail along with the defamation claims because these claims are based on the same underlying conduct as the defamation claims. Plaintiffs also did not adequately plead actual malice for the false light claims. Finally, *respondeat superior* is not a cognizable stand-alone claim. Defendants therefore respectfully request that this Court dismiss the Complaint with prejudice.

In addition, this lawsuit is a classic strategic lawsuit against public participation (also known as a "SLAPP"). California—the state to which all Defendants have strong ties—enacted a strong anti-SLAPP statutes to protect against retaliatory defamation lawsuits. The speech at issue in this case—commentary on a high-profile criminal matter—goes to the heart of what anti-SLAPP statutes are intended to protect. Because Mr. Geragos and Ms. Glandian have strong California ties and Geragos & Geragos Law Firm is a California professional corporation California's anti-SLAPP statute applies here. Under the California anti-SLAPP statute, this Court must strike Plaintiffs' claims at the outset of this lawsuit unless Plaintiffs can present admissible evidence to establish that they have a "probability" of prevailing on the merits. Plaintiffs cannot meet this burden. For all of the reasons stated herein in connection with Defendants' Rule 12(b)(6) motion, Plaintiffs cannot even state a claim for relief, much less show a likelihood of prevailing on any of those claims.

## BACKGROUND

### A.      Case background

Plaintiffs are brothers Olabinjo and Abimbola Osundairo. (Compl. Dkt. 1.) In the early morning of January 29, 2019, they attacked the actor Jussie Smollett. (*Id.* ¶¶ 10, 16-17.) The incident and its aftermath generated a great deal of publicity. (*Id.* ¶ 22.) On April 23, 2019, the brothers sued Mr. Smollett's attorneys Tina Glandian, Mark Geragos, and the Geragos & Geragos Law Firm. (Compl.) Plaintiffs brought two counts of defamation (one each against Ms.

2

Glandian and Mr. Geragos), two counts of false light (one each against Ms. Glandian and Mr. Geragos), and one claim for *respondeat superior* (against the Geragos & Geragos Law Firm). (*Id.*) Plaintiffs sued based on statements (allegedly) made by Ms. Glandian and Mr. Geragos.

### B. Ms. Glandian's allegedly defamatory statements

#### 1. The Whiteface Statements

Plaintiffs' claims against Ms. Glandian relate to three categories of alleged statements (collectively, the "Statements"). In the first category, Plaintiffs claim that Ms. Glandian falsely stated they wore whiteface, criminally battered Mr. Smollett, and perjured themselves before the police and grand jury (the "Whiteface Statements"). (Compl. ¶¶ 26-28, 30-33, 38, 40-41.) Plaintiffs claim Ms. Glandian made the Whiteface Statements in a March 27, 2019 appearance on *Good Morning America* and in a March 28, 2019 appearance on the *Today* show. (*Id.* ¶ 24.)[1] Plaintiffs include only one actual quotation from Ms. Glandian regarding the Whiteface Statements—the word "whiteface" itself. (*Id.* ¶ 27.) Below is a comparison, with regard to the Whiteface Statements, of what Plaintiffs claim Ms. Glandian said with what she actually did say:

| What Plaintiffs Allege Ms. Glandian Said | What Ms. Glandian Actually Said |
|---|---|
| "Ms. Glandian insisted Mr. Smollett was innocent of making a false police report and falsely added that Plaintiffs criminally attacked Mr. Smollett. Ms. Glandian then falsely submitted that Plaintiffs may have been wearing 'whiteface' while attacking Mr. Smollett – again stating Plaintiffs battered Mr. Smollett and adding the implication that this battery was a hate crime. . . . statements that Plaintiffs committed a hate crime against Mr. Smollett and donned whiteface . . . ." (Compl. ¶¶ 26-28.) | "Mr. Stephanopoulos: -- if the brothers are saying that he helped them stage this attack, you're saying the brothers are lying? Ms. Glandian: Absolutely Mr. Stephanopoulos: They're not telling the truth? Ms. Glandian: No." (GMA Tr. 7:15-20.) |

---

[1] Defendants engaged a court reporter to prepare certified transcripts of both shows, as well as of the *Reasonable Doubt* podcast referenced below, and have attached the three transcripts as Exhibit A (*Good Morning America*), Exhibit B (*Today*), and Exhibit C (*Reasonable Doubt*) hereto. Because Plaintiffs referenced all three shows in their Complaint, and the statements made in those shows are central to their claims, the transcripts of those shows can be considered part of the pleadings for the present inquiry. *See Black v. Wrigley*, 2017 U.S. Dist. LEXIS 202260, *9-10 (N.D. Ill. Dec. 8, 2017).

| | |
|---|---|
| "Ms. Glandian in stating that Plaintiffs criminally battered Mr. Smollett, implicitly proffered that Plaintiffs are guilty of perjuring themselves during the February 20, 2019 grand jury proceedings, and she specifically stated such in media appearances. Ms. Glandian, in stating that Plaintiffs criminally battered Mr. Smollett, implicitly proffered that Plaintiffs are guilty of conspiring to give false statements and/or giving false statements to Chicago Police, and she specifically stated such in media appearances." (*Id.* ¶¶ 31-32.)<br><br>"Ms. Glandian . . . stated Plaintiffs have committed a gruesome hate crime, lied under oath, and intentionally misled CPD." (*Id.* ¶ 38.)<br><br>Ms. Glandian "falsely accus[ed] Plaintiffs of committing a hate crime, perjuring themselves, and making false statements to a police officer . . . . " (*Id.* ¶¶ 40-41.) | |
| "Ms. Glandian made false statements to the third-party press and public that Plaintiffs used "whiteface," both in the past and while committing a hate crime." (*Id.* ¶ 71.) Ms. Glandian stated that "Plaintiffs donned 'whiteface' on the day of Mr. Smollett's alleged attack." (*Id.* ¶ 33.) | "Ms. Guthrie: But the Osundairo brothers, what are the chances that that's the case, that he saw somebody with light skin? Ms. Glandian: Well, you know, I mean, I think there's – obviously, you can disguise that. You could put makeup on. There is, actually, interestingly enough, a video. You know, I think police did minimal investigation in this case. It was – It took me all of five minutes to Google – you know, I was looking up the brothers, and one of the first videos that showed up, actually, was one of the brothers in white face doing a Joker monologue with white makeup on. And so it's not – it's not implausible." (*Today* Tr. 21:6-17.) |

### 2. The Steroid Statements

Plaintiffs also claim Ms. Glandian made false statements concerning Plaintiffs'

knowledge of Nigerian steroids (the "Steroid Statements"). (*Id.* ¶¶ 46-47, 53-57.) According to

Plaintiffs, Ms. Glandian made these statements on the *Reasonable Doubt* podcast (the

"Podcast"). (*Id.* ¶ 43.) With regard to the Steroid Statements, Plaintiffs quote two allegedly

defamatory statements that Ms. Glandian purportedly made. Plaintiffs quote Ms. Glandian using

the word "illegal" (*id.* ¶), and claim she stated that Plaintiffs' "platform . . . is all about being

steroid-free . . . Their whole thing is, you know, all-natural bodybuilding. It's ridiculous." (the

"Ridiculous Statement"). (*Id.* ¶¶ 46-47.) However, Ms. Glandian *did not make* the Ridiculous

Statement, and therefore Plaintiffs' allegation is demonstrably false. It was Plaintiffs' own

lawyer, Gloria Schmidt, who made the Ridiculous Statement, and she did so to the *Chicago*

*Tribune*. Below is a comparison, with regard to the Steroid Statements, of what Plaintiffs claim

Ms. Glandian said with what she actually did say:

| What Plaintiffs Allege Ms. Glandian Said | What Ms. Glandian Actually Said |
|---|---|
| "Ms. Glandian falsely stated that Plaintiffs are involved in 'illegal' Nigerian steroid trafficking, and that these steroids help clients lose weight. (Compl. ¶ 46.) | "Abel had told him that – you know, because they were about to – him and his brother were about to go to Nigeria. He said there's these herbal steroids you can take that really – that are illegal here in the US but that I can get in Nigeria, and it helps you shed fat very quickly. So if you are interested, let me know." (*Reasonable Doubt* ("RD") Tr. 23:7-13.) |
| "Ms. Glandian added, scoffing, that Plaintiffs' 'platform . . . is all about being steroid-free . . . Their whole thing is, you know, all-natural bodybuilding. It's ridiculous.'" (Compl. ¶ 47.) | Ms. Glandian did not make this statement—Plaintiffs' lawyer, Ms. Schmidt, made this statement to the *Chicago Tribune*.[2] |

### 3. The Sex Statements

Finally, Plaintiffs claim Ms. Glandian falsely stated that Plaintiff Abel Osundairo

fornicated with Jussie Smollett (the "Sex Statements"). (*Id.* ¶¶ 46-47, 53-57.) Plaintiffs claim

---

[2] A copy of the *Chicago Tribune* article (with Ms. Schmidt's quote highlighted) is attached as Exhibit E. See *Schmude v. Sheahan*, 312 F. Supp. 2d 1047, 1064 (N.D. Ill. 2004) (noting that "it is routine for courts to take judicial notice of both newspaper articles and court records, among other things").

Ms. Glandian made these statements on the Podcast. (*Id.* ¶ 58.) With regard to the Sex

Statements, Plaintiffs do not include any quotations from Ms. Glandian in their Complaint.

Instead, every allegation purports to be a paraphrase. Below is a comparison, with regard to the

Sex Statements, of what Plaintiffs claim Ms. Glandian said with what she actually did say:

| What Plaintiffs Allege Ms. Glandian Said | What Ms. Glandian Actually Said |
|---|---|
| "Ms. Glandian *inferred* that Bola[3] Osundairo and Mr. Smollett engaged, at least briefly, in homosexual acts together. . . [and] falsely accus[ed] Bola Osundairo of fornication with Mr. Smollett." (Compl. ¶¶ 59, 68.) | "[Y]ou know, in talking to Jussie, I found it out that, you know, he and Abel had been hanging out a lot and they were friends, and, you know, he was not just his trainer, but they were actually friends, and they would socialize and go out. And about ten days before the incident, Abel actually spent the night at Jussie's place. And my theory, at least, is that, you know, the older brother who lived with Abel saw that his younger brother didn't come home, started wondering what this relationship really is – and keep in mind, Abel is also playing the role on the show, he's the stand-in for Jussie's love interest. . . .And so I think – you know it's one thing he's playing the – the – this character, now he's hanging out with this openly gay man, and now he spent the night there. So I think he starts thinking to himself, you know, what's really going on here. . . . Well, I have a very specific theory. . . . I think it was – Just to finish that, I think it was kind of a test, the older brother testing the younger brother. You know, they're leaving for Nigeria, and I think he wants to make sure he understands this relationship, and it's not what, you know, he fears it might be. . . . [Mr. Carolla: "Was there a relationship or was it a crashing on the sofa?"] No. What I'm saying – What I'm speaking to is what the older brother would have thought . . . because he knows that Jussie is openly gay." (RD Tr. 24:18-27:17.) |

## C. Mr. Geragos' allegedly defamatory statements

The Complaint does not contain *any* allegedly defamatory statements by Mr. Geragos.

Plaintiffs allege that Mr. Geragos made defamatory statements only on the Podcast (Compl. ¶

82), but Plaintiffs do not quote in their Complaint any statements allegedly made by Mr.

Geragos. Instead, they purport to paraphrase his statements. According to Plaintiffs, "Mr.

Geragos falsely stated that he could not think of anyone else who committed the hate crime

---

[3] Abimbola Osundairo is known alternatively as "Abel" and "Bola."

against his client, Mr. Smollett, besides Plaintiffs." (*Id.* ¶ 83.) Plaintiffs also allege that "Mr. Geragos repeatedly indicated that Plaintiffs conspired to criminally attack Mr. Smollett, and by doing so, implied Plaintiffs committed perjury before the February 20, 2019 grand jury and conspired to make false statements to Chicago Police." (*Id.* ¶ 83.) Defendants have attached as Exhibit D a copy of the transcript of the Podcast with Mr. Geragos' statements highlighted. Not only did Mr. Geragos never make the statements Plaintiffs attribute to him, but also it is clear from the transcript that Mr. Geragos never even said the name "Osundairo" or the word "brother" during the Podcast.

### D. Facts in support of anti-SLAPP

Mr. Geragos is a well-known, Los Angeles-based lawyer. Plaintiffs allege that he resides in Los Angeles (*id.* ¶ 4), and he holds a California driver's license. (Affidavit of Mark Geragos ¶ 3, attached as Exhibit F.[4]) His firm, Geragos & Geragos, is also based in Los Angeles, and it is a California professional corporation. (*Id.* ¶ 9.) Mr. Geragos co-hosts the Podcast with the comedian Adam Carolla, and they discussed the Smollett case on the April 6, 2019 Podcast. (*Id.* ¶ 10.) At the time he appeared on the Podcast, Mr. Geragos was physically located in New York. (*Id.* ¶ 11.) Plaintiffs' claims against Mr. Geragos are based on statements he made in the Podcast (the "Statements"). (Compl. ¶ 82.)

Ms. Glandian also has strong ties to California. She is an attorney for Geragos & Geragos, and she works from the firm's New York and Los Angeles offices. (Affidavit of Tina Glandian ¶¶ 3, attached as Exhibit G.[5]) Although she currently spends more time in New York, she maintains her permanent residence in California, and she owns real property in California.

---

[4] The affidavit of Mark Geragos is submitted solely in the context of the Rule 12(b)(2) motion and the anti-SLAPP motion, not the Rule 12(b)(6) motion.
[5] The affidavit of Tina Glandian is submitted solely in the context of the anti-SLAPP motion, not the Rule 12(b)(6) motion.

(*Id.* ¶ 4.) Ms. Glandian holds a California driver's license, voter registration, and bank account. (*Id.*) She has been a member of the California bar since 2007. (*Id.* ¶ 5.) She is also a licensed California real estate broker. (*Id.*) According to Plaintiffs, the statements "made by Ms. Glandian were made in concert with and approved by Mr. Geragos to promote his law firm and his reputation." (*Id.* ¶ 85. *See also id.* ¶ 23 (stating that Ms. Glandian made statements regarding Plaintiffs to promote "Geragos & Geragos Law Firm".)[6] Moreover, Plaintiffs contend that Ms. Glandian was "acting within [the] scope of employment as employee . . . of Geragos & Geragos Law Firm." (*Id.* ¶ 99.) Plaintiffs therefore alleged that Ms. Glandian was speaking at the behest of and on behalf of California speakers.

## ARGUMENT

### I. This Court does not have personal jurisdiction over Mr. Geragos

#### A. Standard for a Rule 12(b)(2) motion

In contesting a Fed. Rule Civ. P. 12(b)(2) motion to dismiss, Plaintiffs bear the burden of establishing a prima facie case for personal jurisdiction. *See RSK Enters., LLC v. Comcast Spectacor, L.P.*, 2018 U.S. Dist. LEXIS 2814, at *5 (N.D. Ill. Jan. 8, 2018). When a defendant challenges by declaration or affidavit a fact alleged in the complaint, the plaintiff has "an obligation to go beyond the pleadings and submit affirmative evidence supporting the exercise of jurisdiction." *Siswanto v. Airbus, S.A.S.*, 153 F. Supp. 3d 1024, 1026 (N.D. Ill. 2015). In a diversity case such as this, the federal court "must apply the personal jurisdiction rules of the state in which it sits." *Kipp v. Ski Enter. Corp. of Wisconsin*, 783 F.3d 695, 697 (7th Cir. 2015). In Illinois, a court may "exercise jurisdiction on any basis permitted by the Illinois Constitution and the Constitution of the United States." 735 ILCS 5/2-209(c). In other words, Illinois law

---

[6] Defendants do not concede the validity of any of Plaintiffs' claims, but simply note, for the purposes of this motion, that Plaintiffs claim Ms. Glandian was a mere instrumentality of California-based entities.

permits the exercise of jurisdiction "up to the limits of the due process clause of the Fourteenth Amendment." *Kipp*, 783 F.3d at 697. In that sense, federal due process and Illinois state-law requirements are indistinguishable. *State of Illinois v. Hemi Group LLC*, 622 F.3d 754, 757 (7th Cir. 2010). The applicable law for determining jurisdiction is therefore a combination of federal and Illinois law.

### B.    This Court does not have personal jurisdiction over Mr. Geragos

Mr. Geragos does not have sufficient contacts with Illinois to create personal jurisdiction, and Rule 12(b)(2) mandates dismissal of an action against a party over whom the court lacks jurisdiction. To comport with due process, each of the Defendants must have "minimum contacts" with Illinois such that maintaining a lawsuit here does not offend "traditional notions of fair play and substantial justice." *Berol Corp. v. BIC Corp.*, 2002 U.S. Dist. LEXIS 12932, at *7 (N.D. Ill. July 3, 2002). Such notions require defendants to "purposefully avail" themselves of the privilege of conducting business within Illinois before they can be "haled into court" in Illinois. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). Defendants cannot be forced to defend this lawsuit in Illinois because of the "unilateral activity of another party." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985). The nature of a defendant's contacts with the forum state determines the scope of personal jurisdiction. *See Tamburo v. Dworkin*, 601 F.3d 693, 701 (7th Cir. 2010). Jurisdiction can be "general," subjecting the defendant to jurisdiction for any claim in the state, even those claims that are unrelated to his conduct in the state; or, "specific," in which case the defendant may be sued in the state for only those claims that arise out of his conduct in the state. *Id.* Here, however, Mr. Geragos does not have sufficient contacts with the forum to establish either.

### 1.    Mr. Geragos is not subject to the general jurisdiction of the Court

General jurisdiction exists when the defendant's contacts with the forum are "continuous

and systematic." *See Helicopteros Nacionales de Colom. v. Hall*, 466 U.S. 408, 415-16 (1984).
With respect to an individual defendant, general jurisdiction is based on the defendant's
domicile. *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011).
Plaintiffs cannot come close to meeting this standard. Mr. Geragos has never resided in Illinois
(Geragos Aff. ¶ 5), and Plaintiffs allege that he is a California resident. (*See* Compl. ¶ 4 (alleging
that Mr. Geragos "is a resident of Los Angeles, California").) Moreover, to the best of his
recollection he has been in the State of Illinois for more than 48 hours since he was a child. (*See*
Geragos Aff. ¶ 8.) That, of course, is not "continuous and systematic" contact. Accordingly, the
Court cannot exercise general jurisdiction over Mr. Geragos, and Plaintiffs have waived any
argument to the contrary. *See RAR, Inc. v. Turner Diesel*, 107 F.3d 1272, 1277 (7th Cir. 1997)
("RAR has never alleged that [defendant] has such systematic contacts with Illinois. RAR has
thus waived any general jurisdiction argument . . . .").

### 2. There are insufficient contacts for specific jurisdiction over Mr. Geragos

The Supreme Court has held that there is sufficient contact to justify the exercise of
personal jurisdiction where a defendant took actions "expressly aimed" at the forum state. *Calder
v. Jones*, 465 U.S. 783, 789 (1984). The Seventh Circuit has distilled three requirements from
*Calder* for determining whether defendant's conduct was purposefully directed at the forum
state: "(1) intentional conduct (or 'intentional and allegedly tortious' conduct); (2) expressly
aimed at the forum state; (3) with the defendant's knowledge that the effects would be felt—the
plaintiff would be injured—in the forum state." *Tamburo*, 601 F.3d at 703. Mr. Geragos' conduct
does not meet any of these requirements—making imposition of jurisdiction in Illinois a due
process violation.

Mr. Geragos has a residence in California and strong ties to California. (Geragos Aff.

¶¶ 3-4 (noting that he has a California driver's license, has always been registered to vote in California, pays income tax and City of Los Angeles tax in California, although with three of his companies, was born in California, and went to law school at Loyola Law School in California.)[7] When he made the statements in the Podcast, he was physically located in New York. (*Id.* ¶ 11.) Mr. Geragos filed an appearance in the Jussie Smollett criminal case, but he never appeared in Illinois in connection with the case. (*Id.* ¶ 7.) Other than the Smollett case, he has a pro hac vice entered in one case in the Northern District of Illinois, but he has never made an in-person court appearance in the case. (*Id.* ¶ 5.) Accordingly, "[t]he mere fact that [defendant's] conduct affected plaintiffs with connections to the forum State does not suffice to authorize jurisdiction . . . the relation between the defendant and the forum must arise out of the contacts that the defendant[s] create with the forum." *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 801 (7th Cir. 2014).

As the Supreme Court has emphasized, to establish specific personal jurisdiction, "mere injury to a forum resident is not a sufficient connection to the forum," and "the defendant's *suit-related* conduct must create a substantial connection with the forum State." *Walden v. Fiore*, 571 U.S. 277, 284, 290 (2014) (emphasis added). Any minimal "contacts" Mr. Geragos has had with the State of Illinois are unrelated to this lawsuit and irrelevant. *See Keller v. Henderson*, 359 Ill. App. 3d 605, 616 (2005) (holding that litigation must "directly arise out of" the defendant's contacts with forum). Even if the contacts were relevant, they would not be sufficient to confer jurisdiction.

Although the Podcast may be accessed from Illinois, that does not create jurisdiction in Illinois. A podcast is disseminated digitally, and the Seventh Circuit and Northern District have

---

[7] The affidavit of Mr. Geragos is attached hereto as Ex. E. It is submitted solely in support of the Rule 12(b)(2) motion.

11

confirmed in the analogous case of a website that the mere existence of a public website accessible by users in the forum state is not sufficient to establish personal jurisdiction—even when the underlying claim is for defamation. *See, e.g., be2 LLC v. Ivanov*, 642 F.3d 555, 558 (7th Cir. 2011) (warning that "[c]ourts should be careful in resolving questions about personal jurisdiction involving online contacts to ensure that a defendant is not haled into court simply because the defendant owns or operates a website that is accessible in the forum state, even if that site is 'interactive'"); *Mobile Anesthesiologists Chi., LLC v. Anesthesia Assocs. of Hous. Metroplex, P.A.*, 623 F.3d 440, 446 (7th Cir. 2010) ("A plaintiff cannot satisfy the *Calder* standard simply by showing that the defendant maintained a website accessible to residents of the forum state and alleging that the defendant caused harm through that website."). Only a defendant's "deliberate and continuous exploitation of the market in a forum state, accomplished through its website as well as through other contacts with the state, can be sufficient to establish specific personal jurisdiction." *Mobile Anesthesiologists*, 623 F.3d at 446. Similarly, in speaking on the Podcast, Mr. Geragos did nothing to invoke the protection of Illinois laws.

## II. The claims against all Defendants should be dismissed with prejudice pursuant to Rule 12(b)(6)

### A. The Rule 12(b)(6) standard does not require a court to accept bald assertions or conclusory allegations

A motion to dismiss for failure to state a claim may be granted under Fed. Rule Civ. P. 12(b)(6) if it is clear that no relief can be afforded based on the allegations set forth in the claim. *See Evans v. Lederle Lab.*, 167 F.3d 1106, 1107 (7th Cir. 1999). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In evaluating a motion to dismiss pursuant to Rule 12(b)(6), a court "must accept as true all the plaintiff's well-pleaded factual allegations and the

inferences reasonably drawn from them." *Gibson v. Chicago*, 910 F.2d 1510, 1520-21 (7th Cir.

1990) (citing *Yeksigian v. Nappi*, 900 F.2d 101, 102 (7th Cir. 1990)). Nevertheless, the Court

need not accept inferences unsupported by factual allegations in the complaint or legal

conclusions set forth by the plaintiff. *See Zimmerman v. Tribble*, 226 F.3d 568, 572 (7th Cir.

2000); *Am. Nurses' Ass'n v. Illinois*, 783 F.2d 716, 724 (7th Cir. 1986). Notice pleading "marks

a notable and generous departure from the hyper-technical, code-pleading regime of a prior era,

but it does not unlock the doors of discovery for a plaintiff armed with nothing more than

conclusions." *Iqbal*, 556 U.S. at 678-79. Complaints require "more than an unadorned, the-

defendant-unlawfully-harmed-me accusation" and "'naked assertion[s]' devoid of 'further

factual enhancement.'" 556 U.S. at 678 (citing and quoting *Twombly*, 550 U.S. at 555, 557).

Thus, "threadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice." *RSK Enters.*, 2018 U.S. Dist. LEXIS 2814, at *6.

> **B.      Plaintiffs failed to identify any allegedly defamatory statements, and the one quotation of any substance they do include (the Ridiculous Statement) was not made by Ms. Glandian**

Rather than quote the allegedly defamatory statements, Plaintiffs set forth a mix of

purported paraphrases and creative interpretations of Ms. Glandian and Mr. Geragos' statements.

They include only one quote of any substance—the Ridiculous Statement—but Ms. Glandian did

not make the Ridiculous Statement. In fact, their own lawyer who represents Plaintiffs in this

action made the Ridiculous Statement. Accordingly, any claims based on the Ridiculous

Statement must be dismissed. Furthermore, Plaintiffs' failure to quote the allegedly defamatory

statements, merits dismissal of the entire Complaint—particularly when the allegations bear such

minimal resemblance to the actual words spoken.

Even though courts in the Northern District of Illinois do not require a letter-perfect

rendition of the allegedly defamatory statements, they do impose a higher standard of pleading

on defamation plaintiffs. *See Fidelity Nat'l Title Ins. Co. of New York v. Intercounty Nat'l Title Ins. Co.*, 161 F. Supp. 2d 876, 882 (N.D. Ill. 2001) (acknowledging "that some specificity for defamation claims is required" and noting that "the specificity requirement pertains to the content of the defamatory remarks."). As this Court has noted, "to allow a court to determine whether a statement is defamatory, the plaintiff must plead the substance of an allegedly defamatory per se statement with 'sufficient precision and particularity.'" *Wrigley*, 2017 U.S. Dist. LEXIS 202260, at *32 (quoting *Green v. Rogers*, 234 Ill. 2d 478, 492 (2009)). Although federal pleading standards apply in diversity cases, "a federal court's 'reliance on federal procedural rules does not allow [it] to ignore Illinois substantive law' which puts a 'thumb on the scale for defendants' in defamation *per se* actions where damages are presumed." *Wrigley*, 2017 U.S. Dist. LEXIS 202260, *32 (quoting *Lott v. Levitt*, 556 F. 3d 564, 569 (7th Cir. 2009)).The purpose of this requirement is to provide defamation defendants "with general knowledge of the exact language alleged, to allow them to form a responsive pleading." *Wynne v. Stevenson*, 2002 U.S. Dist. LEXIS 24043, at *5 (N.D. Ill. Dec. 13, 2002). Plaintiffs utterly failed to plead the allegedly defamatory statements with the requisite level of specificity. The plaintiff fell similarly short in the *Wrigley* case, and this Court determined that "a number of the remaining alleged defamatory statements cannot be considered defamatory *per se* because they lack the requisite particularity." 2017 U.S. Dist. LEXIS 202260, at *32-33. Thus, Defendants should not be allowed to proceed on amorphous claims.

### C.    The Statements Ms. Glandian actually made are not defamatory *per se*

Illinois recognizes five types of statements as defamatory *per se*,[8] four of which Plaintiffs claim are at issue here, words that impute: (1) a person has committed a crime; (2) a person is

---

[8] Plaintiffs do not make any claims for defamation *per quod*. Even if Plaintiffs were to claim defamation per quod, they have not adequately alleged the requisite special damages. *See Wrigley*, 2017 U.S. Dist. LEXIS 202260, at *30

unable to perform or lacks integrity in performing her or his employment duties; (3) a person

lacks ability or otherwise prejudices that person in her or his profession; and (4) adultery or

fornication. *See Kapotas v. Better Gov't Ass'n*, 2015 IL App (1st) 140534, ¶ 50 (quoting *Green*,

234 Ill. 2d at 491-92). None of the Statements rise to this level. Instead, the Complaint is rife

with mischaracterizations of what Defendants said. This is improper, and the Plaintiffs are bound

by what the Statements actually say, not their mischaracterization of them. *See Wrigley*, 2017

U.S. Dist. LEXIS 202260, at *21 (emphasizing, in case in where plaintiff "loosely" paraphrased

letter, that contents of actual letter would "control" over plaintiff's allegations); *Tuite v. Corbitt*,

224 Ill. 2d 490, 510 (2006); *Barry Harlem Corp. v. Kraff*, 273 Ill. App. 3d 388, 393 (1995).

Defendants' actual words here cannot be the basis for defamation claims.

Plaintiffs contend the Whiteface Statements accuse them of the following crimes:

criminal battery, hate crime, perjury, and conspiring to make false statements. (Compl. ¶¶ 27, 30-

32, 38, 40-41.) When read carefully, though, it is clear that the Whiteface Statements do nothing

of the sort. As an initial matter, stating that an individual previously wore whiteface is not

defamatory *per se*. Furthermore, Ms. Glandian's statements about whiteface were in response to

a video of Abel Osundairo doing a Joker monologue with white makeup on, and she stated that it

was not "implausible" that the brothers may have worn white makeup during the attack on Mr.

Smollett.

Plaintiffs also claim that Ms. Glandian "specifically stated" the Plaintiffs "are guilty of

perjuring themselves during the February 20, 2019 grand jury proceedings." (Compl. ¶ 31.) This

allegation is false. Ms. Glandian never uttered the word "perjury" or the phrase "grand jury" or

---

(noting that "[t]o state a claim for defamation *per quod* . . . a plaintiff must plead special damages"). Plaintiffs merely vaguely allege "economic damages, damages to their reputation, and/or damages to current and prospective business relations". (Compl. ¶ 57.) That is not sufficient. *See Wrigley*, 2017 U.S. Dist. LEXIS 202260, at *31 (finding that general allegations of harm to career and professional advancement do not plead pecuniary losses with "the required specificity").

the word "guilty" (except to note that Mr. Smollett was not guilty) in any of the three media appearances mentioned in the Complaint. Plaintiffs also contend that Ms. Glandian "specifically stated" that "Plaintiffs are guilty of conspiring to give false statements and/or giving false statements to Chicago Police." (Compl. ¶ 32.) Plaintiffs' allegation is simply false.

To the extent that Ms. Glandian suggested the Plaintiffs had not been truthful, she did so conditionally. When Mr. Stephanopoulos asked her on the *Good Morning America* show "[I]f the brothers are saying that he helped them stage this attack, are you saying the brothers are lying?" Ms. Glandian replied "Absolutely." (*GMA* Tr. 6:15-18.)[9] Ms. Glandian therefore stated she disagreed with Plaintiffs only to the extent they contradicted her client. Critically, however, Ms. Glandian did not say that the Plaintiffs had lied to the grand jury or police or in any context under oath. Illinois courts have repeatedly observed that to be actionable as defamation *per se* (in the commission-of-a-crime category), a statement must directly or expressly accuse the plaintiff of committing a specific crime. *See Wrigley*, 2017 U.S. Dist. LEXIS 202260, at *33. *See also Lansing v. Carroll*, No. 11 CV 4153, 2015 U.S. Dist. LEXIS 84147, at *26 (N.D. Ill. June 29, 2015) (collecting Illinois cases). An allegation of criminal conduct "must fairly impute the commission of a crime." *Kapotas*, 2015 IL App (1st) 140534, ¶ 51. Broad, non-specific allegations do not meet this pleading requirement. *See id*. ¶ 51 ("the use of a term which has a broader, noncriminal meaning does not impute the commission of a crime"). Ms. Glandian's statement simply does not rise to the level of an allegation of the commission of a crime.

The Steroid Statements similarly do not amount to defamation *per se*. First, as noted, Ms. Glandian did not even make the Ridiculous Statement. In addition, she did not state that Plaintiffs were "involved in 'illegal' Nigerian steroid trafficking." (Compl. ¶ 46.) Instead, Ms. Glandian said

---

[9] It is not clear that Plaintiffs are even suing over this statement, because they did not identify defamatory statements in their Complaint. Such gamesmanship violates the applicable pleading rules because it does not put Defendants on notice regarding Plaintiffs' claim.

that Abel Osundairo (not Ola Osundairo)[10] said he "can get" steroids in Nigeria and that Mr. Smollett should let Abel Osundairo know if he wanted some. That is it. She did not say Abel Osundairo would get steroids or that he had procured steroids in the past, only that he *could get* steroids. There is no allegation of any specific criminal action. That is not defamatory *per se*.

Plaintiffs also claim the Steroid Statements defame them because harm them in their profession and imply a lack of integrity because they run an "all-natural business." (*Id.* ¶ 53.) Ms. Glandian never said that, though. The "all-natural bodybuilding" statement came from their own lawyer, Ms. Schmidt. In order to bring a claim for defamation, Plaintiffs would therefore need to bring in extrinsic facts (that their lawyer claims their business is all natural). A defamation claim that requires extrinsic facts outside the context of the subject statements is limited to defamation *per quod*. Plaintiffs must allege that the Steroid Statements cause them to suffer special damages—specific pecuniary harm. *Maag v. Illinois Coalition for Jobs*, 368 Ill. App. 3d 844, 853 (2006). Plaintiffs failed to state the requisite special damages and therefore have not pled defamation *per quod*.

Whether the Sex Statements are actionable depends, like the other Statements, on what Ms. Glandian did say, not on Plaintiffs' interpretation of those statements. When she made the Sex Statements, Ms. Glandian was merely speculating on what Ola Osundairo could have been thinking about his brother Abel's activities with Mr. Smollett. (RD Tr. 25:19 – 27:17.) In fact, Ms. Glandian specifically stated that she was not claiming that Mr. Smollett and Abel Osundairo had engaged in a homosexual relationship. When Mr. Carolla asked, "Was there a relationship or was it a crashing on the sofa? Ms. Glandian explicitly denied the existence of a relationship. She responded: "No. But I'm saying – What I'm speaking to is what the older brother would have thought . . . because he knows that Jussie is openly gay." (RD Tr. 27:10-17.) Ms. Glandian never

---

[10] Ola Osundairo has no claim regarding the Steroid Statements because they are not of and concerning him.

stated that Abel Osundairo had sexual relations with Mr. Smollett, which is likely why Plaintiffs did not include in their Complaint any quotes from her on this subject.

### D. All of the Statements can be innocently construed

Even if one or more of the Statements falls within the categories of defamation *per se*, all are non-actionable because they are reasonably capable of an innocent construction. *See Wrigley*, 2017 U.S. Dist. LEXIS 202260, at *32; *Solaia Tech., LLC v. Specialty Publ'g Co.*, 221 Ill. 2d 558, 580 (2006). Plaintiffs repeatedly try to make claims on what Ms. Glandian supposedly "implied" or "inferred." (Compl. ¶¶ 27, 31, 32), but the innocent construction rule prohibits such claims of libel by implication. "The so-called 'innocent-construction rule' requires a court to consider the statement in context and to give the words of the statement, and any implications arising from them, their natural and obvious meaning." *Id*. (citation omitted). "[I]f, as so construed, the statement may reasonably be innocently interpreted . . . it cannot be actionable *per se*." *Id*. (citation omitted). If a statement can be given a reasonable construction that would not be actionable *per se*, the Court must adopt that construction irrespective that it may also be subject to a reasonable *per se* construction. *See Chi. City Day Sch. v. Wade*, 297 Ill. App. 3d 465, 475 (1998). The innocent construction rule is a "rigorous standard" that "favors defendants in *per se* actions." *Id*., 297 Ill. App. 3d at 471.

Here, all the Statements can be reasonably innocently construed. Innocent construction applies with particular force to articles that portray a judicial controversy as the Whiteface Statements do. *See, e.g., Owen v. Carr*, 134 Ill. App. 3d 855, 861 (1985) *aff'd* 113 Ill. 2d 273 (1986) (affirming dismissal on innocent construction where "[t]he entire article speaks in terms of claims, allegations," and "the allegations" that one party in the litigation "is trying to prove."). A statement that one of the Plaintiffs wore whiteface in a video in which he played the Joker can be innocently construed. An innocent construction is the only reasonable construction of that

statement. Similarly, Ms. Glandian did not state that Plaintiffs lied, only that, if they contradicted her client, they were not telling the truth. The innocent construction of the Steroid Statements is merely that Abel Osundairo knew where to find steroids, and, just because someone knows where to find illegal drugs, that does not mean the individual uses or sells them. Finally, the Sex Statements suggest merely that Ola Osundairo may have believed there was a relationship between his brother Abel and Mr. Smollett. Ms. Glandian, however, explicitly denied the existence of a relationship. The Statements in total should be innocently construed.

### E.    Certain Statements are constitutionally protected as expressions of non-actionable opinion

Statements are actionable as defamation only if they are "factual and *false*." *Imperial Apparel, Ltd. v. Cosmo's Designer Direct, Inc.*, 227 Ill. 2d 381, 402 (2008) (emphasis in original). Determining whether an alleged defamatory statement is a statement of fact or opinion is a question of law for the court to decide. *See Wrigley*, 2017 U.S. Dist. LEXIS 202260, at *27-29 (finding on Rule 12(b)(6) motion that several statements were nonactionable opinion); *Brennan v. Kadner*, 351 Ill. App. 3d 963, 969 (2004). Courts consider the "totality of the circumstances" or overall context of the statements. *Id.*; *see also Dubinsky v. United Airlines Master Exec. Council*, 303 Ill. App. 3d 317, 329 (1999). Courts look at whether the statement: (1) has a precise and readily understood meaning; (2) is verifiable; and (3) in its literary or social context signals that it has factual content. *See Wrigley*, 2017 U.S. Dist. LEXIS 202260, at *20 (citing and quoting *Solaia*, 221 Ill. 2d at 581). Defamation actions based on "loose, figurative language," will not stand. *Imperial Apparel,* 227 Ill. 2d at 397.

Under the totality of the circumstances, the Sex Statements are protected opinion. When Ms. Glandian made the Sex Statements, she specifically and repeatedly stated that she was merely propounding a "theory." (RD Tr. 26:2; 26:17.) Indeed, Mr. Carolla, the Podcast co-host,

interjected to state "[i]t's definitely a theory." (RD Tr. 27:2-3.) Moreover, it is an opinion based on disclosed facts. Ms. Glandian states that Abel Osundairo and Mr. Smollett were friends, that Abel Osundairo spent the night at Mr. Smollett's apartment, and that Abel Osundairo was the stand-in for Mr. Smollett's love interest on *Empire*, and "[s]o I think [Ola Osundairo] starts thinking to himself, you know, what's really going on here.) (*Id.*) Ms. Glandian disclosed the facts, then expressed her opinion, and "'when the facts underlying a statement of opinion are disclosed, readers will understand that they are getting the author's interpretation of those facts and are therefore unlikely to construe the statement as insinuating the existence of additional, undisclosed facts.'" *Wrigley*, 2017 U.S. Dist. LEXIS 202260, *25 (quoting *Hadley v. Doe*, 2014 IL App (2d) 130489 ¶ 48). Ms. Glandian provided the listener the underlying facts necessary to determine their own theory as to how Ola Osundairo might react to his brother's relationship with Mr. Smollett.

In addition, Ms. Glandian's statement that Plaintiffs' *would be* lying *if* they disagreed with Mr. Smollett is protected opinion. Ms. Glandian did not state when, where, or how the Plaintiffs would have lied or even that they did lie. In this regard, the statement is akin to a defendant's "vague and general opinion about [plaintiff's] credibility" that was at issue in the *Wrigley* case. 2017 U.S. Dist. LEXIS 202260, at *28. In that case, this Court found a defendant's characterization of the plaintiff's credibility nonactionable because defendant "does not specify the subject of the testimony to which she refers or explain what made the testimony less verifiable." *Id.* Notwithstanding Plaintiffs' attempt to manufacture an allegation of perjury out of Ms. Glandian's vague statement, the same is true here, and the statement is protected opinion.

### F. Mr. Geragos didn't make any of the Statements Plaintiffs allege he made

Plaintiffs have no basis to bring Mr. Geragos into this case. First, the Plaintiffs do not quote a single statement Mr. Geragos made. That makes the Complaint facially defective. A

review of the transcript of the Podcast shows that Plaintiffs did not quote Mr. Geragos because he did not say what they claim he said. This is not a case of two parties reading ambiguous statements differently. Plaintiffs and their counsel grossly misrepresented Mr. Geragos' statements. With no factual support for these allegations in the Complaint, the claims against Mr. Geragos must be dismissed.

### G. Plaintiffs fail to state claims for false light (Counts II and IV) for the same reasons their defamation claims fail

Plaintiffs' false light claims are based on the same underlying conduct as their defamation claims. Therefore, the false light claims fail for the same reasons. *See Seith v. Chicago Sun-Times, Inc.*, 371 Ill. App. 3d 124, 139 (2007) ("[B]ecause the plaintiff's unsuccessful defamation per se claim is the basis of his false-light claim, plaintiff's false-light invasion of privacy claim fails as well.").[11]

To sustain a false light claim, Plaintiffs also must plead actual malice. *See Wrigley*, 2017 U.S. Dist. LEXIS 202260, at *15-16. For false light claims, the Illinois Supreme Court has defined "actual malice" as knowledge that the statements made by a defendant were false or that such statements were made with reckless disregard as to their truth or falsity. *Lovgren v. Citizens First Nat'l Bank of Princeton*, 126 Ill. 2d. 411, 422-23 (1989); *see also, Jacobson v. CBS Broad., Inc.*, 2014 IL App (1st) 132480, ¶ 44 (affirming grant of summary judgment on false light claim, in part, based on failure to show actual malice).

The standard for pleading actual malice is higher than the typical notice-pleading standard in federal court. "Although Rule 9(b) of the Federal Rules of Civil Procedure allows malice to be alleged 'generally,' the bare conclusory claim of malice, unaccompanied by

---

[11] *See also Lovgren*, 126 Ill. 2d 411, 421 (1989); *Kapotas*, 2015 IL App (1st) 140534, ¶ 78; *Schivarelli v. CBS, Inc.*, 333 Ill. App. 3d 755, 764 (2002); *Schaffer v. Zekman*, 196 Ill. App. 3d 727, 736 (1990).

allegations from which the required subjective element of malice might be inferred, is insufficient to survive a motion to dismiss. *See Pippen v. NBC Universal Media, LLC*, 2012 U.S. Dist. LEXIS 195436, at *5 (N.D. Ill. Aug. 2, 2012) (citing *Iqbal*, 556 U.S. at 686-87).

Here, Plaintiffs do not meet their pleading burden. Instead, they allege in conclusory fashion that Defendants have "acted with fault clearly amounting to negligence or actual malice" (Compl. ¶¶ 40, 54), "acted with actual malice and reckless disregard for the truth, knowing these statements were clearly false" (*id.* ¶ 79.), and "knowing they were untrue." (*Id.* ¶ 23.) (*See also id.* ¶¶ 89, 97.) These bald allegations offer no facts as to why Ms. Glandian or Mr. Geragos knew the Statements were false or acted with reckless disregard as to their truth. These conclusory allegations are a thin reed on which to support an actual malice claim, and certainly no indication that Defendants made false statements or made statements despite a high degree of awareness of their probable falsity. The false light claims should be dismissed on this basis as well.

### H. Plaintiffs' *respondeat superior* claim has no reasonable basis in law

Plaintiffs brought a claim for *respondeat superior* (Count V), but *respondeat superior* is a theory of liability, not the basis for an independent cause of action. The Illinois Supreme Court therefore has expressly held that "actual agency and apparent agency are not causes of action." *Wilson v. Edward Hosp.*, 2012 IL 112898, 981 N.E. 2d 980 (2012). *See also Jones v. UPS Ground Freight, Inc.*, 2016 U.S. Dist. LEXIS 26865, *9 (N.D. Ill. Mar. 3, 2016) (holding that, under Illinois law, "*respondeat superior* is not by itself a separate cause of action"). Accordingly, the *respondeat superior* claim should be dismissed.

## III. The Complaint should be dismissed under anti-SLAPP

### A. California anti-SLAPP applies

In Illinois, to resolve conflicts of law, courts apply a "most significant contacts" test. *Ingersoll v. Klein*, 46 Ill. 2d 42, 48 (1970). When an allegedly defamatory statement originates

from numerous states and it is therefore impossible to fix the state possessing the greatest interest in the speaker's conduct, the Seventh Circuit advises that "it makes sense to apply the law of the plaintiff's domicile" because "[t]hat is where the principal injury from a defamation will occur." *Kamelgard v. Macura,* 585 F.3d 334, 341-342 (7th Cir. 2009).

Pursuant to dépeçage, the Court can apply different states' laws to different elements of the lawsuit. *See Underground Solutions, Inc. v. Palermo*, 41 F. Supp. 3d 720, 722 (N.D. Ill. 2014). Although the place of alleged injury might be critical in determining the law applicable to the defamation claim, the choice of law for anti-SLAPP protection involves different interests – namely, protecting the speaker's exercise of First Amendment rights – and could lead to the application of different state law. *See Underground Solutions*, 41 F. Supp. 3d at 722; *Chi v. Loyola Univ. Med. Ctr.*, 787 F. Supp. 2d 797, 803 (N.D. Ill. 2011). Here, Mr. Geragos and Ms. Glandian have strong ties to California, and their law firm, Geragos & Geragos Law Firm, is based in California. (*See* Geragos Aff. ¶¶ 3-4, 9.) California has a strong interest in protecting Mr. Geragos and Ms. Glandian's speech. *See Underground Solutions*, 41 F. Supp. 3d at 725; *Chi*, 787 F. Supp. 2d at 803. The California anti-SLAPP law applies to all Defendants.

Ms. Glandian has significant ties to California. It is her home state; she votes there; she owns property there; she maintains a permanent residence in California; she has a valid California driver's license; and she is licensed to practice law in California. (Glandian Aff. ¶¶ 4-5.) Aside from Ms. Glandian's individual ties to California, Plaintiffs allege that Ms. Glandian was the mere instrumentality of a California-based speaker (Mr. Geragos) and a California-based entity (Geragos & Geragos Law Firm). A corporation can speak only through its employees. *See Randall Dairy Co. v. Pevely Dairy Co.*, 274 Ill. App. 474, 482 (4th Dist. 1934). Accordingly, Ms. Glandian's speech (allegedly on behalf of a California corporation and at the

request of the California-based head of that corporation), should be entitled to the same protection Mr. Geragos and his law firm enjoy. Between Ms. Glandian's personal ties to California and Plaintiffs' allegations that she was acting as the instrumentality of a California-based corporation, the California anti-SLAPP should apply to Ms. Glandian.

**B.     The California anti-SLAPP Act immunizes Defendants**

The California Legislature enacted Cal. Code Civ. Proc. § 425.16 "to nip in the bud" meritless claims that target a defendant's exercise of free-speech rights. *Braun v. Chronicle Publ.,* 52 Cal. App. 4th 1036, 1042 (Cal. Ct. App. 1997). Under the statute, any "cause of action against a person arising from any act of that person in furtherance of that person's right of . . . free speech . . . in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that [it] will prevail on the claim." Cal. Code Civ. Proc. § 425.16(b)(1).

California courts apply a two-part test to assess whether Cal. Code Civ. Proc. § 425.16 requires the Court to strike a plaintiff's claims. In *Navellier v. Sletten,* 29 Cal. 4th 82, 88 (Cal. Ct. App. 2002), the court held that "[f]irst, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity." To make this showing, the defendant must demonstrate that the alleged conduct "underlying the plaintiff's cause [of action] fits one of the categories spelled out in section 425.16, subdivision (e)." *Id.* Those categories include "any written or oral statement or writing made [by the defendant] in a place open to the public or a public forum in connection with an issue of public interest" and "any other conduct [by the defendant] in furtherance of the exercise of the constitutional right ... of free speech in connection with a public issue or an issue of public interest." Cal. Code Civ. Proc. § 425.16(e)(3)-(4). If the claim arises from conduct falling within one of these categories, the court "must then determine whether the plaintiff has

demonstrated a probability of prevailing." *Navellier,* 29 Cal. 4th at 88. If the plaintiff cannot meet this burden, his claim must be stricken. *Id.* Each claim must be examined and "[w]here the allegations of constitutionally protected activity are not merely 'incidental' to the unprotected conduct, the protections of section 425.16 are implicated." *Scott v. Metabolife Intl, Inc.,* 115 Cal. App. 4th 404, 419 (Cal. Ct. App. 2004).

     **C.**     **Plaintiff's claims are subject to a special motion to strike under 425.16(e)(3) and (e)(4)**

     The Statements fall squarely within subsections (e)(3) and (e)(4) of the California anti-SLAPP statute and are therefore entitled to protection. Plaintiffs base their claims on statements allegedly made by Defendants in the course of their representation of Jussie Smollett. Plaintiffs claim the criminal case was complete, but the representation has continued. (Glandian Aff. ¶ 6.) This is the very type of speech that the anti-SLAPP Act seeks to protect. *See, e.g., Nygard, Inc. v. Uusi-Kerttula,* 159 Cal. App. 4th 1027 (2008) (magazine article protected under anti-SLAPP statute); *Seelig v. Infinity Broad. Corp.,* 97 Cal. App. 4th 798 (Cal. Ct. App. 2002) (comments on radio talk show that plaintiff was a "skank" protected under anti-SLAPP statute); *Sipple v. Found, for Nat. Progress,* 71 Cal. App. 4th 226 (Cal. Ct. App. 1999) (magazine article about the custody battle of a nationally known political consultant protected by the anti-SLAPP statute); *Tamkin v. CBS Broad., Inc.,* 193 Cal. App. 4th 133, 149 (Cal. Ct. App. 2011) (finding that defamation and false light claims of realtors who claimed they were the basis for episode of CSI television show subject to being stricken under anti-SLAPP). Plaintiffs' claims are a transparent attempt to punish Mr. Geragos and Ms. Glandian for discussing matters of public interest and to silence Mr. Geragos and Ms. Glandian from making any statements that pertain to them (although Mr.

Geragos did not say anything about them on the Podcast beyond a general discussion of the case and Ms. Glandian's statements have been innocuous).

Accordingly, subsection (e)(3) of California's anti-SLAPP statute, protecting any statement made "in a public forum in connection with an issue of public interest," covers Mr. Geragos and Ms. Glandian's statements. For the same reasons, Mr. Geragos and Ms. Glandian's statements also fall within the catch-all provision in subsection (e)(4) that broadly covers any conduct "in furtherance of the exercise of the constitutional right ... of free speech in connection with a public issue or an issue of public interest." Cal. Code Civ. Proc. § 425.16(e)(4); *see also Damon v. Ocean Hills Journalism Club,* 85 Cal. App. 4th 468, 477 (Cal. Ct. App. 2000) (finding that the definition of "public interest" in § 425.16 has been broadly construed). In discussing the Smollett case and its aftermath, Mr. Geragos and Ms. Glandian were engaging in core protected speech under the California anti-SLAPP statute.

   **D.     Plaintiffs cannot show a probability of prevailing on the merits of their state law claims**

Because Defendants have satisfied the threshold showing under both subsections (e)(3) and (e)(4) of the California anti-SLAPP statute, this Court must strike Plaintiffs' claims unless Plaintiffs demonstrate a probability that they will prevail. Cal. Code Civ. Proc. § 425.16 (b)(1). Plaintiffs cannot do so.

   **1.     Plaintiffs' claims fail for the reasons set forth above with regard to the Motion to Dismiss**

All of Plaintiffs claims are legally deficient. However, even if the Court were to deny Defendants' motion to dismiss, Plaintiffs would not be entitled to pursue their claims based on that ruling alone. *See DuPont Merck Pharm. v. Superior Court*, 78 Cal. App. 4th 562, 568 (Cal. Ct. App. 2000) (holding that "to satisfy its burden under the second prong of the anti-SLAPP statute, it is not sufficient that plaintiffs' complaint survive a demurrer"). Instead, Plaintiffs must

26

satisfy the "procedural screening mechanism for determining whether a plaintiff can demonstrate sufficient facts to establish a prima facie case to permit the matter to go to a trier of fact." *Robertson v. Rodriguez,* 36 Cal. App. 4th 347, 356 (Cal. Ct. App. 1995). Because Plaintiffs' claims against Ms. Glandian have numerous fatal deficiencies, because their claims against Mr. Geragos do not reflect his actual statements, and because Plaintiffs' single claim against Geragos & Geragos Law Firm (*respondeat superior*) is not a recognized claim under Illinois law, Plaintiffs claims should be stricken under California's anti-SLAPP statute.

### 2. Plaintiffs' claims will fail because Plaintiffs cannot meet the applicable constitutional fault standard

Assuming *arguendo* that Plaintiffs' claims could survive a motion to dismiss, Plaintiffs still could not establish a probability of prevailing because they cannot demonstrate that Defendants made any statements about them with actual malice. There is no doubt that Plaintiffs are public figures—they emphasize in their Complaint the "mass public outcry" and "outraged public" attendant to the Smollett case, and they were and are central figures in that controversy. (Compl. ¶¶ 22-23.) *See, e.g., Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 351 (1974) (stating that person may become a public figure for limited range of issues if he "voluntarily injects himself or is drawn into a particular public controversy"). Plaintiffs must therefore adduce "clear and convincing proof" that Defendants made statements "with knowledge of [their] falsity or with reckless disregard for the truth" to clear the reasonable probability of success threshold, rather than relying on legal conclusions. *New York Times Co. v. Sullivan*, 376 U.S. 254, 280 (1964).

Here, Plaintiffs have not alleged and cannot establish that Defendants made statements knowing they were false or harboring serious doubts as to their accuracy. This will be an actual malice case with regard to the false light claims regardless of whether Plaintiffs are limited purpose public figures. Defendants demonstrated Plaintiffs' failure to plead actual malice above.

27

That argument will apply with equal import when Plaintiffs are shown to be public figures with regard to the defamation claims. Plaintiffs do not cannot carry their burden of pleading actual malice with their superficial allegations, and Plaintiffs' claims should be stricken.

## CONCLUSION

For the reasons set forth herein and in the accompanying Motion, the Defendants respectfully request that this Court grant their motions, find that there is no personal jurisdiction over Mr. Geragos, and dismiss Plaintiffs' claims against Defendants (including Mr. Geragos if the Court determines there is personal jurisdiction over him) with prejudice. Defendants further respectfully request that this Court grant their anti-SLAPP motion and enter an order dismissing Plaintiffs' claims against them with prejudice pursuant to Cal. Code Civ. Proc. § 425.16, awarding Defendants their reasonable attorney's fees and costs incurred in connection with this motion pursuant to Cal. Code Civ. Proc. § 425.16(c)(1), and providing such further relief as the Court deems appropriate.

Dated: July 19, 2019

Respectfully submitted,

MARK GERAGOS, TINA GLANDIAN,
AND GERAGOS & GERAGOS LAW FIRM

By: /s/ Brendan J. Healey
        One of their attorneys

Brendan J. Healey (ARDC #6243091)
Natalie A. Harris (ARDC #6272361)
MANDELL MENKES LLC
1 North Franklin Street, Suite 3600
Chicago, IL 60606
(312) 251-1000
bhealey@mandellmenkes.com
nharris@mandellmenkes.com

*Counsel for Defendants Mark Geragos,*
*Tina Glandian, and Geragos & Geragos Law Firm*

28

## <u>CERTIFICATE OF SERVICE</u>

The undersigned, an attorney, hereby certifies that a true and correct copy of the foregoing document has been served on July 19, 2019 via the Court's CM/ECF system on all counsel of record who have consented to electronic service.


/s/ Brendan J. Healey