UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **Olabinjo Osundairo and** <br> **Abimbola Osundairo, Individually,** <br><br> **Plaintiffs,** <br><br> v. <br><br> **Mark Geragos, Tina Glandian,** <br> **and Geragos & Geragos Law Firm,** <br><br><br> **Defendants.** | Case No. 19 cv 2727 <br><br> Honorable Mary M. Rowland <br><br><br><br> JURY DEMAND |

## FIRST AMENDED COMPLAINT

**NOW COME** Plaintiffs Olabinjo Osundairo and Abimbola Osundairo (hereinafter "Plaintiffs" or "Osundairo brothers"), by and through their attorneys, Gregory E. Kulis & Associates, Ltd., the Law Offices of James D. Tunick, and the Gloria Law Group, and for their complaint against Defendants Tina Glandian, Mark Geragos, and the Geragos & Geragos Law Firm, state as follows:

## PARTIES

1. Plaintiff Olabinjo Osundairo (hereinafter "Mr. Ola Osundairo") is an individual who is a United States citizen, born and raised in Chicago, and continues to reside in Chicago, Illinois.

2. Plaintiff Abimbola Osundairo (hereinafter "Mr. Bola Osundairo") is an individual who is a United States citizen, born and raised in Chicago, and continues to reside in Chicago, Illinois.

3. Defendant Tina Glandian is an attorney employed by Geragos & Geragos Law Firm and is a resident of New York City, New York.

4. Defendant Mark Geragos is a partner at Defendant Geragos & Geragos Law Firm

1

and is a resident of Los Angeles, California.

5. Defendant Geragos & Geragos Law Firm is a private law firm with its principal place of business in Los Angeles, California, with business in Las Vegas and New York.

## JURISDICTION AND VENUE

6. The Court has personal jurisdiction over Defendants since they have availed themselves of Illinois law in numerous ways. First, they conducted business in the State of Illinois. Defendants transacted as criminal counsel for Chicago actor Justin "Jussie" Smollett (hereinafter "Mr. Smollett"), defending his Illinois criminal case and often acting as de facto public relations representatives while in Illinois. Second, Defendants also committed torts within the State of Illinois by making public defamatory statements against Plaintiffs, which were published broadly in Illinois by major news outlets such as the Chicago Sun-Times, the Chicago Tribune, and WGN Radio. Moreover, these tortious statements involve a hoax conducted in Illinois and orchestrated by Mr. Smollett. Finally, and importantly, these statements also impacted the reputation of Plaintiffs, who are employed and live in Illinois. Pursuant to the Illinois Long Arm Statute and federal law, Defendants have maintained minimum sufficient contacts with the State of Illinois to establish personal jurisdiction. 735 ILCS 5/2-209.

7. Venue is proper under 28 U.S.C. §1391(b)(2), as a substantial part of the events or omissions giving rise to the claim, as discussed in the previous paragraph, occurred in Chicago, Illinois.

8. This Court also has subject matter jurisdiction because the amount in controversy exceeds $75,000.00 for each Plaintiff, exclusive of interests and costs, and is between citizens of different states, per 28 U.S.C. §1332(a).

## CHOICE OF LAW

9. This complaint will allege violations of the torts of defamation and false light, established under the Illinois common law. This is because Illinois choice-of-law principles hold that the Illinois forum court must apply the substantive laws of the state where the case has "the most significant contacts." *Snead v. Forbes,* 275 N.E. 2d 746, 748-49 (1st Dist. Ill. 1971) *citing* Restatement of Law, Second, Conflicts of Law §150. For the torts of defamation and false light, this is the state in which the defamed plaintiff was domiciled at the time the tortious comments were made, as plaintiff's state of residence is "the place of greatest potential injury to the reputation of plaintiff". *Id.* For Plaintiffs, that state is Illinois.

## FACTUAL ALLEGATIONS

10. On or around the morning of January 29, 2019, it was virally reported that actor Justin "Jussie" Smollett was attacked in Chicago's Streeterville neighborhood while walking home.

11. Mr. Smollett had reported to Chicago Police that two men in ski masks pulled a noose around his neck, poured an unknown liquid on his body, and battered him with their hands and feet. Mr. Smollett also reported that the masked men yelled "this is MAGA country!" – referring to President Trump's campaign slogan "Make America Great Again" – along with various racist and homophobic slurs.

12. Mr. Smollett's report led to international outrage, with near unanimous calls for the Chicago Police (hereinafter "CPD") to find and prosecute Mr. Smollett's attackers. On February 15, 2019, CPD's investigation led them to the Osundairo brothers, the Plaintiffs in this case, upon which they were taken into custody and questioned. On February 15, 2019, Plaintiffs were promptly released without charges, as there was verification and in-depth corroboration that the "attack" was a hoax entirely conceived and directed by Mr. Smollett.

13. CPD and the public at large grew increasingly skeptical about the circumstances of Mr. Smollett's attack. As the Osundairo brothers were extras on Mr. Smollett's television show "Empire," occasionally socialized with Mr. Smollett, and are also Black men, the suggestion that they committed a brutal hate crime against Mr. Smollett raised the proverbial eyebrow.

14. The media soon circulated CPD's theory of what actually occurred: Mr. Smollett paid Plaintiffs a sum of money to stage the attack to benefit himself.

15. In short, Mr. Smollett used his clout as a wealthy actor to influence Plaintiffs, who were in a subordinate relationship to him and were aspiring to "make it" in Hollywood.

16. On January 25, 2019, Mr. Smollett told Plaintiffs, in private, that he needed a favor from them: they were to help him stage a social media hoax and pretend to attack him. Mr. Smollett's motivation was simple. He wanted his employer and the public to notice and appreciate him as a successful Black, openly gay actor. So, Mr. Smollett directed every aspect of the attack, including the location and the noose.

17. On February 20, 2019, Plaintiffs testified truthfully before a grand jury regarding the facts of what happened on or around January 29, 2019.

18. On March 7, 2019, Mr. Smollett was indicted for 16 felony counts of a false report of offense pursuant to Illinois criminal statute 720 ILCS 5/26-1(a)(4). He was represented by Defendants.

19. In a controversial move, the Cook County State's Attorney dropped his charges almost immediately, less than three weeks after charging Mr. Smollett.

20. The swiftness and manner with which Mr. Smollett's charges were handled is notably unheard of in Cook County. Yet, the State's Attorney seemed satisfied by Mr. Smollett's $10,000.00 payment in bond and his "community service" which he apparently already served as

4

a prominent Chicago figure.

21. Mr. Smollett's charges were dropped on or around March 26, 2019.

22. What followed was mass public outcry, including dismay from the media, several district attorney bar associations, police unions, and the federal government. Many argued the Cook County State's Attorney botched the prosecution of Mr. Smollett's case. Some suggested that the State's Attorney cut him a deal due to his affluence and celebrity.

23. Mr. Smollett's attorneys, faced with an outraged public, did not retreat after their success. Instead they doubled down, not simply affirming that Mr. Smollett was a wholly innocent victim, but that (among other accusations) Plaintiffs unequivocally led a criminally homophobic, racist, and violent attack against Mr. Smollett. Defendants made these comments knowing they were untrue to distract from Mr. Smollett's farce and to promote themselves and the Geragos & Geragos Law Firm. This vitriol against Plaintiffs is tortious and comprises the substance of the following allegations.

**DEFENDANT TINA GLANDIAN
COUNT I
COMMON LAW DEFAMATION PER SE**

**I.    Statements Accusing Plaintiffs of Committing a Hate Crime, Perjury, and Conspiring to Make False Statements to Chicago Police**

24. On or around March 27, 2019, Defendant Tina Glandian appeared on Good Morning America, aired by the American Broadcasting Corporation ("ABC"). On or around March 28, 2019, Ms. Glandian appeared the Today show, aired by the National Broadcasting Company ("NBC"). In both appearances, Ms. Glandian discussed her client, Mr. Smollett, and his criminal case. The following statements were echoed in numerous other publications, including the podcast *Reasonable Doubt*.

25. All the statements alleged below were in concert and coordination with Defendant Mark Geragos and Defendant Geragos & Geragos Law Firm.

26. Ms. Glandian insisted Mr. Smollett was innocent of making a false police report and falsely impliedly added that Plaintiffs criminally attacked Mr. Smollett when she stated that the brothers had access to makeup and that they used a number of props in their attack, including bleach and rope.

27. Ms. Glandian further falsely implied that Plaintiffs criminally attached Mr. Smollett when she said that any comment that Mr. Smollett's injuries were self-inflicted is fabricated because "first of all, the brothers come forward and they say that we attacked him, and we punched him, and we did these things."

28. Ms. Glandian then falsely submitted that Plaintiffs may have been wearing "whiteface" while attacking Mr. Smollett – again stating Plaintiffs battered Mr. Smollett and adding the implication that this battery was a hate crime.

29. Ms. Glandian's aforementioned statements were all in an attempt to infer that Plaintiffs did in fact criminally batter Mr. Smollett and managed to do so because they were disguised in whiteface.

30. Ms. Glandian's statements that Plaintiffs committed a hate crime against Mr. Smollett and donned whiteface were published to third parties everywhere as they were broadcast by ABC and NBC, and were republished in numerous newspapers, blogs, and periodicals.

31. Ms. Glandian's statements explicitly identify Plaintiffs as the subject of her accusations, as she was responding directly to questions about the Osundairo brothers.

32.     Ms. Glandian's statements indicating Plaintiffs actually criminally battered Mr. Smollett without his consent are patently false and defamatory, as Mr. Smollett originated, planned, and orchestrated the attack.

33.     Ms. Glandian, in stating that Plaintiffs criminally battered Mr. Smollett implicitly proffered that Plaintiffs are guilty of conspiring to give false statements and/or giving false statements to Chicago Police, and she specifically stated such in media appearances, especially in stating that "[t]he brothers did come forward and state that they had nothing to do with the letter, but it appears that police, during a search of their home, did seize some magazines with . . . missing pages and a stamp book."

34.     Ms. Glandian's statements that Plaintiffs donned "whiteface" on the day of Mr. Smollett's alleged attack are patently false and defamatory, as neither wore "whiteface" or pretended in any way to be Caucasian.

35.     Ms. Glandian's statements were made after the close of Mr. Smollett's criminal case, did not serve any legal function, and was not a requirement of her job as a defense attorney.

36.     Instead, these statements were unnecessarily made on national media to advance Mr. Smollett's and Ms. Glandian's reputation and fame at high cost to Plaintiffs.

37.     Indeed, Ms. Glandian's statements have caused considerable damage to Plaintiffs' careers, as they have lost talent agent contracts and career opportunities.

38.     Thus, Ms. Glandian's statements have caused Plaintiffs irreparable financial damage.

39.     As a result of Ms. Glandian's comments, Plaintiffs have suffered significant emotional distress and feel unsafe and alienated in their local Chicago community. This is because

Ms. Glandian, a very famous attorney, falsely and publicly stated Plaintiffs have committed a gruesome hate crime, lied under oath, and intentionally misled CPD.

40. Ms. Glandian's statements have caused Plaintiffs severe emotional damage.

41. Ms. Glandian, in falsely accusing Plaintiffs of committing a hate crime, perjuring themselves, and making false statements to a police officer, has acted with fault clearly amounting to negligence and/or actual malice.

42. Ms. Glandian's comments, in falsely accusing Plaintiffs of committing a hate crime, perjuring themselves, and making false statements to a police officer, are defamatory per se under Illinois common law.

43. As a result of Ms. Glandian's false and defamatory statements, Plaintiffs suffered and will continue to suffer damage, including economic damages, damages to their reputations, and/or damage to current and prospective business relations.

## II. Statements Harming Plaintiffs in their Profession and Implying a Lack of Integrity in Plaintiffs' Professional Duties

44. On or around April 6, 2019, Defendant Tina Glandian further discussed Plaintiffs on the *Reasonable Doubt* podcast.

45. Ms. Glandian's statements were made after the close of Mr. Smollett's criminal case, did not serve any legal function, and were not a requirement of her job as a defense attorney.

46. Ms. Glandian knew that Plaintiffs were partially self-employed, as creators and promotors of their brand "Team Abel". Team Abel advises and demonstrates how to strengthen and build muscle while maintaining a healthy, steroid-free diet and fitness regimen.

47. At the very least, Ms. Glandian knew that Plaintiffs were self-employed as fitness trainers, and as such, their clients entrusted them with their overall health, nutrition and fitness.

48. Ms. Glandian falsely stated that Plaintiffs are involved in "illegal" Nigerian steroid trafficking, and that these steroids help clients lose weight.

49. In stating that Plaintiffs utilized or even advised clients to use steroids that were illegal in the United States, Ms. Glandian implied that the Plaintiffs lacked integrity in their profession by not operating legal nutrition and fitness regimens.

50. Plaintiffs do not use or distribute illegal Nigerian steroids.

51. Ms. Glandian's comments are patently false and defamatory.

52. These statements were unnecessarily made publicly to numerous third parties to advance Ms. Glandian's reputation and fame and to undoubtedly ruin Plaintiffs' business.

53. Ms. Glandian's statements have caused considerable damage to Plaintiffs' careers, causing Plaintiffs irreparable financial damage, losing business and the opportunity of business.

54. Ms. Glandian's statements have caused Plaintiffs severe emotional distress.

55. Ms. Glandian, in falsely accusing Plaintiffs of running their fitness business fraudulently or with the use of illegal substances, has acted with fault clearly amounting to negligence and/or actual malice.

56. Ms. Glandian, in falsely accusing Plaintiffs of illegally distributing foreign steroids, has acted with fault clearly amounting to negligence and/or actual malice.

57. Ms. Glandian, in falsely accusing Plaintiffs of professionally defrauding and misleading clients, has committed defamation per se under Illinois law, as those statements call into question whether Plaintiffs have integrity in performing their duties as professionals in their industry.

58. Ms. Glandian, in falsely accusing Plaintiffs of criminally distributing foreign unlawful steroids, has committed defamation per se under Illinois law.

59. As a result of Ms. Glandian's false and defamatory statements concerning Plaintiffs' use and distribution of illegal steroids to their clientele, Plaintiffs suffered and will continue to suffer damage, including economic damages, damages to their reputation, and/or damages to current and prospective business relations.

## COUNT II
## COMMON LAW FALSE LIGHT

1-59. The Plaintiffs hereby re-allege and incorporate their allegations of Paragraphs 1-59 of Count I as their respective allegations of Paragraphs 1-59 of Count II as though fully set forth herein.

60. Ms. Glandian made false statements to the third-party press and public that Plaintiffs committed a hate crime, perjured themselves, and conspired to make false statements to CPD.

61. Ms. Glandian made false statements to the third-party press and public that Plaintiffs used "whiteface," both in the past and while committing a hate crime.

62. Ms. Glandian made false statements that Plaintiffs' business is misleading to their clientele and is a sham enterprise, as Plaintiffs use and/or provide illegal steroids as part of their fitness plans.

63. Ms. Glandian made false statements that Plaintiffs are illegally distributing foreign steroids.

64. Statements falsely accusing Plaintiffs of illegal activities, including committing a hate crime, intentionally making false statements to police, and distributing steroids, are objectively offensive.

65. Statements falsely accusing Plaintiffs of lacking professional integrity by lying to clientele about the propriety of steroids are objectively offensive.

66. Ms. Glandian explicitly identified Plaintiffs in making these offensive, untrue statements. Even when she refers to them as "the brothers" they are still easily identifiable.

67. Ms. Glandian, in making these statements, acted with actual malice and reckless disregard for the truth, knowing these statements were clearly false.

68. Ms. Glandian's statements were made after the close of Mr. Smollett's criminal case, did not serve any legal function, were not a requirement of her job as a defense attorney and served only to defame and undermine the Plaintiffs.

69. As a result of Ms. Glandian's objectively and highly offensive statements, Plaintiffs have suffered and will continue to suffer extreme emotional distress, humiliation, and anxiety, damages to their reputation, and/or damage to current and prospective business relations.

**WHEREFORE**, the Plaintiffs OLABINJO OSUNDAIRO and ABIMBOLA OSUNDAIRO pray for judgment against Defendant TINA GLANDIAN, for the appropriate compensatory damages, punitive damages and costs.

## JURY DEMAND

Plaintiffs hereby request trial by jury.

                                                                             Respectfully Submitted,

                                                                             By: */s/* Gregory E. Kulis

Gregory E. Kulis
Erica A. Burgos
Gregory E. Kulis & Associates, Ltd.
30 North LaSalle Street, Suite 2140
Chicago, Illinois 60602
312-580-1830

James D. Tunick
30 North LaSalle Street, Suite 2140
Chicago, Illinois 60602
312-759-7626

Gloria V. Schmidt
Jorge A. Rodriguez
The Gloria Law Group
211 West Wacker Drive, 5th Floor
Chicago, Illinois 60606
312-982-2974