IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS – EASTERN DIVISION

| | |
|---|---|
| OLABINJO OSUNDAIRO and ABIMBOLA OSUNDAIRO, Individually,<br><br>    Plaintiffs,<br><br>v.<br><br>MARK GERAGOS, TINA GLANDIAN, and GERAGOS & GERAGOS LAW FIRM,<br><br>    Defendants. | Case No. 19-cv-2727<br><br>Honorable Mary M. Rowland |

**MEMORANDUM IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS FIRST AMENDED COMPLAINT
AND MOTION TO STRIKE DISMISSED DEFENDANTS**

Having previously lost nearly across the board, Plaintiffs now bring an Amended Complaint that largely replicates claims the Court already dismissed. Plaintiffs have added more of their spin—but not more substance—to the statements at issue. This updated version does not cure the significant deficiencies the Court identified in the original Complaint. The previously dismissed claims should be dismissed with prejudice this time, and the two claims that did survive the original motion to dismiss should be dismissed as well.

The Court dismissed every claim against Tina Glandian in Plaintiffs' original Complaint except two. Those remaining claims arise from Glandian's statements that white makeup could explain the discrepancy between Plaintiffs' dark complexion and Jussie Smollett's recollection that the one attacker he saw had pale skin underneath his ski mask. These claims fail, however, because Glandian's statements are constitutionally protected opinion—a conjecture based on disclosed facts that Plaintiffs do not claim to be false—and are therefore not actionable. The Court dismissed the remaining claims against Glandian without prejudice. The Court found those claims against Glandian deficient as a matter of law, and determined the statements were subject to an innocent construction or not defamatory *per se* or not even made in the first place. Because Plaintiffs cannot resuscitate the dismissed claims, they should be dismissed with prejudice.

The Court also previously dismissed every claim against Glandian's co-defendants, Mark Geragos and the Geragos & Geragos Law Firm; however, only the claim against the law firm was dismissed with prejudice. Because Plaintiffs have not alleged any claims against Geragos and the law firm in the Amended Complaint, Defendants respectfully request that the Court dismiss all claims against Geragos with prejudice and terminate both Geragos and the Geragos firm as defendants pursuant to Fed. R. Civ. P. 12(f).

**I.      BACKGROUND**

### A.     The Court Dismissed Nearly All Claims In Plaintiffs' Original Complaint

Plaintiffs originally alleged five claims against three defendants: defamation *per se* and false light invasion of privacy against Glandian and Geragos, and "respondeat superior" against the Geragos & Geragos Law Firm. Plaintiffs' claims stem from their "attack" on Jussie Smollett in January 2019, which Plaintiffs admit they perpetrated but claim was a staged "hoax" (Dkt. 1 at ¶¶ 10-12, 16), and the ensuing investigation and media coverage. Defendants represented Smollett in the criminal proceedings. Plaintiffs' claims are based on statements Glandian made in two media interviews and one podcast in March and April 2019, respectively, following the dismissal of criminal charges against Smollett.

Defendants moved to dismiss the original Complaint on numerous grounds and provided full transcripts of each of the interviews so the Court could evaluate Defendants' actual statements in context. (*See* Dkt. 31.) The Court granted Defendants' motion in part and dismissed all claims with one exception. (*See* Dkt. 45.) Plaintiffs' claims against Glandian survived to the extent they were based on the "Whiteface Statement"—Glandian's statement during an interview on the *Today Show* that since Abimbola ("Abel") Osundairo had previously worn white makeup in a video he posted on YouTube[1], that it was "not implausible" that Plaintiffs may have worn white makeup as a disguise during the attack on Smollett. (*See* Dkt. 45 at 13-15.) The Court dismissed all claims against Geragos and the Geragos & Geragos Law Firm. (*See id.* at 19-20, 21-22.) The Court found that "after reviewing the podcast transcript, this Court agrees with [Geragos]. Geragos did not make any statements during the podcast that could reasonably be interpreted as being implicated by the allegations in Plaintiffs' complaint."

---

[1] The video has several thousand views and remains available for public viewing at https://www.youtube.com/watch?v=GYUjRtRoAyA.

(*Id.*) The Court dismissed the claim against the Geragos & Geragos Law Firm on the ground that "*respondeat superior* is not by itself a cause of action under Illinois law." (*Id.* at 21.) Defendants filed a motion to reconsider. (*See* Dkt. 53, 56.) The Court denied the motion and clarified that all dismissals were without prejudice, except that the claim against Geragos & Geragos Law Firm was dismissed with prejudice. (*See* Dkt. 71 at 2 n.1.)

### B. Plaintiffs' Amended Complaint Largely Replicates The Original Complaint

Plaintiffs filed a First Amended Complaint ("Amended Complaint") on June 11, 2020. Much of the Amended Complaint is a copy-and-paste of the original Complaint, including allegations the Court has rejected or stricken. The Amended Complaint also lists Mark Geragos and the Geragos & Geragos Law Firm as Defendants under "Parties," even though there are no claims alleged against either Geragos or the law firm in the Amended Complaint.

Plaintiffs continue to rely exclusively on the same two television interviews and one podcast appearance as the factual basis for the allegations in the Amended Complaint.[2] For ease of reference, attached hereto as Exhibit D is a redline comparison between the Amended Complaint and the original Complaint that highlights the areas where Plaintiffs have modified their allegations.

### C. Plaintiffs Reallege Claims Based On The Whiteface Statement

Plaintiffs' claims regarding the Whiteface Statement are the only claims that survived Defendants' motion to dismiss the original Complaint.[3] In the Amended Complaint, Plaintiffs

---

[2] The transcript of Glandian's *Good Morning America* interview is attached hereto as Exhibit A; the transcript of the *Today Show* interview is attached hereto as Exhibit B, and the transcript of *Reasonable Doubt* podcast is attached hereto as Exhibit C. This Court previously found the transcripts cognizable on a motion to dismiss. (Dkt. 45 at 11-12.)

[3] Glandian previously moved to dismiss on the grounds that the Whiteface Statement is subject to an innocent construction and is not defamatory *per se*, and the Court denied the motion. (*See*

3

allege that Glandian "falsely submitted that Plaintiffs may have been wearing 'whiteface' while attacking Mr. Smollett" (Dkt. 64 at ¶ 28), "had access to makeup and that they used a number of props in their attack, including bleach and rope" (*id.* at ¶ 26), and that these statements "were all in an attempt to infer [*sic*] that Plaintiffs did in fact criminally batter Mr. Smollett and managed to do so because they were disguised in whiteface" (*id.* at ¶ 29). Plaintiffs do not dispute that they attacked Smollett,[4] but they contend that their attack was a hoax that Smollett directed. (*Id.* at ¶ 16.) They also do not allege that Glandian's statement that Abel Osundairo appeared in a video wearing white makeup was false, or that the image shown of Abel Osundairo wearing white makeup on the *Today Show* was not authentic.

The statements at issue are found in Glandian's *Today Show* interview and the *Reasonable Doubt* podcast (the "Podcast"). During the *Today Show* interview, Glandian emphasized that she had limited information regarding the investigation of Smollett's assault: "a lot of the – the information that the police – the CPD has put out there and said is evidence has turned out not to be evidence. So we do have to question . . . ." (Ex. B at 9:11-15.) Glandian stated, "there's been more information in leaks than we've actually received from the prosecution in discovery in this case which is a little absurd, but that's the situation. . . . [W]e've heard about videos and surveillance and things like that. We haven't seen it." (*Id.* at 8:18-9:1.) When asked to opine about Plaintiffs' motive, Glandian responded, "We would be speculating at this time . . . . I do have a theory, but, you know, it is speculation." (*Id.* at 10:1-2.)

Glandian emphasized the limitations of Smollett's recollection regarding the attack: "I mean, this is not a regular – this was a very brief interaction." (*Id.* at 13:6-7.) Asked "what are

---

Dkt. 45 at 13-15.) Glandian does not intend to waive innocent construction or the *per se* argument but will not repeat arguments in this motion that the Court previously denied.
[4] The Court stated previously that the Osundairos "carried out the 'attack' . . . ." (Dkt. 45 at 2.)

4

the chances . . . that he saw somebody with light skin," Glandian responded:

> Well, you know, I mean, I think there's – obviously, you can disguise that. You could put makeup on. There is, actually, interestingly enough, a video. You know, I think police did minimal investigation in this case. It was – It took me all of five minutes to Google – you know, I was looking up the brothers, and one of the first videos that showed up, actually, was one of the brothers in whiteface doing a Joker monologue with white makeup on. And so it's not – it's not implausible.

(*Id.* at 14:5-17.)

In their Amended Complaint, Plaintiffs have added a reference to a statement during the Podcast. They allege, "Ms. Glandian . . . falsely impliedly added that Plaintiffs criminally attacked Mr. Smollett when she stated that the brothers had access to makeup and that they used a number of props in their attack, including bleach and rope." (Am. Compl. at ¶ 26.) This apparently refers to an exchange in which co-host Adam Corolla asked Glandian "why would he say two white guys?" (Ex. C at 30:2-3.) Glandian responded with a lengthy explanation, first clarifying that Smollett "only saw one attacker" (*id.* at 30:7), noting that there is no reference to a white attacker in the initial police reports (*id.* at 30:15-23), and then positing that attackers who "used a number of props, . . . you know, with the ropes and the bleach that they put in a little hot sauce bottle . . . – is it crazy they would put, you know, makeup under the ski mask? I don't think that's crazy." (*Id.* at 31:12-32:2.) Plaintiffs had admitted (and do not dispute) that they used the referenced props in their attack on Smollett including rope and bleach in a hot sauce bottle.

## II.  ARGUMENT

### A.  The Whiteface Statement Is Constitutionally Protected Opinion

The Whiteface Statement is Glandian's speculation based on undisputed facts she stated and therefore not actionable. *See Black v. Wrigley*, 2017 WL 8186996, at *25 (N.D. Ill. Dec. 8, 2017) (stating that "when the facts underlying a statement of opinion are disclosed, readers will understand that they are getting the author's interpretation of those facts and are therefore

5

unlikely to construe the statement as insinuating the existence of additional, undisclosed facts") (quoting *Hadley v. Doe*, 2014 IL App (2d) 130489 ¶ 48). Here, Glandian disclosed certain undisputed facts, gave her opinion and theory about these facts, and allowed the viewer/listener to draw their own conclusions about the information.

This type of statement – an opinion that does not misstate facts – is "protected by the First Amendment and thus non-actionable." *Huon v. Denton*, 841 F.3d 733, 743 (7th Cir. 2016). An opinion is "a subjective view, an interpretation, a theory, conjecture, or surmise rather than [a claim] to be in possession of objectively verifiable facts." *Boese v. Paramount Pictures Corp.*, 952 F. Supp. 550, 555 (N.D. Ill. 1996) (quotation omitted). To determine whether a statement is protected opinion, "the emphasis is on whether it contains an objectively verifiable assertion." *Jacobson v. Gimbel*, 2013 IL App (2d) 120478, *35. Courts also consider whether "the general tenor of the context in which the statement appears negate[s] the impression that the statement has factual content," and whether "the social context and setting in which the statement was published." *Wilkow v. Forbes, Inc.*, 2000 U.S. Dist. LEXIS 6587, at *36 (N.D. Ill. May 12, 2000). Whether a statement is one of opinion or fact is a question of law. *Gosling v. Conagra, Inc.*, 1996 U.S. Dist. LEXIS 5356, at *14 (N.D. Ill. Apr. 23, 1996).

Courts have held that statements of conjecture are constitutionally protected opinion. In *Brennan v. Kadner*, 351 Ill. App. 3d 963, 970 (Ill. App. 1st Dist. 2004), the Illinois Appellate Court held that a newspaper columnist's statement that the state election board *could* refer the plaintiff to the U.S. Attorney's office for mail fraud was not a "verifiable statement of fact," but only "conjecture as to whether the Election Board could refer plaintiff's case to federal authorities." *Id.* at 969. Glandian's statement that "[y]ou could put makeup on" (Ex. B at 14:9-10) is pure conjecture. As an Illinois court stated, "[t]he very word 'could' inherently connotes a

6

subjective judgment." *Brennan*, 351 Ill. App. 3d at 939. Indeed, all of Glandian's statements on this topic are clearly her opinion based on the facts available, with her hypothesizing: "you can disguise," "you could put makeup on," and "it's not implausible." (Ex. B at 14:8-17.) Even Plaintiffs acknowledge the uncertainty of this language, alleging that Glandian "falsely submitted that Plaintiffs may have been wearing 'whiteface.'" (Am. Compl. at ¶ 28.)

In *Haynes v. Alfred A. Knopf, Inc.*, 8 F.3d 1222 (7th Cir. 1993), the court rejected a defamation claim against a book author who noted that a man had left his wife for a woman who was more well-off, noting in *dicta* that the author "drew a natural though not inevitable inference" and "did not pretend to have the inside dope." *Id.* at 1227. Here, Glandian drew a similarly natural inference from a publicly available video (which was shown to the audience during her interview on the *Today Show*); Ms. Glandian did not claim to have any other special or insider knowledge about this matter and was very candid that her opinion was based solely on the facts she disclosed. Glandian's statements clearly convey that Smollett knew only what happened to him and had no special information about Plaintiffs or their motive for the attack. The Whiteface Statement demonstrates Glandian's caution in speculating about these matters and highlights the distinction between what Glandian knew and what was theoretical or possible.

Additional examples from case law further support that the Whiteface Statement is non-actionable opinion. In *Chicago Conservation Center v. Frey*, 40 Fed. Appx. 251 (7th Cir. 2002), an art consultant stated that artwork had been damaged by improper exposure to ozone while held by an art restorer. The Seventh Circuit examined the context and noted that the art consultant "offered his remarks . . . only when asked what may have happened." *Id.* at 257. "The context of the conversation, particularly the speed at which it transpired, . . . makes clear that [the art consultant] merely offered a theory as to the cause of damage." *Id*. Similarly here, Glandian

7

offered her theory only after being repeatedly pressed by the host for an explanation; however, she made her lack of personal knowledge clear throughout the *Today Show* interview and explicitly noted that the Whiteface Statement was just a theory. (*See, e.g.,* Ex. B at 10:1-2 ("I do have a theory, but, you know, it is speculation.").)

Another example from the *Haynes* case is pertinent. The non-fiction book at issue in that case included the suggestion by one of its subjects that her child was disabled because of her husband's heavy drinking: "all that alcohol must have gotten into his sperm, she said." 8 F.3d at 1225. The court explained why the statement was conjecture:

> The facts about [the child's] condition . . . were uncontested, and [the mother and the book's author] were entitled to their interpretation of them. [The father] drank heavily; the proposition that a man's heavy drinking can, and that [the father's] heavy drinking did, damage a fetus is represented in the book merely as [the mother's] conjecture. A reasonable reader would not suppose that she had proof, or even the scientific knowledge that might ground a reasonable inference.

8 F.3d at 1227 (in *dicta*). Similarly, in this case, Glandian makes it clear that she does not have any special knowledge regarding Plaintiffs, their motive for the attack, or any other details of the incident. Rather, she repeatedly expresses frustration at not having received information regarding the police investigation before the dismissal of charges, and she candidly discloses that she came across the whiteface video in a Google search. (*See* Ex. B at 8:18-22; 14:12-16.)

Moreover, the Whiteface Statement has nothing to do with a hate crime, as Plaintiffs allege. (*See* Am. Compl. ¶ 28 (alleging that the Whiteface Statement "impli[es] that this battery was a hate crime").) In Illinois, a crime is deemed to be a "hate crime" when it is *motivated by* "the actual or perceived race, color, creed, religion, ancestry, gender, sexual orientation, physical or mental disability, or national origin of another individual or group of individuals, regardless of the existence of any other motivating factor or factors." 720 ILCS 5/12-7.1(a). Here, Glandian never attempted to ascribe any motive to Plaintiffs for the assault. Rather, the Whiteface

8

Statement was Glandian's theory of the *method* by which Plaintiffs may have perpetrated the attack on Smollett (by wearing white makeup), not their motivation for it. Thus, the Whiteface Statement did not imply that the attack was a hate crime.

In fact, the overall gist of Glandian's statements is not that Smollett was the victim of a hate crime or that Plaintiffs should be brought to justice. Rather, Glandian is critical of the investigation and the inaccurate leaking of information to the media, noting, "I think police did minimal investigation in this case," (Ex. B at 14:11-12) and "a lot of the – the information that the police – the CPD has put out there and said is evidence has turned out not to be evidence.") (*Id.* at 9:11-14.) She also minimizes Smollett's physical assault in relation to the aftermath of the incident: "What that attack was pales in comparison to the attack on him by the mayor, by the CPD, by the press, [by] the public." (*Id.* at 16:11-13.) The only time Glandian references a hate crime is to deny her client's involvement in staging one. (*See id.* 8:7-10 (answering "absolutely not" to question whether Smollett "stage[d] his own hate crime").)

Glandian's statement about bleach is similarly protected opinion. Plaintiffs do not allege that any of the underlying facts—that Plaintiffs used rope and bleach during their attack on Smollett or that Abel previously wore whiteface as demonstrated on video—are false. Rather, Plaintiffs allege that by referencing these undisputed facts, Ms. Glandian falsely implied that Plaintiffs criminally attacked Smollett. She is again merely hypothesizing about the attack, and she sums up her discussion with the verbal equivalent of a shoulder shrug: "is it crazy they would put, you know, makeup under the ski mask? I don't think that's crazy." (Ex. C at 30:1-2.) In addition, Glandian's words do not amount to defamation *per se* because they do not allege the commission of a crime. Finally, Plaintiffs improperly attempt to stitch together statements from

9

different interviews in an effort to bolster the Whiteface Statement. (Am. Compl. ¶¶ 26-29.) When viewed in the context in which they were expressed, the statements are not defamatory.

For all the reasons explained above, Plaintiffs' false light claim based on the Whiteface Statement and bleach statement also must fail. "[T]he similarities between defamation and false light claims may make certain restriction and limitations for defamation equally applicable to false light claims. This would include an opinion that allegedly placed plaintiff in a false light." *Moriarty v. Greene*, 315 Ill. App. 3d 225, 237 (Ill. App. 1st Dist. 2000) (citation omitted). Therefore, the false light claim against Glandian also should be dismissed.[5]

### B. Plaintiffs Have Not Cured The Deficiencies In The Claims Against Ms. Glandian That Were Already Dismissed

*a. Plaintiffs Did Not Address The Shortcomings The Court Identified In Claims Arising From The Steroid Statements.*

Plaintiffs allege that they were harmed by Glandian's description of their statements to Smollett regarding steroids, reasserting a claim that this Court already rejected. The Court previously ruled that Glandian's statement was reasonably susceptible to an innocent construction and that, "where extrinsic evidence is needed to explain why a statement is damaging, it cannot be defamatory *per se*." (Dkt. 45 at 17-18.) Nevertheless, Plaintiffs have realleged claims based on the same statement and do not point to any other purportedly actionable statements.

On the Podcast, Glandian stated that "Abel had told [Smollett] that … him and his brother were about to go to Nigeria. He said there's these herbal steroids you can take that really – that are illegal here in the US but that I can get in Nigeria, and it helps you shed fat very

---

[5] Defendants recognize that the Court found that Plaintiffs adequately pled actual malice in the context of the Whiteface Statement. (Dkt. 45 at 21.) Glandian contends that Plaintiffs failed sufficiently to plead actual malice to sustain a false light claim for any of the statements.

10

quickly. So if you are interested, let me know." (Ex. C at 25:7-13 (the "Steroid Statements").)[6] In their original Complaint, Plaintiffs alleged that this statement "call[ed] into question whether Plaintiffs have integrity in performing their duties as professionals in their industry." (Dkt. 1 at ¶ 55.) The Court ruled that "the all-natural, steroid-free aspect of Plaintiffs' business is an extrinsic fact—there is no mention of this during the Podcast. Where extrinsic evidence is needed to explain why a statement is damaging, it cannot be defamatory *per se*." (Dkt. 45 at 18.)

In the Amended Complaint, Plaintiffs do not remedy this defect. Instead of pointing to something Glandian said that would make the Steroid Statements defamatory, they simply ladle on more extrinsic facts, claiming that Glandian "knew that Plaintiffs were self-employed as fitness trainers" and that "clients entrusted them with their overall health, nutrition and fitness." (Am. Compl. at ¶ 47; *see* Ex. D at ¶¶ 44-59.) While Plaintiffs double down on allegations about extrinsic facts, they still do not allege a statement that is defamatory *per se* on its face. This Court has already considered Glandian's actual statements and Plaintiffs' additional allegations do not change the legal analysis.

Any claim based on the Steroid Statements also fails for the reasons Defendants argued in their previous Motion to Dismiss, which the Court agreed with. Plaintiffs' duplicated allegations still do not accurately reflect Glandian's actual words, and the Steroid Statements are subject to an innocent construction. (*Compare* Am. Compl. at ¶ 48 *with* Compl., Dkt. 1 at ¶ 46 (identical language).) This Court had no difficulty recognizing the innocent construction and determined that Glandian's actual statements were "not to implicate Abimbola Osundairo in drug trafficking activity, but to explain a text message between Smollett and Osundairo." (Dkt. 45 at 17-18

---

[6] As Defendants noted previously (*see* Dkt. 31 at 17), Ola Osundairo has no claim regarding the Steroid Statements because they are not of and concerning him.

(upholding this "reasonable innocent construction").) Nothing in the Amended Complaint changes the innocent construction analysis. As before, claims based on the Steroid Statements fail because they do not amount to an allegation of criminal behavior and because they cannot possibly be viewed as defamatory without extrinsic facts.

### b. Plaintiffs Still Fail To Allege Glandian Accused Them Of Perjury.

Plaintiffs restate another claim that this Court has previously dismissed: that Glandian accused them of lying to the police.[7] The Court previously disagreed with Plaintiffs' characterization of Glandian's statements in this regard and even struck certain allegations from the Complaint. (*See* Dkt. 45 at 15-16.) Plaintiffs nonetheless reallege the identical allegations.

In the original Complaint, Plaintiffs alleged that Defendants falsely accused them of lying to the police and grand jury. (*See* Dkt. 1 ¶¶ 31-32, 40-41, 75.) The Court dismissed those claims: "[t]o be actionable as defamation *per se* the statement must directly or expressly accuse the plaintiff of committing a specific crime—not of lying generally." (Dkt. 45 at 15-16 (citing *Black*, 2017 WL 8186996, at *9 and *Kapotas v. Better Gov't Ass'n*, 30 N.E.3d 572, 590 (Ill. App. Ct. 2015)).) The Court noted that Glandian did not "specifically state" that Plaintiffs had lied. (Dkt. 45 at 15.) The Court also ordered that allegations in paragraphs 31 and 32 of the original Complaint, premised on imputing perjury and false reporting based on the Whiteface Statement, be stricken. (Order, Dkt. 45 at 15.) Plaintiffs ignored that order and realleged the stricken allegations in full. (*See* Am. Compl. at ¶¶ 33-34.)

Plaintiffs now put forward the exact same allegations the Court already rejected. Plaintiffs also have added a specific quote from the *Good Morning America* interview: "[t]he brothers did come forward and state that they had nothing to do with the letter, but it appears that

---

[7] Any claim that Glandian accused the Plaintiffs of lying would also be protected opinion.

12

police, during a search of their home, did seize some magazines with . . . missing pages and a stamp book." (*Id*. at ¶ 33.) Plaintiffs allege that, in this statement, Glandian "specifically stated" that Plaintiffs "are guilty of conspiring to give false statements and/or giving false statements to Chicago Police." (*Id.*) Glandian said nothing of the sort.

The *Good Morning America* transcript provides further context. The referenced "letter" is a threatening letter sent to Smollett a week before the attack; the interviewer questions whether Smollett himself sent the letter. Glandian states that police "have not identified who sent the letter" and that "[t]he brothers did come forward and state that they had nothing to do with the letter, but it appears that police, during a search of their home, did seize some magazine with, I guess, missing pages and a stamp book." (Ex. A at 7:15-21.)

Even if an accusation of lying were actionable, Glandian does not accuse Plaintiffs of lying. Rather, she states that an investigation is ongoing and she accurately reports what police located during their search of Plaintiffs' residence. Again, Plaintiffs do not dispute that police seized a magazine with missing pages and a stamp book from their home. Glandian's statement that "[t]he brothers did come forward and state that they had nothing to do with the letter" does not refer to any specific statement, let alone to police. Because Glandian plainly does not "directly or expressly accuse [Plaintiffs] of committing a specific crime," this claim is untenable. *Black*, 2017 U.S. Dist. LEXIS 202260, at *33. Plaintiffs had an opportunity to replead additional facts to support their claims and this time, any dismissal should be with prejudice.

    c. *Plaintiffs' Allegations Do Not Support Their Claim That Glandian Accused Them Of Criminally Attacking Smollett.*

Finally, Plaintiffs have reasserted another dismissed claim: that Glandian defamed them by stating that they criminally attacked Smollett. Throughout this case, Plaintiffs have attempted to proffer their interpretation of Glandian's statements instead of making claims based on her

13

actual words. The Court previously called Plaintiffs out for this and held that Plaintiffs' allegations did not "resemble any specific statement made by Glandian during either show." (Dkt. 45 at 12.) Plaintiffs have reasserted this claim and added more spin about the meaning or implication of Glandian's statements. They do not, however, allege any statements not already considered by this Court.

Referring to the *Good Morning America* interview that this Court has already considered, Plaintiffs allege that Glandian "impliedly added that Plaintiffs criminally attacked Mr. Smollett," "falsely implied that Plaintiffs criminal attached [*sic*] Mr. Smollett, and that Glandian's "statements were all in an attempt to infer [*sic*] that Plaintiffs did in fact criminally batter Mr. Smollett." (*See* Am. Compl. at ¶¶ 26, 27, 29.) The Court has already held that this type of argument "seems to summarize the overall message communicated by Glandian's interviews" and "do[es] not identify any particular statement that forms the basis for this allegation." (Dkt. 45 at 12.) Again, Plaintiffs fail to point to what Glandian actually said.

Plaintiffs also provide a quote from the Podcast—Glandian's statement that "the brothers come forward and they say that we attacked him, and we punched him, and we did these things." (*See* Am. Compl. at ¶ 27 (quotation from Podcast found at Ex. C 20:23-24:1).) This Court already considered Glandian's statements in the Podcast in granting the prior motion to dismiss, and the quoted statements accord with Plaintiffs' own allegations in their Amended Complaint that they attacked Smollett. (*See* Am. Compl. ¶¶ 12, 16.) This is not an allegation of a hate crime. Plaintiffs' claims regarding criminal battery are simply old wine in a new bottle and cannot withstand a motion to dismiss.

### C. Plaintiffs Make No Claims Against Geragos, And Both Geragos and The Geragos & Geragos Law Firm Should Be Stricken From The Complaint

In the Amended Complaint, Plaintiffs do not even attempt to state a claim against

14

Geragos or the Geragos & Geragos Law Firm. However, they still include Geragos and the law firm as defendants. (*See* Am. Compl. at 1 (caption and introduction); *id.* at ¶¶ 4-5 (jurisdictional allegations).) Plaintiffs once refer to statements by "Defendants" while actually alleging statements made only by Glandian, and they also allege that Glandian's statements were "in concert and coordination with Defendant Mark Geragos and Defendant Geragos & Geragos Law Firm." (*Id.* at ¶¶ 23, 25.) These references appear to be typos—holdovers from the prior version of the Complaint—as Plaintiffs seek judgment only against Glandian in their prayer for relief. (*Id*. at 11; Ex. D at ¶¶ 81-100 (counts alleged against Geragos and law firm have been deleted).)

The Court previously dismissed all claims against the Geragos & Geragos Law Firm with prejudice because *respondeat superior* is not by itself a cause of action under Illinois law. (Dkt. 45 at 21-22.) The Court also dismissed Plaintiffs' claims against Geragos because they had not particularly alleged any defamatory statements by him. (*Id*. at 20.) Given a second chance to allege claims against Geragos, Plaintiffs did not even try to re-plead their prior claims, instead removing most of the allegations relating to him. Defendants request that the Court's dismissal of the original claims against Geragos be converted to a dismissal with prejudice and that the Court strike Geragos and the Geragos & Geragos Law Firm from the caption of the Amended Complaint pursuant to Rule 12(f) and terminate Geragos and the firm as defendants.

### III. CONCLUSION

For the reasons set forth herein and in the accompanying Motion, Defendants respectfully request that this Court grant their motion, dismiss all Plaintiffs' claims against all Defendants with prejudice, strike Geragos and the Geragos & Geragos Law Firm from the caption of the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(f), and provide such further relief as the Court deems appropriate.

Dated: November 6, 2020　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　MARK GERAGOS, TINA GLANDIAN, and
　　　　　　　　　　　　　　　　　　　GERAGOS & GERAGOS LAW FIRM

　　　　　　　　　　　　　　　　　　　By: /s/ Brendan J. Healey
　　　　　　　　　　　　　　　　　　　　　　One of their attorneys

Brendan J. Healey (ARDC #6243091)
Natalie A. Harris (ARDC #6272361)
BARON HARRIS HEALEY
225 West Washington Street, Suite 2200
Chicago, IL 60606
(312) 741-1030
bhealey@bhhlawfirm.com

*Counsel for Defendants Mark Geragos,*
*Tina Glandian, and Geragos & Geragos Law Firm*

**CERTIFICATE OF SERVICE**

    The undersigned, an attorney, hereby certifies that a true and correct copy of the foregoing document has been served on November 6, 2020, via the Court's CM/ECF system, on all counsel of record who have consented to electronic service.

                                                  /s/ Brendan J. Healey