**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **Olabinjo Osundairo and** ) | |
| **Abimbola Osundairo, Individually,** ) | **Case No. 19 cv 2727** |
| ) | |
| **Plaintiffs,** ) | |
| ) | **Honorable Mary M. Rowland** |
| **v.** ) | |
| ) | |
| **Mark Geragos, et. al,** ) | |
| ) | |
| ) | |
| ) | |
| **Defendants.** ) | |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS'**

**MOTION TO DISMISS**

NOW COME the Plaintiffs Olabinjo Osundairo and Abimbola Osundairo, by and through their attorneys, Gregory E. Kulis & Associates, Ltd, and for their Response in Opposition to Defendants' Motion to Dismiss, state as follows:

**I.    ARGUMENT**

**A. The Whiteface Statement is Not a Protected Opinion but Rather an Actionable False Assertion of Fact.**

While it is certainly important to ensure that public debate will not be stifled, courts also recognize that "society has a pervasive and strong interest in preventing and redressing attacks upon reputation." *Rosenblatt v. Baer*, 383 U.S. 75, 86 (1996). A statement may successfully fall into one of the defamation per se categories and still nonetheless, be nonactionable. *Hopewell v. Vitullo*, 299 Ill. App. 3d 513, 518 (Ill. App. Ct. 1998). Indeed, certain factors may ultimately render a defamatory statement as nonactionable as a matter of law. *Chi. Conservation Ctr. v. Frey*, 40 Fed. Appx. 251, 256 (7th Cir. 2002). As Defendants point out, opinions that do not misstate actual

1

facts are protected by the First Amendment. *Huon v. Denton*, 841 F.3d 733, 743 (7th Cir. 2016). Put another way, a statement is only actionable if it cannot be reasonably interpreted as stating actual facts. *Chi. Conservation Ctr.*, 40 Fed. Appx. at 256.

The court considers three factors when determining whether an assertion is factual or merely an opinion: "(1) whether the statement has a precise and readily understood meaning; (2) whether the statement is verifiable; and (3) whether the statement's literary or social context signals that it has factual content. *Huon*, 841 F.3d at 743.

Courts have noted that in many instances, opinions imply facts; however, whether a statement of opinion is actionable is a matter of degree. *Chi. Conservation Ctr.*, 40 Fed. Appx. at 256. The more general and vaguer a statement is, the more likely it is to be opinion. *Id*. Additionally, courts have made it clear that a statement can be actionable even when it is "couched within an apparent opinion or rhetorical hyperbole." *Madison v. Frazier*, 539 F.3d 646, 656 (7th Cir. 2008); *see also Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 18-19 (1990) (noting that the phrase "in my opinion, the plaintiff is a liar" may still imply a false factual assertion if the facts upon which the speaker is basing her opinion prove to be incorrect, incomplete, or if her assessment of them is erroneous). In *Madison*, among the many statements at issue was the phrase "sell out." *Id*. at 257. The court reasoned that "sell out" was incapable of being verified as a statement of fact and as such, it was merely an opinion. *Id.*

Further, while pure opinions may not be actionable, mixed opinions can be. *Hadley v. Doe*, 2014 IL App (2d) 130489 ¶48. Unlike a pure opinion which is based upon true, disclosed facts, a mixed opinion appears to be based on defamatory or untrue facts that have not been disclosed. *Id*. If the receiver of the statement can draw the reasonable conclusion that the derogatory opinion expressed must have been based on some undisclosed facts, the speaker may be subject to liability.

2

*Id*. (citing to *Restatement (Second) of Torts* § 566 cmt. c (1977)). In *Hadley*, the court considered the statements about the plaintiff, namely that he was a "Sandusky," "waiting to be exposed," and stated that these phrases implied an existence of undisclosed facts and thus had the potential to fall outside of protected opinion status. *Hadley*, 2014 IL App (2d) 130489 ¶49.

In turning to the matter at hand, in its March 17, 2020 order and opinion (the "March Order"), this Court already addressed the readily understood meaning of the Whiteface Statement, wherein the Court stated "the 'likely intended meaning' of this statement is that the Plaintiffs did in fact attack Smollett and may have been wearing whiteface while doing so." Dkt. 45. Further, in this context, this Court stated that a plausible interpretation of the Whiteface Statement is that Defendant Glandian was attempting to dismiss any inconsistency in Jussie Smollett's story that he'd been attacked by lighted skinned individuals while also trying to reinforce her contention that the Plaintiffs were in fact his attackers. *Id*. Thus, the only real question that remains is whether the Whiteface Statement is a verifiable factual assertion.

As the court noted in *Chi. Conservation Ctr.*, vagueness and generalization matter when determining whether a statement is more likely opinion or factual assertion. 40 Fed. Appx. at 256. Here, Defendant Glandian's statement was neither vague nor general. In fact, her statement was very specific, alleging that Plaintiffs wore whiteface makeup and bolstering this with a statement about the Plaintiffs having been known to wear makeup in the past. Her statement was not vague and simply alleging some sort of general, non-descript disguise but instead, specifically alleged the use of *whiteface*. Given the context in which Defendant Glandian made this statement, during interviews in which she was speaking in defense of her client Jussie Smollett's inconsistent story about his alleged attack, there is a strong possibility that the recipients of her statement would draw the reasonable conclusion that she was stating actual facts.

Unlike the phrase "sell out" in *Madison*, which the court found was incapable of being verified as a statement of fact, the truth or falseness of the Whiteface Statement can be objectively verified. 539 F.3d at 657. Furthermore, by referencing the video in which the Plaintiffs wore Joker makeup, the reasonable conclusion for any listener to draw is that she was aware of verifiable facts that the Plaintiffs very well could have been wearing whiteface when her client allegedly encountered them and thus, the Plaintiffs must have in fact, been her client's attackers.

Defendants attempt to argue that because she disclosed certain facts, her Whiteface Statement was merely an innocent opinion. Dkt. 75 at 6. But even where a speaker states facts, if those facts are incomplete, incorrect or ones' assessment of those facts are somehow erroneous, a statement can still imply a false assertion of fact, which is actionable. *Milkovich*, 497 U.S. at 18-19. Here, in response to a question about her client's statement about being attacked by a white or light skinned individual, Defendant Glandian stated that the Plaintiffs wore Joker makeup before, which implies a knowledge of facts leading to the conclusion that in this instance, Plaintiffs wore whiteface and attacked Smollett. By stating that

For all of the reasons set forth above, Plaintiffs' false light claim based on the Whiteface Statement also survives Defendants' Motion to Dismiss. Not only does the Whiteface statement imply that the alleged attack was not orchestrated and consented to by her client which in turn implies that Plaintiffs committed the crime of battery, but because Defendant's Whiteface Statement (1) has a likely intended meaning that the Plaintiffs did in fact attack Smollett, (2) can lead a recipient to draw the reasonable conclusion the derogatory statement was based on some undisclosed fact that the Plaintiffs must have indeed worn whiteface and attacked Smollett, thus implying a factual assertion, and (3) was made in the context of trying to dispel the inconsistency

4

in her client's story, signaling that the statement has factual content, such statement is not merely opinion and is therefore actionable.

### B. Plaintiffs Have Cured Deficiencies in Their Claims Against Defendant Glandian.

*i. Defendant Glandian's Reasonable Doubt Statements Do Imply a Lack of Integrity in Plaintiffs' Professional Duties.*

Defendants accuse Plaintiffs of only "ladl[ing] on more extrinsic facts," rather than making a good faith effort to remedy any deficiencies in their complaint, which blatantly disregards the language of the amended pleadings and the statements made throughout the *Reasonable Doubt* podcast. Dkt. 75 at 11.

In its March Order, this Court dismissed Plaintiffs' claims of defamation *per se* and false light based on Defendant Glandian's steroid comment because Plaintiff's original complaint relied on the extrinsic fact of the Plaintiffs fitness business model being premised on maintaining an all-natural, steroid-free diet. Dkt. 45 at 18. This Court noted that because this fact was not mentioned at all during the *Reasonable Doubt* podcast, it cannot be defamatory *per se*. *Id*.

In Plaintiffs' amended complaint, they removed reference to this extrinsic fact and instead noted how Defendant Glandian very much knew and acknowledged that Plaintiffs were fitness trainers who worked with clients on their nutrition, health and training plans. Dkt. 64 at 8. Such facts were directly acknowledged by Defendant Glandian during the *Reasonable Doubt* podcast wherein she stated "But, anyway, so he had hired Abimbola . . . to train him for this upcoming music video . . . and that they were going back and forth with the – with, you know, a nutrition plan, training plan, and planning workouts and things of that nature." Dkt.25-1 Exhibit C at 13-14. And again, where she notes that Plaintiff Abimbola gave Jussie Smollett a nutrition plan, stating

"he has a regimented diet, and –including four eggs and whatnot." *Id*. at 15. After remarking on how Plaintiffs were providing Jussie Smollett with training and nutrition plans, Defendant Glandian then goes on to say that Plaintiffs not only had access to illegal steroids but allegedly encouraged Jussie Smollett to take them in order to lose weight. *Id.* at 23. This not only imputes a lack of integrity, but such a statement was made in reckless disregard for its truth or falsity. In the podcast, Defendant Glandian states that her client allegedly wanted to request that Plaintiff Abimbola get these illegal steroids but did not want to put this in a text. *Id*. at 23. She has no way of knowing whether any of this was true or false and as such, acted with actual malice. *See Raveling v. HarperCollins Publishers Inc.*, No. 04-2963, 2005 WL 900232, at *4 (7th Cir. Mar. 4, 2005).

Defendants urge this Court to view the Steroid Statement as having an innocent construction, but in doing so, a court must consider the statement in context. *Solaia Tech., LLC v. Specialty Pub. Co.*, 852 N.E.2d 825, 839 (Ill. 2006). Here, these statements are not extrinsic but contained within the context of the Steroid Statement during the *Reasonable Doubt* podcast. As such, a reasonable observer listening to this podcast could come to understand that Plaintiffs are fitness and nutrition planners and/or trainers who have access to and encourage their clients to take illegal drugs as part of their training and nutrition program. This very clearly imputes that Plaintiffs lack integrity in performing their duties as trainers. Defendant had no reason to raise this issue of steroids and viewed in context of her entire position during the podcast, it is clear that this statement was made to elevate Defendant Glandian's client's name while simultaneously sullying Plaintiffs' reputation.

> ii. *Plaintiffs' Amended Complaint Does Identify Specific Statements, Which Viewed in Context, Impute Plaintiffs of Criminally Attacking Smollettt.*

Defendants accuse Plaintiffs of making claims based upon Plaintiffs' interpretation of Defendant Glandian's statements rather than her actual words, but this again ignores both the

6

language of the amended complaint and the context in which certain statements were made. In its March Order, this Court dismissed claims related to Plaintiffs' alleged criminal attack upon Jussie Smollett because it felt that Plaintiffs did not identify any particular statement that formed the basis of this allegation. Dkt. 45 at 12.

In Plaintiffs' amended complaint, Plaintiffs quoted Defendant Glandian's statement made on the *Reasonable Doubt* podcast where, when asked about the what happened the night of the alleged attack, states that Police Chief Eddie Johnson's assessment of Jussie Smollett's wounds as self-inflicted is completely fabricated "[b]ecause first of all, the brothers come forward and they say that we attacked him, and we punched him, and we did all these things." Dkt. 64 at 6; Dkt.25-1 Exhibit C at 19. Plaintiffs also highlight how throughout this same podcast, imply that that Plaintiffs' criminally battered Jussie Smollett, including when Defendant Glandian made the Whiteface Statement. Again, when viewing Defendant Glandian's statement in context of the entire podcast, it is clear that in trying to dispel the inconsistency in her client's story and to further deny that her client had anything to do with the attack, she used her words to impute that Plaintiffs were the ones responsible for criminally battering Jussie Smollett.

Further, when Defendant Glandian was asked on *Good Morning America* whether the Plaintiffs were lying when they said that her client helped them stage the attack, she replied "[a]bsolutely" and when asked again whether they were not telling the truth, she replied "[n]o." Dkt.25-1 Exhibit A at 56. If her client did not conspire with the Plaintiffs and she is alleging that Plaintiffs did in fact attack her client, the inference is clear – namely that the Plaintiffs made unwarranted contact with Jussie Smollett. Put another way, they battered him, which is a crime. And undoubtedly, she used her words to imply criminal actions without regard for whether they truly occurred or not.

**C. Mark Geragos and Geragos & Geragos Law Firm.**

Defendants correctly point out that Plaintiffs do not make any claims against Mark Geragos or Geragos & Geragos. In Plaintiffs' amended complaint, they remove any previous made claims against them and any continued reference to them as Defendants is inadvertent. As such, Plaintiffs agree that all claims in Plaintiff's original complaint against Defendant Geragos be converted to a dismissal with prejudice and that this Court should strike Defendant Geragos and the Geragos & Geragos Law Firm from the Amended Complaint and terminate the same as defendants in this matter.

**CONCLUSION**

WHEREFORE, for the foregoing reasons, Plaintiffs respectfully request that this Honorable Court deny Defendants' Motion to Dismiss with regard to the Whiteface Statement, Steroid Statement and statements imputing criminal battery, grant Defendants' Motion to Strike dismissed Defendants Mark Geragos and Geragos & Geragos Law Firm, and for any other such relief this Court deems just and reasonable.

Respectfully Submitted,

By: */s/* Gregory E. Kulis
      One of Plaintiffs' Attorneys

Gregory E. Kulis (ARDC # 6180966)
Gregory E. Kulis & Associates, Ltd.
30 North LaSalle Street, Suite 2140
Chicago, Illinois 60602
312-580-1830
gkulis@kulislawltd.com