IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS – EASTERN DIVISION

| | |
|---|---|
| OLABINJO OSUNDAIRO and ABIMBOLA OSUNDAIRO, Individually, | |
| Plaintiffs, | Case No. 19-cv-2727 |
| v. | Honorable Mary M. Rowland |
| MARK GERAGOS, TINA GLANDIAN, and GERAGOS & GERAGOS LAW FIRM, | |
| Defendants. | |

**REPLY IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS FIRST AMENDED COMPLAINT
AND MOTION TO STRIKE DISMISSED DEFENDANTS [1]**

**INTRODUCTION**

Plaintiffs admit that they attacked Jussie Smollett, and they do not dispute Defendants' argument that the Whiteface Statement does not impute the commission of a hate crime under the Illinois hate crime statute. Therefore, the only basis for Plaintiffs' claims arising from the Whiteface Statement is that Glandian accused them of committing battery when they attacked Smollett—they say it was a staged hoax. The Whiteface Statement has nothing to do with the question of whether the attack was a battery or an orchestrated performance. It is simply Glandian's theory on why Smollett reported his attackers had "light skin" when Plaintiffs are Black. That theory is based on disclosed, undisputed true facts and is absolutely protected from liability as "pure opinion." Plaintiffs' claims based on the Steroid Statement also fail because the

---

[1] Plaintiffs agree that all claims against Defendant Geragos should be converted to a dismissal with prejudice and that this Court should strike Defendant Geragos and the Geragos & Geragos Law Firm from the Amended Complaint and terminate these defendants in this matter. (Resp. at 8.) In addition, Plaintiffs do not respond to Defendants' argument that Plaintiffs failed to allege Glandian accused them of perjury, thereby conceding that Plaintiffs' claims based on a purported accusation of perjury should be dismissed with prejudice. *See Vukusich v. Comprehensive Accounting Corp.*, 150 Ill. App. 3d 634, 644 (2d Dist. 1986) (stating that failure to respond is concession of point).

*Reasonable Doubt* podcast (the "Podcast") does not mention that Plaintiffs are professional fitness trainers, and Plaintiffs allege that they were only "partially employed" as "creators and promoters of their brand"—not professional fitness trainers. In addition, nothing in the Amended Complaint affects the Court's previous conclusion that the Steroid Statement can be reasonably innocently construed. Finally, it is undisputed that Glandian did not directly or expressly accuse Plaintiffs of committing battery. Plaintiffs' interpretation of Glandian's actual statements is insufficient to state a defamation claim based on imputation of the commission of a crime. All surviving claims in the Amended Complaint should be dismissed with prejudice.

I.    THE "WHITEFACE STATEMENT" IS NON-ACTIONABLE PURE OPINION THAT DOES NOT IMPLY ANY UNDISCLOSED DEFAMATORY FACTS

The Whiteface Statement does not imply that the attack was—or was not—a battery. It includes no implication at all regarding Smolett's consent to the attack. The Whiteface Statement simply reflects Glandian's theory about why Smollett may have claimed his attackers had "light skin" even though the Plantiffs are Black. Glandian's opinion—that it is neither implausible nor crazy to consider that Abel may have been wearing white makeup during the attack—is based on undisputed, true facts and therefore cannot be actionable.

Plaintiffs concede that "pure opinion" based on true, disclosed facts is not actionable. (Resp. at 2.) That admission is fatal to Plaintiffs' claim based on the Whiteface Statement because Plaintiffs do not dispute the truth of the disclosed facts upon which Glandian based the Whiteface Statement. Plaintiffs do not dispute that Abel previously wore whiteface makeup in a widely viewed YouTube video. Nor do they dispute the truth or accuracy of the still image from that video displayed during Glandian's *Today Show* interview. Finally, Plaintiffs do not dispute that they had access to makeup and used "props" including a rope and a hot sauce bottle of bleach when they attacked Smollett. Based on these true facts—Abel's history of wearing white

2

makeup, access to makeup and use of other "props"—Glandian left open the possibility that Plaintiffs may also have worn white makeup while they attacked Smollett. According to Glandian, this might explain why Smollett said he saw "light skin" when he was attacked. The Whiteface Statement is classic protected "pure opinion."

In an effort to avoid this inevitable conclusion, Plaintiffs mistakenly argue that the Whiteface Statement is actionable "mixed opinion," based on undisclosed, untrue facts. (Resp. at 2.) However, Plaintiffs fail to identify anything in the Whiteface Statement that creates an inference that Glandian is aware of *any undisclosed untrue facts* implicating them in a battery—versus a staged attack. Plaintiffs' reliance on *Hadley v. Doe* underscores the flaw in their "mixed opinion" argument. (Resp. 3.) In *Hadley,* the court determined that defendant's statement that plaintiff was a "Sandusky waiting to be exposed" was actionable mixed opinion. *Hadley v. Doe*, 2014 IL App (2d) 130489, ¶ 49. The court noted that the statement "implie[d] the existence of defamatory facts but d[id] not disclose them." *Id.* The court went on to say that:

> Fuboy calls Hadley a "Sandusky," a figurative term for a child molester. He then states that Hadley is "waiting to be exposed." This phrase, "waiting to be exposed," implies the existence of undisclosed facts. Fuboy's position that Hadley is a child molester appears to be derived from Hadley's past conduct, but Fuboy does not disclose what this conduct was.

*Id.* In other words, Fuboy disclosed no details about what Hadley was "waiting to be exposed" for that led Fuboy to form the opinion that Hadley was a child molester. Therefore, a reasonable reader could infer that Fuboy's conclusion was based on the undisclosed fact that Hadley had prior sexual contact with children—which Hadley claimed was false. The Whiteface Statement creates no similar inference of undisclosed defamatory facts about the attack. Glandian disclosed all the details that formed the basis of her conclusion that Plaintiffs may have been wearing white makeup when they attacked Smollett. No reasonable viewer could infer that Glandian's

3

conclusion about Plaintiffs' white makeup was based on undisclosed facts regarding Plaintiffs' motive for the attack. The conclusion that Plaintiffs might have been wearing white makeup when they attacked Smollett is completely unrelated to whether Plaintiffs attacked Smollett against his will, or at his request.

Plaintiffs argue that the Whiteface Statement created an inference that Glandian was aware that Plaintiffs "very well could have been wearing whiteface when her client allegedly encountered them and thus, the Plaintiffs must have in fact, been her client's attackers." (Resp. at 4.) Whether the Whiteface Statement created an inference that Plaintiffs attacked Smollett is irrelevant because Plaintiffs *admit* they attacked him. Plaintiffs failed to identify any undisclosed defamatory facts implied by the Whiteface Statement relating to Plaintiffs' motive for the attack.

Plaintiffs do not dispute that Glandian clearly disclosed that the Whiteface Statement was her own theory and speculation. (Memo. 8.) They also ignore the numerous cases Defendants cited in their opening memorandum demonstrating that such statements of conjecture constitute protected opinion. (Memo. 6-8.) In addition, Plaintiffs rely heavily upon *Chicago Conservation Center v. Frey*, a "pure opinion" case involving "theory and conjecture" that supports Defendants' position, not Plaintiffs'. (Resp. 1-3.)[2] The case stands for the rule that "the First Amendment affords protection from liability to a speaker expressing a 'pure opinion.'" *Chicago Conservation Center v. Frey*, 40 F. App'x 251, 256 (7th Cir. 2002). Specifically, the court noted "if it is plain that the speaker is expressing a subjective view, an interpretation, a theory, conjecture, or surmise, rather than claiming to be in possession of objectively verifiable facts, the statement is not actionable. *Id.* Here, it is undisputed that Glandian is expressing her theory, and

---

[2] Plaintiffs' reliance on *Milkovich v. Lorain Journal Co.* is also misplaced. *Milkovich* is a "mixed opinion" case involving implied undisclosed defamatory facts about the plaintiff's truthfulness. In a more recent decision, the United States Supreme Court reaffirmed protections for "pure opinion" holding that "a sincere statement of pure opinion is not an untrue statement of material fact." *Omnicare, Inc. v. Laborers Dist. Council Constr. Indust. Pension Fund*, 575 U.S. 175, 186 (2015).

4

she makes clear that she does not have any additional facts regarding the attack because the prosecution had not been forthcoming with discovery in the case. (Mem. 4.) Although Plaintiffs urge this Court to follow *Chicago Conservation Center,* the clear language of that case demonstrates that the First Amendment protects the Whiteface Statement as Glandian's "pure opinion". As the foregoing demonstrates and as Plaintiffs fail to rebut, the defamation claim based on the Whiteface Statement must be dismissed because the statement is non-actionable pure opinion.

**II.      THE STERIOD STATEMENT IS NOT DEFAMATORY *PER SE* AND IS CAPABLE OF A REASONABLE INNOCENT CONSTRUCTION**

Plaintiffs have dropped their argument that the Steroid Statement imputes the commission of a crime and try to salvage their claim by suggesting that the statement "impl[ies] a lack of integrity in Plaintiffs' professional duties." (Resp. at 5.) Plaintiffs' claims based on the Steroid Statement should be dismissed with prejudice because (1) nothing in the Podcast suggests that training Smollett is not Abel's "profession," (2) Glandian did not say that Abel encouraged Smollett to take illegal steroids, and (3) as the Court previously determined, the Steroid Statement is capable of an innocent construction.

Plaintiffs argue that that the Steroid Statement implies a lack of integrity in their *professional* duties as "fitness trainers." (Resp. at 5.) Plaintiffs' status as professional "fitness trainers" is just one of the additional extrinsic facts ladled on in the Amended Complaint. Plaintiffs do not claim that the Podcast refers to them as professional fitness trainers. They acknowledge that the only reference to training in the Podcast is Glandian's statement that Smollett had hired Abel to train him for a music video. (Resp. at 5.) A statement cannot prejudice someone in their profession when there is no way to determine whether the plaintiff is—or is not—a member of that profession. *See Moore v. People for the Ethical Treatment of*

5

*Animals, Inc.*, 402 Ill. App. 3d 62, 72 (1st Dist. 2010). Plaintiffs acknowledge that they were merely "partially self-employed, as creators and promotors of their brand 'Team Abel'"—not professionals. (Am. Compl. ¶ 46.) Glandian also disclosed in the Podcast that "Smollett and Abel had been hanging out a lot and they were *friends. . .* he was not just his trainer, but they were *actually friends*, and they would *socialize and go out*." (Mem. Ex. C., 25:18-23 (emphasis added).) In this context, the Steroid Statement can be reasonably interpreted at a conversation between friends. Even if the Steroid Statement arose while Abel was wearing his "trainer" hat, that role is not disclosed in the Podcast as his profession. The Steroid Statement is not defamatory *per se* because it does not refer to Plaintiffs' "profession."

Even if Plaintiffs could demonstrate that the Podcast disclosed their status as "professional fitness trainers," Plaintiffs' claims arising from the Steroid Statement still fail because Glandian did not state or suggest that Abel "*encouraged* Jussie Smollett to take [illegal steroids] in order to lose weight." (Resp. at 6.)[3] This is yet another situation in which Plaintiffs have mischaracterized Glandian's actual statements in an attempt to manufacture a claim. The Podcast transcript includes no statements by Glandian that Abel encouraged Smollett to do anything illegal. Notably, Plaintiffs do not provide any quotations from the Podcast transcript in support of their claim that Glandian accused Abel of encouraging Smollett to take illegal steroids. Glandian's actual words indicate only that Abel alerted Smollett to the existence of "herbal steroids that are illegal here in the US" and that Abel "can get" them in Nigeria. (Mem. Ex. C., 23:7-24:3.) Glandian goes on to say that it was Smollett who approached Abel to get him the Nigerian steroids, not the other way around ("[Smollett] wanted to tell [Abel] to get these

---

[3] Plaintiffs argue only that Glandian *allegedly* encouraged Smollett to take illegal steroids. The conditional nature of this statement underscores Plaintiffs failure to assert Glandian's actual words spoken. (Resp. at 6.)

6

steroids from Nigeria."). (*Id.* 23:21-22.)[4] The Steroid Statement cannot impute a lack of integrity as a professional fitness trainer because it does not accuse Abel of encouraging Smollett to do anything in connection with the illegal Nigerian steroids.

Finally, Plaintiffs have not cured the defects that led the Court to dismiss their Steroid Statement claims on innocent construction grounds. In the March 17, 2020 Opinion, the Court stated, "Considering the context, Glandian made the steroid comment, not to implicate Abimbola Osundairo in drug trafficking activity, but to explain a text message between Smollett and Osundairo." (Dkt. 45 at 18.) Nothing in the Amended Complaint affects that analysis. The Steroid Statement can be reasonably innocently construed not to implicate Abel in encouraging his client to take illegal steroids, but to explain a text message between Smollett and Abel. Plaintiffs' claims arising from the Steroid Statements should be dismissed with prejudice because they are capable of a reasonable innocent construction.

### III. GLANDIAN DID NOT SAY THAT PLAINTIFFS CRIMINALLY ATTACKED SMOLLETT, AND PLAINTIFFS' PROPOSED IMPLICATION OF HER MESSAGE CANNOT STATE A CLAIM

Plaintiffs do not dispute that none of the Glandian quotations added to the Amended Complaint include any specific statements in which Glandian accuses them of criminal battery. In the March 17, 2020 Opinion, the Court dismissed Plaintiffs' claims based on allegations that

---

[4] Plaintiffs suggest that Glandian acted with "actual malice." (Resp. at 6.) Plaintiffs, however, failed to identify any facts sufficient to create an inference that Glandian made any of the alleged defamatory statements knowing they were false, or entertaining serious doubts as to their truth. *See Catalano v. Pechous*, 83 Ill. 2d 146, 165 (1980) (stating that actual malice requires publication with a "high degree of awareness of probable falsity" or "entertain[ing] serious doubts as to the truth") Accordingly Plaintiffs' false light claims must be dismissed. *See Lovgren v. Citizens First Nat'l Bank*, 126 Ill. 2d 411, 422 (1989) (actual malice is an element of false light invasion of privacy). Even if Plaintiffs adequately pled actual malice, Plaintiffs' false light claims cannot survive if their defamation claims based on the same statements fail. *See Harte v. Chicago Council of Lawyers*, 220 Ill. App. 3d 255, 263 (1st Dist. 1991) ("It follows that as plaintiff has failed to state a cause of action for defamation *per se*, count II, alleging invasion of privacy (false light), must fail as well.")

Plaintiffs criminally battered Smollett because those allegations did "not resemble any specific statement made by Glandian during either show." (Dkt. 45 at 12.) Nothing has changed, and the claims should be dismissed with prejudice. Plaintiffs try to salvage their claim by arguing that Glandian "used her words to *imply* criminal actions." (Resp. at 7.) As the Court previously recognized, "To be actionable as defamation *per se* the statement must directly or expressly accuse the plaintiff of committing a *specific* crime." (Dkt. 45 at 15.) Plaintiffs' spin on Glandian's statements—e.g., "Put another way, they battered him"—concedes that the alleged criminal accusations are not direct or express, but implied. Plaintiffs claims based on accusations of criminal battery should be dismissed because none of Glandian's statements directly or expressly accuse Plaintiffs of battering Smollett.

## CONCLUSION

For the reasons stated herein and in Defendants' memorandum in support of their Motion to Dismiss Plaintiffs' Amended Complaint, Defendants respectfully request that this Court enter an order dismissing the Amended Complaint with prejudice.

Dated: December 14, 2020     Respectfully submitted,

MARK GERAGOS, TINA GLANDIAN, and
GERAGOS & GERAGOS LAW FIRM

By: /s/ Brendan J. Healey
    One of their attorneys

8

Brendan J. Healey (ARDC #6243091)
Natalie A. Harris (ARDC #6272361)
BARON HARRIS HEALEY
225 West Washington Street, Suite 2200
Chicago, IL 60606
(312) 741-1030
bhealey@bhhlawfirm.com

*Counsel for Defendants Mark Geragos,*
*Tina Glandian, and Geragos & Geragos Law Firm*

9

**CERTIFICATE OF SERVICE**

The undersigned, an attorney, hereby certifies that a true and correct copy of the foregoing document has been served on December 14, 2020, via the Court's CM/ECF system, on all counsel of record who have consented to electronic service.

/s/ Brendan J. Healey