**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| OLABINJO OSUMDAIRO AND ABIMBOLA OSUNDAIRO, | |
| Plaintiffs, | Case No. 19-cv-02727 |
| v. | Judge Mary M. Rowland |
| TINA GLANDIAN, | |
| Defendant. | |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Olabinjo Osundairo and Abimbola Osundairo (the "Osundairos") filed an amended complaint naming Mark Geragos, Tina Glandian, and Geragos & Geragos Law Firm ("Defendants") in claims of defamation and false light under Illinois law. Defendants filed a motion to dismiss the First Amended Complaint and Strike Dismissed Defendants (Dkt. 74). For reasons stated herein, Defendants' motion is granted in part and denied in part.

**BACKGROUND FACTS**

The Osundairos filed a two-count complaint alleging defamation per se and false light against Defendants on April 23, 2019. The court previously granted in part, and denied in part, Defendants' 12(b)(6) motion and motion to strike. (Dkt. 45). This Court found that only the statement regarding "whiteface" made by Defendant Glandian survived and dismissed the remainder of Plaintiffs' claims. *Id.* In their First Amended Complaint, Plaintiffs reassert defamation per se and false light against

1

Glandian based on her "whiteface" comment and several claims that were previously dismissed.

The following factual allegations are taken from the First Amended Complaint (FAC) (Dkt. 64) and are accepted as true for the purposes of the motion to dismiss. *See W. Bend Mut. Ins. Co. v. Schumacher*, 844 F.3d 670, 675 (7th Cir. 2016). On January 29, 2019, Chicago-based actor Justin "Jussie" Smollett reported to the Chicago Police Department ("CPD") that two men wearing ski masks attacked him in Chicago's Streeterville neighborhood by pulling a noose around his neck, pouring an unknown substance on him and spouting racist and homophobic slurs. (*Id.* ¶ 11).

On February 15, 2019, as part of the Chicago Police Department's investigation into the incident, the Osundairos were taken into custody and questioned. (*Id.* ¶ 12). The Osundairos told police that the attack was a hoax entirely conceived and directed by Smollett. (*Id.*). On January 25, 2019, Smollett approached the Osundairos, who were extras on Smollett's television show *Empire*, and asked them to help him stage an attack so that his employer and the public would notice and appreciate his success as an openly gay Black actor. (*Id.* ¶ 13). The Osundairos agreed and carried out the "attack" per Smollett's instructions. (*Id.*).

On March 7, 2019, Smollett was indicted in state court for filing a false report. Defendants Tina Glandian, Mark Geragos, and their firm, Geragos & Geragos Law Firm, represented Smollett on his criminal charges. (*Id.* at ¶ 24). The original charges against Smollett were dropped on March 26, 2019. (*Id.* at ¶ 21).

The next day, on or around March 27, 2019, Defendant Glandian appeared on *Good Morning America* and on or around March 28, 2019, she appeared on the *Today* show to discuss the case. (*Id.* at ¶ 25-30). During both appearances she maintained that Smollett was innocent and that the Osundairos criminally attacked him while lying to police about the situation. (*Id.*). She further stated that the Osundairos may have been wearing "whiteface" when they attacked Smollett, rendering the attack a possible hate crime. (*Id.*). On or around April 6, 2019, Defendants Glandian and Geragos discussed Smollett's criminal case on a podcast, *Reasonable Doubt*. (*Id.* at ¶ 24). At that time, Glandian stated that the Osundairos were involved in illegal Nigerian steroid trafficking and advised their fitness clients to use steroids. (*Id.* at ¶ 48-49).

Plaintiffs now brings one count of defamation *per se* alleging that Glandian made statements accusing them of committing a criminal battery, a hate crime, perjury and conspiring to make false statements to Chicago Police. They further allege the statements harmed Plaintiffs in their profession and implied a lack of integrity. Based on these same statements, Plaintiffs bring one count of false light against Glandian.[1]

## LEGAL STANDARD

A motion to dismiss tests the sufficiency of a complaint, not the merits of the case. *Gibson v. City of Chi.,* 910 F.2d 1510, 1520 (7th Cir. 1990). "To survive a motion

---

[1] The parties agree all claims against Defendants Geragos and Geragos & Geragos Law Firm were restated in the FAC in error. (Dkt. 80 at 8; Dkt. 81 at 1, n. 1). All claims against these two defendants are dismissed. Defendants Geragos and Geragos & Geragos Law Firm are terminated.

to dismiss under Rule 12(b)(6), the complaint must provide enough factual information to state a claim to relief that is plausible on its face and raise a right to relief above the speculative level." *Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 333 (7th Cir. 2018) (quotations and citation omitted). *See also* Fed. R. Civ. P. 8(a)(2) (requiring a complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief.").

A court deciding a Rule 12(b)(6) motion accepts plaintiff's well-pleaded factual allegations as true and draws all permissible inferences in plaintiff's favor. *Fortres Grand Corp. v. Warner Bros. Entm't Inc.,* 763 F.3d 696, 700 (7th Cir. 2014). A plaintiff need not plead "detailed factual allegations", but "still must provide more than mere labels and conclusions or a formulaic recitation of the elements of a cause of action for her complaint to be considered adequate under Federal Rule of Civil Procedure 8." *Bell v. City of Chi.*, 835 F.3d 736, 738 (7th Cir. 2016) (citation and internal quotation marks omitted). F.3d 611, 616 (7th Cir. 2011) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 679, 129 S. Ct. 1937, 1950 (2009)). Dismissal for failure to state a claim is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558, 127 S. Ct. 1955, 1966 (2007). Deciding the plausibility of the claim is "'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *McCauley v. City of Chi.*, 671

## LEGAL ANALYSIS

### I.     Defamation and False Light

To state a claim for defamation *per* se under Illinois law, a plaintiff must allege "facts showing that [the] defendant made a false statement about the plaintiff, that the defendant made an unprivileged publication of that statement to a third party, and that this publication caused damages." *Green v. Rogers*, 917 N.E.2d 450, 459 (Ill. 2009). A statement is defamatory *per se* if its harm "is obvious and apparent on its face," such that damages are assumed. *Id.* In Illinois, five categories of statements are considered defamatory *per se*, two of which are pertinent in this case: "words that impute a person has committed a crime" and "words that impute a person is unable to perform or lacks integrity in performing her or his employment duties." *Id.* Although a plaintiff is not required to lay out the allegedly defamatory statements verbatim, their substance must be pled "with sufficient precision and particularity as to permit initial judicial review of [their] defamatory context" and "so that the defendant may properly formulate an answer and identify any potential defenses." *Id.* A statement is not defamatory per se if it is "reasonably capable of an innocent construction." *Lott v. Levitt,* 556 F.3d 564, 568 (7th Cir. 2009) (interpreting Illinois law). The innocent-construction rule "requires a court to consider the statement in context and to give the words of the statement, and any implications arising from them, their natural and obvious meaning." *Solaia Tech., LLC v. Specialty Pub. Co.,* 852 N.E.2d 825, 839 (Ill. 2006).

To state a claim for false light under Illinois law, the Osundairos must allege that (1) they were "placed in a false light before the public as a result of the [D]efendants' actions, (2) that false light "would be highly offensive to a reasonable

person," and (3) the Defendants "acted with actual malice." *Kolegas v. Heftel Broad. Corp.*, 607 N.E.2d 201, 209 (Ill. 1992). Where an "unsuccessful defamation *per se* claim is the basis of his false-light claim, plaintiff's false-light invasion of privacy claim fails as well." *Seith v. Chicago Sun-Times, Inc.*, 861 N.E.2d 1117, 1130 (Ill. App. Ct. 2007).

### A. "Whiteface" Statement

Plaintiffs allege that Glandian engaged in defamation *per se* when she asserted Plaintiffs committed a battery on Smollett and did so while wearing "whiteface," thereby rendering the battery a potential hate crime. (Dkt. 64 ¶¶ 28, 29). This statement was made in her television appearance on NBC's *Today* and was republished in several sources across the United States.[2] The pertinent quotes appear below:

> Ms. Guthrie: According to the Court records, he – Smollett – was very clear with the police on the night of the attack that his attackers were white. He said they had masks on and gloves, but he saw their eyes and he saw the skin surrounding their eyes. Was that a false statement?
>
> Ms. Glandian: …Just to be clear, he only saw one of the attackers, one of them he didn't see. He saw one through a ski mask. Again he could not see their body. Everything was covered. And he [the attacker] had a full ski mask on, except the area around his eyes. He did tell the police that he – from what he saw, he thought it was pale skin or – white or pale skin was, I think what he said. …

*    *    *

---

[2] Because the relevant transcripts from *Good Morning America, Today* and *Reasonable Doubt* are central to the allegations and are consistently referenced in the briefing by both parties, the Court is free to consider them without converting this motion to dismiss into one for summary judgement. *Mueller v. Apple Leisure Corp.,* 880 F.3d 890, 895 (7th Cir. 2018).

Ms. Guthrie: But the Osundairo brothers, what are the chances that … [Smollett] saw someone with light skin?

Ms. Glandian: Well, you know, I mean, I think there's—obviously, you can disguise that. You could put makeup on. There is, actually, interestingly enough, a video. You know, I think police did minimal investigation in this case. It took me all of five minutes to Google—you know, I was looking up the brothers, and one of the first videos that showed up, actually was one of the brothers in "whiteface" doing a Joker monologue with white makeup on. And so it's not—it's not implausible.

(Dkt. 75, Ex. B at 13-14).

In response to the original complaint, Glandian argued the "whiteface" statement could not constitute defamation *per se* because the statement was subject to an innocent construction. This Court denied the motion on those grounds. (Dkt. 45 at 14).[3] Defendant now argues that this statement is constitutionally protected opinion and that donning "whiteface" is not indicative of a hate crime. (Dkt. 75 at 6-8). The Court disagrees.

In determining whether the statement qualifies as a constitutionally protected opinion, we first look to whether the statement could be "reasonably interpreted as stating actual facts." *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 20 (1990). The test for whether a statement is a factual assertion considers "whether the statement is precise, readily understood, and susceptible of being verified as true or false." *Id.* "Opinions that do not misstate facts are protected not only by Illinois law but also by the First Amendment, and that is so even when the opinions concern one of the five

---

[3] Glandian took issue with the Court's reasoning that the statement was not capable of innocent construction and requested reconsideration. (Dkt. 56 at 4). The Court rejected her request. (Dkt. 71). Respecting the Court's ruling, Glandian has not raised it again. (Dkt. 75 at n. 3). She has not waived the argument, however.

defamation per se categories under Illinois law." *Bd. of Forensic Document Examiners, Inc. v. Am. Bar Ass'n,* 922 F.3d 827, 832 (7th Cir. 2019). "In determining whether a statement is one of opinion or one of fact, Illinois law—in keeping with Supreme Court precedent—draws no firm dividing line. Courts consider whether the statement has a precise and readily understood meaning; whether the statement is verifiable; and whether the statement's literary or social context signals that it has factual content." *Id. See Madison v. Frazier,* 539 F.3d 646, 654 (7th Cir. 2008) (court considers "(1) whether the statement has a precise and readily understood meaning; (2) whether the statement is verifiable; and (3) whether the statement's literary or social context signals that it has factual content."). *Compare Brennan v. Kadner*, 814 N.E.2d 951, 967-69 (2004) (Kadner's column relaying that a source had declared the Election Board *could* refer plaintiff's case to the United States Attorney's office for prosecution for mail fraud was opinion because "[t]he statement was not couched in terms of a factual assertion that plaintiff committed the offense of mail fraud, but as conjecture as to whether the Election Board could refer plaintiff's case to federal authorities. The very word 'could' inherently connotes a subjective judgment.") *with Dubinsky v. United Airlines Master Executive Council*, 708 N.E.2d 441, 448–49 (1999) (defendant's letter detailed accusations about plaintiffs' alleged wrongdoing, requested federal investigators become involved, named individuals who could face imprisonment and fines and stated: "I believe that Federal laws have been broken." The court rejected the notion that the statements were opinions and constitutionally

protected based on defendant's use of phrases such as "I believe," "I predict" and "it is my judgment" throughout the letter).

In arguing her statement was opinion and/or conjecture and, thus, constitutionally protected, Glandian stresses the hypothetical nature of some of her remarks: "you could put make-up on"; "you can disguise"; "it's not implausible". (Dkt. 75 at 7-8). This disregards the instruction to read the statement in context. In determining whether a statement is fact or opinion, "[c]ontext is key, as it matters not only what was said, but who said it, where it was said, and the broader setting of the challenged statements." *Bd. of Forensic Document Examiners, Inc.,* 922 F.3d at 832. Read in context, Glandian was pressed about the Plaintiffs being attackers, given Smollett's description of the attackers as light skinned or white. In order to *explain* (not opine) how they could be attackers (as dark-skinned individuals), Glandian describes the use of make-up and bolsters her explanation with the *fact* that one of the Plaintiffs previously performed in whiteface—meaning he was experienced with make-up. *Moriarty v. Greene,* 732 N.E.2d 730, 233 (Ill. App. Ct. 2000) (noting that "a statement will receive First Amendment protection when it does not state actual facts" and finding plaintiff's statement that she "readily admitted that she sees her job as [a child psychologist as] doing whatever the natural parents instruct her to do" is a factual assertion, capable of being proven true or false and therefore not protected).

Plaintiffs have plausibly alleged that Glandian asserted to the *Today* audience that Plaintiffs committed the attack—despite their being dark skinned—with the

help of lightening makeup. Given the context, a plausible interpretation of Glandian's "whiteface" comment is that she was attempting to dispel the inconsistency in Smollett's story (the attackers had light skin) and bolster her contention that the Plaintiffs (who are not light skinned) were Smollett's attackers. Disputing that she ascribed any hate crime motive to Plaintiffs, Glandian asserts she only theorized about "the *method* by which Plaintiffs may have perpetrated the attack." (Dkt. 75 at 10) (emphasis in original). Again, taken in context, Glandian was asserting Plaintiffs' involvement in a racially motivated attack. Smollett's report "led to international outrage, with near unanimous cries for the Chicago Police … to find and prosecute his attackers." (Dkt. 64 at ¶ 12). Explaining that the attackers were white, read in context, adds the implication that the attack was a hate crime. Based on the "whiteface" statement, Plaintiffs have plausibly alleged defamation per se and false light.

### B. Steroid and Illegal Drug Use Statements

Plaintiffs also allege that Defendant Glandian falsely stated they were involved in illegal steroid trafficking for their fitness clients. The amended complaint does not refer to a particular statement but references the *Reasonable Doubt* podcast. Plaintiffs allege that these statements were false and constitute defamation per se because they call into "question whether Plaintiffs have integrity in performing their duties as professionals in their industry." (Dkt. 64 ¶ 57). Plaintiffs also allege that these statements imply that Plaintiffs lack integrity in their profession and Glandian has acted with negligence and actual malice in making these assertions. (*Id.* at ¶55).

Two statements made in the *Reasonable Doubt* podcast are at issue here. First, as to the allegation of illegal steroid trafficking, Glandian stated:

> Abimbola had told [Smollett] that—you know, because they were about to—him and his brother were about to go to Nigeria. He said there's these herbal steroids you can take that really—that are illegal here in the US but that I can get in Nigeria, and it helps you shed fat very quickly. So if you are interested, let me know.

As to their profession as trainers, Glandian stated:

> …. [Abimbola] had been hired for the nutrition and training, and that they were going back and forth with the – with, you know, a nutrition plan, training plan, and plaining [sic] workouts and things of that nature.

(Dkt. 75, Exh. C, 14). Plaintiffs assert Glandian's statement is defamatory *per se* because it imputes a lack of professional integrity in the operation of Plaintiffs' fitness business that promotes an "all-natural," "steroid-free diet and fitness regimen." (Dkt. 64 at ¶46). The Court previously rejected this argument because there was no indication during the *Reasonable Doubt* podcast that Plaintiffs' business model was all-natural and steroid-free. The Court held that because extrinsic evidence "is needed to explain why a statement is damaging, it cannot be defamatory *per se*. *Dubinsky v. United Airlines Master Exec. Council,* 708 N.E.2d 441, 447 (Ill. App. Ct. 1999)." (Dkt. 45 at 18). Plaintiffs have added more allegations: (1) Glandian knew Plaintiffs were fitness trainers with clients who trusted them; and (2) to state the Plaintiffs advised clients to use illegal steroids (or used illegal steroids themselves) implied a lack of integrity in the fitness business. (Dkt. 64 at ¶¶ 47-49). These assertions do not change the Court's analysis. The additional allegations do not make Glandian's actual statements defamatory *per se*, rather extrinsic information about

11

the fitness business and Plaintiffs' business model is required. The Plaintiffs' claims of defamation *per se* and false light based on Glandian's steroid comment are dismissed.[4]

In the alternative, as Glandian notes, she stated that Abimbola Osundairo told Smollett there are steroids available in Nigeria that he could get and for Smollett to let him know if he was interested. There is no statement in the transcripts where Glandian asserts Osundairo "encouraged" Smollett to take steroids or do anything illegal. As this Court previously found, when viewing this statement in context, Glandian's statement does not to impute a lack of ability or integrity as fitness trainers. Rather, it explains text messages between Smollett and Osundairo (*See* Dkt. 75 Ex. C at 22-23). This renders the statement capable of an innocent construction. Plaintiffs' claims of defamation *per se* and false light based on Glandian's steroid comment are dismissed.

### C. Perjury and Lying to Law Enforcement Statements

Plaintiffs allege Defendant Glandian "implicitly proffered" Plaintiffs conspired "to give false statements" and gave false statements to Chicago Police. She was asked on *Good Morning America* whether the Plaintiffs lied when they say that Smollett helped them stage the attack. Glandian responded "Absolutely." (Dkt. 75, Ex. 1 at 6). In the amended complaint Plaintiffs add Glandian's response to a question about a threatening letter Smollett received a week prior to the attack. Glandian stated: "The brothers did come forward and state that they had nothing to do with the letter, but

---

[4] The Court also originally found this statement did not state a cause of action for defamation *per se* based on an allegation of drug trafficking. (Dkt. 45 at 18). Plaintiffs have not raised this claim anew.

it appears that police, during a search of their home, did seize some magazines with … missing pages and a stamp book." (Dkt. 64 ¶ 33). These amended allegations face the same hurdles as those contained in the original complaint.

To be actionable as defamation *per se* the statement must directly or expressly accuse the plaintiffs of committing a specific crime, in this instance perjury. *See Black v. Wrigley*, No. 17 C 101, 2017 WL 8186996, at *9 (N.D. Ill. Dec. 8, 2017). Glandian is accusing Plaintiffs of lying generally and implying found magazines with missing pages and postage stamps in Plaintiffs' apartment are relevant. Notably, Glandian does not directly or expressly accuse them of lying in a grand jury or under oath. Glandian also does not expressly or directly say that the brothers lied to law enforcement. Plaintiffs' claims of defamation *per se* and false light based on Glandian's statements regarding perjury or lying to law enforcement are dismissed.

### D. Criminal Battery Related Statements

Plaintiffs allege Glandian made statements implying they criminally attacked Smollett. The amended complaint alleges that she "falsely impliedly added that Plaintiffs criminally attacked Mr. Smollett when she stated the brothers had access to makeup and that they used a number of props in their attack, including bleach and rope." (Dkt. 64, ¶ 26). Aside from the "whiteface" comment discussed *supra,* the amended complaint does not cite any reference where Glandian "falsely implied" these things. Plaintiffs also allege Glandian furthered this assertion when she responded to questions about whether Mr. Smollett had self-inflicted injuries by stating "first of all, the brothers come [sic] forward and they say that we attacked

him, and we punched him, and we did these things." (*Id.* at ¶ 27). Plaintiffs allege that these statements were all to "infer that Plaintiffs did in fact criminally batter Mr. Smollett." (*Id.* at ¶ 29).

As the Court held previously, this allegation does not allege a specific statement made by Glandian. The allegation seems to summarize the overall message communicated by Glandian's interviews; it may refer to several or even *all* of Glandian's statements. This imprecision leaves Defendants and this Court guessing as to which statements are at issue. Plaintiffs' claims of defamation *per se* and false light based on the allegations in paragraphs 26-27 and 29 are dismissed for lack of specificity. *See Green*, 917 N.E.2d at 462. (dismissing defamation *per se* allegations that did "not set forth precise and particular statements so much as plaintiff's summaries of the types of statements defendant presumably made.").

Plaintiffs' claims of defamation *per se* and false light based on Glandian's statements regarding criminal battery are dismissed.

<u>CONCLUSION</u>

For the foregoing reasons, Defendants' 12(b)(6) motion and motion to strike is granted in part and denied in part. All claims against Defendants Geragos and Geragos & Geragos Law Firm are dismissed. Defendants Geragos and Geragos & Geragos Law Firm are terminated. Counts I and II survive based on the "whiteface" comment. The remaining claims are dismissed.

14

E N T E R:

Dated: March 17, 2022

_____
MARY M. ROWLAND
United States District Judge