IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| OLABINJO OSUNDAIRO and ABIMBOLA OSUNDAIRO, | |
| Plaintiffs, | Case No. 19-cv-02727 |
| v. | Judge Mary M. Rowland |
| TINA GLANDIAN, | |
| Defendant(s). | |

## **MEMORANDUM OPINION AND ORDER**

Plaintiffs Olabinjo and Abimbola Osundairo ("Plaintiffs" or the "Osundairo brothers") have sued Defendant Tina Glandian for one count of defamation and one count of false light related to statements she made about Plaintiffs following an attack on the actor Jussie Smollett. Before the Court now is Glandian's motion for summary judgment on both counts. For the reasons stated below, Glandian's motion for summary judgment [179] is granted.

### **SUMMARY JUDGMENT STANDARD**

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The substantive law controls which facts are material. *Id*. After a "properly supported motion for summary judgment is made, the

1

adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Id.* at 250 (quoting Fed. R. Civ. P. 56(e)).

The Court "consider[s] all of the evidence in the record in the light most favorable to the non-moving party, and [ ] draw[s] all reasonable inferences from that evidence in favor of the party opposing summary judgment." *Logan v. City of Chicago*, 4 F.4th 529, 536 (7th Cir. 2021) (quotation omitted). The Court "must refrain from making credibility determinations or weighing evidence." *Viamedia, Inc. v. Comcast Corp.*, 951 F.3d 429, 467 (7th Cir. 2020) (citing *Anderson*, 477 U.S. at 255). In ruling on summary judgment, the Court gives the non-moving party "the benefit of reasonable inferences from the evidence, but not speculative inferences in [its] favor." *White v. City of Chicago*, 829 F.3d 837, 841 (7th Cir. 2016) (internal citations omitted). "The controlling question is whether a reasonable trier of fact could find in favor of the non-moving party on the evidence submitted in support of and opposition to the motion for summary judgment." *Id.*

## BACKGROUND

### I. Local Rule 56.1

"Local Rule 56.1 statements serve to streamline the resolution of summary judgment motions by having the parties identify undisputed material facts and cite the supporting evidence." *Laborers' Pension Fund v. Innovation Landscape, Inc.*, No. 15 CV 9580, 2019 WL 6699190, at *1 (N.D. Ill. Dec. 9, 2019). The Seventh Circuit has "consistently upheld district judges' discretion to require strict compliance with Local Rule 56.1." *Kreg Therapeutics, Inc. v. VitalGo, Inc.*, 919 F.3d 405, 414 (7th Cir. 2019)

(quotation omitted). "[I]t is within the district court's discretion to strictly enforce local rules regarding summary judgment by accepting the movant's version of facts as undisputed if the non-movant has failed to respond in the form required." *Zuppardi v. Wal-Mart Stores, Inc.*, 770 F.3d 644, 648 (7th Cir. 2014).

If a party disputes an asserted fact, the "party must cite specific evidentiary material that controverts the fact and must concisely explain how the cited material controverts the asserted fact. Asserted facts may be deemed admitted if not controverted with specific citations to evidentiary material." *Noe v. Smart Mortg. Centers, Inc.*, No. 1:21-CV-01668, 2024 WL 4346562, at *2 (N.D. Ill. Sept. 29, 2024) (quoting L.R. 56.1(e)(3)).

Plaintiffs disputed various facts contained in Glandian's Rule 56.1 statement, but they failed to identify any "specific evidentiary material" to support their disputes. As a result, all of Glandian's statements of fact are deemed admitted. The Court addresses any relevant attempted disputes of fact in the footnotes below.

## II. Factual Background

The Osundairo brothers attacked actor Jussie Smollett in Chicago on January 29, 2019. [181] ¶ 5. Plaintiffs describe the attack as being "fake," "staged", and a "social media hoax" that was orchestrated my Mr. Smollett to create public attention. [181] ¶¶ 5-6. To that end, the Osundairo brothers claim Smollett directed that the attack occur in the view of a surveillance camera and that the brothers dressed and acted like "white supremacists" and "MAGA Trump supporters." [181] ¶¶ 7-8. Plaintiff Abimbola attempted to look like a "southern country white person" during the attack.

3

[181] ¶ 8. Immediately before the attack, Plaintiffs shouted racist and homophobic slurs at Smollett, who is black and openly gay. [181] ¶¶ 9-10. Abimbola struck Smollett during the attack and tried to bruise him, although Plaintiffs contend that the punches were "pulled" so as to not harm Mr. Smollett. [181] ¶¶ 11-12.

The attack generated significant public interest, and the Osundairo brothers enlisted a public relations agency to handle the volume of media inquiries that they received.[1] [181] ¶¶ 13-14. Within a month of the attack, Plaintiffs and their representatives began negotiating their participation in a documentary in which the brothers planned to tell their story.[2] [181] ¶ 15. Since the attack, the Osundairo brothers starred in both a documentary and in a series of podcasts related to the attack, and the brothers have made several other related media appearances. [181] ¶¶ 16-17. At the time of briefing, Plaintiffs were working with a publisher on a book related to their involvement. [181] ¶ 18.

---

[1] Plaintiffs dispute, without citing to the record, that they "ever gave any interviews in response to these media inquiries." [192] ¶ 14. But Plaintiffs separately admit that they starred in a documentary and a series of podcasts and "made several other media appearances" following the attack. [192] ¶¶ 16-17. The Court is uncertain what Plaintiffs mean to dispute, and the statements in question are deemed admitted pursuant to Rule 56.1.

[2] Plaintiffs acknowledge that "pitches" were made, but dispute that the exhibits Glandian cited to in her Rule 56.1 statement show "negotiations." [192] ¶ 15. The exhibits Glandian provided, however, confirm that negotiations occurred. The record shows that Plaintiffs' counsel received an offer in an email with the subject line "Proposed Shopping Deal/Documentary" that specified amounts to be paid to each brother for the rights to their story and speculated on amounts that VH1 and Starz/HBO might pay. [181-8]. The offer also guaranteed "consulting fees" for Plaintiffs' counsel. [181-8]. Plaintiffs' counsel responded: "Please consider this email my formal intention of moving forward with your proposal as outlined below and as we further discussed today – including the 15k signing bonus for a time period of 3 weeks – with the exclusivity for a documentary." [181-8]. Glandian's statement ("Plaintiffs and their representatives began negotiating participation in a documentary that would allow them to tell their story") is deemed admitted pursuant to Rule 56.1.

Smollett was charged with filing a false police report related to the attack, although those charges were dropped. [181] ¶¶ 19-20. Defendant Glandian represented Smollett in those proceedings. [181] ¶ 21. Glandian appeared on the *Today Show* on March 27, 2019, to discuss the charges. [181] ¶¶ 22-23. The *Today Show* interviewer, Savannah Guthrie, asked Glandian twice whether the Osundairo brothers had attacked Smollett and separately what their motive would have been; Glandian declined to identify Plaintiffs as the attackers or speculate on their motive. [181] ¶¶ 30-32. Guthrie separately stated that Smollett had reported to the police that his attackers were white, and, noting that the Osundairo brothers are black, asked Glandian if Smollett was lying. [181] ¶¶ 33-34. Glandian replied:

> Ms. Guthrie: But the Osundairo brothers, what are the chances that that's the case, that he saw someone with light skin?
>
> Ms. Glandian: Well, you know, I mean, I think there's—obviously, you can disguise that. You could put makeup on. There is, actually, interestingly enough, a video…It took me all of five minutes to Google—you know, I was looking up the brothers, and one of the first videos that showed up, actually, was one of the brothers in white face doing a Joker monologue with white makeup on. And so it's not—it's not implausible.

This exchange (the "Whiteface Statement") is the only allegedly defamatory statement at issue in this litigation.

At the time of the *Today Show* interview, Glandian was not aware of any information that would have led her to believe that her statements regarding the white makeup were false or were likely to be false.[3] [181] ¶¶ 38-39. Glandian did not

---

[3] Plaintiffs dispute this, but in so doing they say only that "Ms. Glandian had conducted numerous conversations with her client, Jussie Smollett, that constituted said information." [192] ¶¶ 38-39. Putting aside that even if such conversations had occurred, they would be protected by attorney-client

5

intend to accuse Plaintiffs of committing a crime, and she did not view her statements as an accusation of committing a crime.[4] [181] ¶¶ 42-43.

## ANALYSIS

Glandian argues she is entitled to summary judgment for two reasons. First, she argues that that the Osundairo brothers are limited purpose public figures, and there is no evidence in the record on which a finder of fact could determine that Glandian acted with actual malice. Second, Glandian argues that the Whiteface Statement was substantially true, and that Glandian thus cannot be liable for either defamation or false light. The Court agrees with Glandian on both issues.

### I. Summary Judgment is Appropriate Because Plaintiffs Cannot Establish that Glandian Acted with Actual Malice.

In order to recover for defamation against a public figure, a plaintiff must establish that the allegedly defamatory statements were made with "actual malice." *Jacobson v. CBS Broad., Inc.*, 19 N.E.3d 1165, 1175 (Ill. App. Ct. 2014). The Court holds that Plaintiffs are "limited purpose public figures" and that the undisputed facts show that Glandian's statements were not made with actual malice.

### a. The Osundairo Brothers are Limited Person Public Figures.

---

privilege, Plaintiffs do not cite to any evidence in the record indicating what conversations they are referring to, what was discussed in those conversations, or how they may function to dispute Glandian's statements. Pursuant to Rule 56.1, Glandian's statements in paragraphs 38 and 39 are deemed admitted.

[4] Glandian testified to the truth of such statements in a declaration. Plaintiffs admit that Glandian testified to this effect and do not either dispute her testimony or point to any other evidence in the record to create a dispute of fact. Because Plaintiffs do not dispute the statements contained in paragraphs 42 and 43 of Glandian's Rule 56.1 statement, they are deemed admitted.

6

For purposes of a defamation claim, a "public figure" is someone who, "through his voluntary conduct, has assumed a role of 'especial prominence in the affairs of society' so as to 'invite attention and comment' upon his actions." *Jacobson,* 19 N.E.3d at 1175 (quoting *Gertz v. Welch*, 418 U.S. 323, 345 (1973)). Illinois law distinguishes between "general purpose public figures" and "limited purpose public figures." A "general purpose public figure" is one who has achieved "such pervasive fame or notoriety" that they "become a public person for all purposes and contexts." *Id*. (quotations omitted). A "limited purpose public figure" is someone who has "thrust themselves to the forefront of particular public controversies in order to influence the resolution of the issues involved." *Id*. (quotations omitted). Illinois has adopted the D.C. Circuit's three-prong test to determine whether someone qualifies as a limited purpose public figure. *Id*. at 1176. "First, there must be a public controversy, which means an issue that is being debated publicly, the outcome of which impacts the general public or some portion of it in an appreciable way . . . Second, the plaintiff must have undertaken some voluntary act seeking to influence the resolution of the issues involved . . . [Third], the alleged defamation must be germane to the plaintiff's participation in the controversy." *Id*. (citing *Waldbaum v. Fairchild Publications, Inc.*, 627 F.2d 1287, 1297 (D.C. Cir. 1980) (cleaned up). *Waldbaum* also framed the second prong as a question of whether the plaintiff "could realistically have expected, because of his position in the controversy, to have an impact on its resolution." 627 F.2d at 1297.

Plaintiffs contest only the second prong, arguing that there is a question of fact "as to whether Plaintiffs voluntarily participated and exposed themselves or 'could realistically have been expected, because of their position in the controversy, to have an impact on its resolution.'" [191] at 8 (citing *Waldbaum*, 627 F.2d at 1297). In support of this, Plaintiffs claim that they wore ski masks "to conceal their identity and they were never to be revealed." [191] at 8. The Court disagrees for several reasons.

First, under the D.C. Circuit test that Illinois has adopted, whether a given "plaintiff is a public figure is a question of law for the court to resolve." 627 F.2d at 1293 n.12. Second, the cited-to portion of the record to support the proposition that Plaintiffs' identities "were never to be revealed" says no such thing. Third, even if the record did support that proposition, Plaintiffs' intent to remain anonymous is not the relevant question under the test articulated in *Waldbaum*. Rather, the question is whether the plaintiff "voluntarily injects himself or is drawn into a public controversy." *Harris v. Quadracci*, 48 F.3d 247, 250 (7th Cir. 1995). Courts generally find that a plaintiff has voluntarily drawn themselves into a public controversy even if they did not intend to become a public figure. *See, e.g., Rosanova v. Playboy Enterprises, Inc.*, 411 F. Supp. 440, 445 (S.D. Ga. 1976), *aff'd,* 580 F.2d 859 (5th Cir. 1978) (rejecting a plaintiff's argument that he was a private person because he "voluntarily engaged in a course that was bound to invite attention and comment."); *Clyburn v. News World Commc'ns, Inc.*, 903 F.2d 29, 33 (D.C. Cir. 1990) (holding that a plaintiff who engaged in conduct that "raised the chances that he would become

embroiled in a public controversy" could not claim he was a "purely private person."; *Berisha v. Lawson*, 973 F.3d 1304, 1311 (11th Cir. 2020) (holding individual reportedly involved in international arms trade was a limited purpose public figure where "there can be no doubt he entered into the matter voluntarily").

The ways in which Plaintiffs voluntarily injected themselves into this public controversy are myriad. Among other things, the Osundairo brothers (1) planned the attack with Smollett in Smollett's car, (2) purchased a rope, gloves, ski masks, and a red hat to use during the attack, (3) screamed, as a part of the planned "hoax," that Chicago "is MAGA country" while dumping bleach on Smollett and putting a noose around his neck, (4) committed the attack, under Smollett's direction, within view of a surveillance camera, (5) following the attack, enlisted a public relations agency to help manage the media inquiries they received, (6) sought, through legal counsel, to sell their rights to tell the story of the attack in a documentary, (7) did in fact star in a documentary and podcast series about their role in the attack, and (8) are working with a publisher regarding a book about the attack. There is no question that Plaintiffs voluntarily involved themselves in this controversy, regardless of whether they intended that their identities become public. The Court holds that they are thus limited purpose public figures.

  b. *There is no genuine dispute of fact regarding actual malice.*

Because the Osundairo brothers are limited purpose public figures, to recover for defamation they must establish "by clear and convincing evidence" that Glandian acted with "actual malice." *Jacobson*, N.E. 3d at 1175. "Actual malice, or '*New York*

9

*Times* malice,' requires that the party making a defamatory statement do so 'with knowledge that it was false or with reckless disregard for whether it was false or not.'" *Chi. Dist. Council of Carpenters Pension Fund v. Reinke Insulation Co.*, 464 F.3d 651, 655 (7th Cir. 2006) (quoting *Old Dominion Branch, No. 496 Nat. Assn. of Letter Carriers v. Austin*, 418 U.S. 264, 281 (1974)). A defendant acts with reckless disregard for a statement's falsity when the defendant "in fact entertained serious doubts as to its truth," or when "the publication was made with a high degree of awareness of its probably falsity." *Woods v. Evansville Press Co.*, 791 F.2d 480, 484-85 (7th Cir. 1986) (cleaned up).

Whether a defendant acted with actual malice is generally a matter for a trier of fact to decide. *Catalano v. Pechous*, 387 N.E.2d 714, 725 (Ill. 1978)). The question "is *not* whether a reasonable person would have found it prudent" to make the allegedly defamatory statement, "but whether there is 'sufficient evidence to permit the conclusion that *[Glandian] in fact* entertained serious doubts as to the truth of" the statement. *Chicago Dist. Council*, 464 F.3d at 655 (7th Cir. 2006) (quotations omitted) (emphasis added). A court can grant summary judgment to the defendant on this issue only when "the material submitted, viewed in the light most favorable to the plaintiff, could support a reasonable trier of fact-finding actual malice 'by the clear and convincing evidence standard.'" *Burns v. Schock*, 2023 IL App (4th) 220478-U, ¶ 49 (quoting *Kessler v. Zekman*, 620 N.E.2d 1249, 1261 (Ill. App. Ct. 1993); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986) ("[An] appropriate summary judgment question will be whether the evidence in the record could support a

10

reasonable jury finding [] that the plaintiff has shown actual malice by clear and convincing evidence.").

Here, Plaintiffs have submitted no evidence on which a jury could find that Glandian acted with actual malice, let alone clear and convincing evidence. Glandian testified in a declaration that she did not have any information that would lead her to believe the Whiteface Statement was false and did not entertain any doubts as to the truth of her statements. Plaintiffs apparently chose not to depose Glandian or pursue any other form of discovery through which they could contest Glandian's statements. Glandian referred to these statements from her declaration in her Rule 56.1 statement, and Plaintiffs' only response is that "Ms. Glandian had conducted numerous conversations with her client, Jussie Smollet, [sic] that constituted said information." [192] ¶ 40. This falls short of Rule 56.1's requirement that "[t]o dispute an asserted fact, a party must cite specific evidentiary material that controverts the asserted fact." L.R. 56.1(e)(3). In their brief, Plaintiffs also point to the questions that Glandian was asked during the *Today Show* to argue that Glandian should have had doubts about the truth of what she said. But "[a] motion for summary judgment cannot be defeated merely by an opposing party's incantation of lack of credibility over a movant's supporting affidavit." *Walter v. Fiorenzo*, 840 F.2d 427, 434 (7th Cir. 1988). "Disbelief of the only witness is not proof that the opposite of the witness's statements is true; disbelief would mean that the record is empty, and on an empty record the plaintiff loses, because the plaintiff has the burdens of production and

11

persuasion." *Estate of Logan v. City of S. Bend*, 50 F.4th 614, 615 (7th Cir. 2022). Plaintiffs have failed to meet their burden.

Finally, regardless of whether the Osundairo brothers are public figures, actual malice is a necessary element of a false light claim. *Kurczaba v. Pollock*, 742 N.E.2d 425, 434 (Ill. App. Ct. 2000). Summary judgment is thus appropriate on both counts.

## II. Summary Judgment is Appropriate Because Glandian's Statement is Substantially True.

Glandian is entitled to summary judgment for another reason—the Whiteface Statement is substantially true. A plaintiff cannot recover in a defamation action "where the statements are substantially true." *Coghlan v. Beck*, 984 N.E.2d 132, 146 (Ill. App. Ct. 2013); *see also Glob. Relief Found., Inc. v. New York Times Co.*, 390 F.3d 973, 982 (7th Cir. 2004) ("In Illinois, a defendant may [] defeat the [defamation] claim by showing that the statement, although not technically true in every respect, was substantially true."). Substantial truth is also a defense to false light claims. *See Myers v. Levy*, 808 N.E.2d 1139, 1153 (Ill. App. Ct. 2004). "To establish the defense of substantial truth, the defendant need only show the truth of the 'gist' or 'sting' of the defamatory material." *Glob. Relief Fund*, 390 F.3d at 982. (citations omitted). An "error in detail" is not actionable. *Haynes v. Alfred A. Knopf*, Inc., 8 F.3d 1222, 1227 (7th Cir. 1993). Determining whether a statement is substantially true is normally a question for the jury, but it can be decided on summary judgment "where no reasonable jury could find that substantial truth had not been established." *Cianci v. Pettibone Corp.*, 698 N.E.2d 674, 679 (Ill. App. Ct. 1998) (affirming grant of summary judgment where allegedly defamatory statements were substantially true).

12

The Osundairo brothers contest the "substantial truth" of the Whiteface Statement by arguing that the "gist" or "sting" of the Whiteface Statement is that it accused the brothers of committing a hate crime. For convenience's sake, the Court repeats the entirety of the at-issue statement:

> Ms. Guthrie: But the Osundairo brothers, what are the chances that that's the case, that he saw someone with light skin?
>
> Ms. Glandian: Well, you know, I mean, I think there's—obviously, you can disguise that. You could put makeup on. There is, actually, interestingly enough, a video…It took me all of five minutes to Google—you know, I was looking up the brothers, and one of the first videos that showed up, actually, was one of the brothers in white face doing a Joker monologue with white makeup on. And so it's not—it's not implausible.

The Court previously denied Glandian's motion to dismiss Plaintiffs' claims based on this statement because it could plausibly be interpreted to mean "the Osundairos attacked Smollett," and it "implies that the attack was a hate crime." [45] at 14. The Court denied a second motion to dismiss because, "taken in context, Glandian was asserting [in the Whiteface Statement] Plaintiffs' involvement in a racially motivated attack." [95] at 10. With the benefit of discovery, it is clear to the Court that regardless of what Glandian meant to assert, Plaintiffs *were* involved in a racially motivated attack. Plaintiffs *admit* that that they attacked Smollett, that they dressed and acted like white supremacists during the attack, and that they shouted racist and homophobic slurs. Plaintiff Abimbola testified that he and his brother committed this attack, and did so *for the purpose of getting media attention*:

> A. My understanding was that [Smollett] wanted us or wanted me to fake beat him up and call him racial slurs, racial, homophobic, and, yeah, and then say MAGA Country. [Court reporter interruption].

13

> Q. You understood that [Smollett] was going to -- that this was for his social media; is that right?
>
> A. No. What I thought it to be, because we didn't really discuss it, was that was going to be for media. He was going to put it -- get it out there somehow to the media.
>
> Q. I'll put it another way. Your understanding was that this was going to be publicized?
>
> A. Yes, sir.

Plaintiffs are essentially attempting to hold Glandian liable for discussing their own admitted conduct. These accusations cannot withstand summary judgment.

To the extent that the Osundairos believe that the specific suggestion they may have used white makeup was defamatory, this also fails for two reasons. First, Abimbola specifically testified that during the attack, he *tried to look like a white person*. [181-3] at 141:8-24. Regardless of the precise mechanism through which the brothers attempted to appear white, Glandian's statement that the brothers "could [have] put makeup on" captured the gist of the truth and contains, at most, an unactionable error in detail. *See, e.g., Lemons v. Chron. Pub. Co.*, 625 N.E.2d 789, 791 (Ill. App. Ct. 1993) (defamation not actionable where a news article wrote about plaintiff's criminal convictions even though the article did not mention one of his acquittals and overstated the number of victims; these minor errors did not "impeach plaintiff's integrity virtue, or human decency"); *Gist v. Macon Cnty. Sheriff's Dep't*, 671 N.E.2d 1154, 1157 (Ill. App. Ct. 1996) (holding that flyer that accurately reported that the plaintiff was wanted for motor theft was substantially true even though plaintiff disputed statements on the flyer that plaintiff was a "most wanted" fugitive and "should be considered dangerous."). Second, Plaintiffs specifically concede in

their briefing that whether the brothers wore white makeup is a "secondary detail." [191] at 13. This kind of "error in detail" is not actionable. *Haynes*, 8 F.3d at 1227. Summary judgment on both counts is thus appropriate on this basis as well.

## CONCLUSION

For the stated reasons, Defendant's motion for summary judgment [179] is granted. The Clerk is directed to enter judgment in Defendant's favor and against Plaintiffs and terminate the case. All other motions [171] and deadlines denied as moot.

E N T E R:

Dated: December 20, 2024

*Mary M Rowland*

MARY M. ROWLAND
United States District Judge

15